# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS d/b/a CUBAEXPORT Calle 24, n 55, edif. MINCEX, 8vo, piso, Havana, Cuba,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, HENRY M. PAULSON, JR., as Secretary of Treasury, ADAM J. SZUBIN, as Director of the Office of Foreign Assets Control; and THE UNITED STATES,<br><br>Defendants. | Civil Action No. |

# COMPLAINT

## SUMMARY OF ACTION

1.     This is an action for declaratory and injunctive relief pursuant to 5 U.S.C. § 701 *et seq.* and 28 U.S.C. § 2201 and the United States Constitution by Plaintiff, Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"). This action arises out of certain administrative actions by Defendant Office of Foreign Asset Control ("OFAC") concerning a United States trademark registration owned by Cubaexport for the trademark HAVANA CLUB & Design. That registration is the subject of long-running administrative and judicial proceedings in which a third party has sought to have the Patent and Trademark Office ("PTO") cancel the registration. Exercising its authority under the Trading With the Enemy Act, 50 U.S.C. App. § 1 *et seq.* and the Cuban Asset Control Regulations

("CACR"), 31 C.F.R. 515 *et seq.,* OFAC previously had authorized Cubaexport to retain U.S. counsel and take all necessary actions to defend its trademark registration in these proceedings, which Cubaexport has done. This year, however, with those proceedings still unresolved, OFAC erroneously and unlawfully advised the PTO that a routine renewal of Cubaexport's trademark registration, necessary to maintain the registration in force pending resolution of the cancellation proceedings, was "prohibited" in the absence of specific authorization by OFAC. OFAC then erroneously and unlawfully refused to grant such authorization, citing unspecified "U.S. policy." On the basis of OFAC's actions, the PTO now has notified Cubaexport that "the registration will be cancelled/expired."

2.      The cancellation of Cubaexport's registration as a result of OFAC's actions means the extinguishment of all Cubaexport's rights in and to the HAVANA CLUB trademark in the United States conferred by registration, causing Cubaexport substantial and grievous injury. OFAC's actions have deprived Cubaexport of valuable property rights without due process of law and without just compensation, in violation of the Fifth Amendment of the United States Constitution. OFAC's actions also are arbitrary and capricious: after repeatedly authorizing the defense of Cubaexport's trademark registration before the PTO and the courts, OFAC has now contradictorily decided that the routine renewal of that registration is "prohibited" by "U.S. policy," thus rendering moot the very subject matter of the trademark cancellation proceedings that OFAC consistently had authorized.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1361, 1651 and 2201.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.      Cubaexport is a Cuban state-owned enterprise located at Calle 23 No. 55 8vo.

piso, Vedado Ciudad de La Habana, Cuba.  Cubaexport was established in 1965 by the Cuban

Ministry of Foreign Commerce for the purpose of exporting food and other products.

6.      Defendant United States Department of Treasury ("Treasury") is an executive

branch of the United States government.

7.      Defendant OFAC is an administrative division of the Treasury, and, as such, acts

on behalf of the Secretary of Treasury.  OFAC is charged with formulating, promulgating,

implementing, and administering the rules and regulations at issue.  These include the CACR,

which implement the United States embargo on trade between the United States and Cuba.

8.      Defendant Henry M. Paulson, Jr. ("Paulson") is named in his official capacity as

the United States Secretary of Treasury.

9.      Defendant Adam J. Szubin ("Szubin") is named in his official capacity as the

Director of OFAC.

10.      Defendants Paulson and Szubin exercise overall responsibility for the

administration of OFAC, and are the officers who, purportedly under color of legal authority,

formulate, promulgate, implement and administer the rules and regulations at issue.

## FACTS ENTITLING PLAINTIFF TO RELIEF

### Cubaexport's U.S. HAVANA CLUB Trademark Registration

11.      On February 12, 1974, Cubaexport adopted an original HAVANA CLUB &

Design label and applied to register it as its trademark in Cuba in connection with rum.  This

application was granted and Cuban Registration No. 110,352 issued to Cubaexport.

12.      In 1976, Cubaexport filed an application with the PTO to register its HAVANA

CLUB & Design trademark in the United States in accordance with the provisions of the United

States Trademark Act § 44 ("Lanham Act"), 15 U.S.C. § 1126, based on Cubaexport's 1974

Cuban registration. U.S. Trademark Application, attached as Exhibit 1. Although the United

States' embargo on trade with Cuba precluded Cubaexport from selling rum under the

HAVANA CLUB & Design trademark in this country, Section 44 of the Lanham Act permits

registration of a mark in the U.S. based on a foreign registration, without the prerequisite of

actual use of the mark in commerce. 15 U.S.C. § 1126.

13.     On January 27, 1976, the PTO granted Cubaexport's application to register its

U.S. HAVANA CLUB & Design trademark as U.S. Registration No. 1,031,651 (the "U.S.

HAVANA CLUB Registration"). U.S. HAVANA CLUB Registration, attached as Exhibit 2.

14.     The issued U.S. HAVANA CLUB Registration gave Cubaexport a vested right in

its U.S. HAVANA CLUB & Design trademark in the United States as of January 27, 1976.

Such right is exclusive to Cubaexport and, *inter alia*, precludes the registration of any

confusingly similar mark by a third party under the Lanham Act. 15 U.S.C. § 1052(d).

15.     The Lanham Act provides for an initial 10-year term for all trademark

registrations, subject only to the requirement that an affidavit of continuing use or excusable

non-use be filed during the sixth year following issuance of the registration. 15 U.S.C. § 1058.

The Lanham Act further provides that "each registration may be renewed for periods of 10 years

at the end of each successive 10-year period following the date of registration upon payment of

the prescribed fee and the filing of a written application, in such form as may be prescribed by

the Director," *Id.* § 1059(a), who is the Under Secretary of Commerce for Intellectual Property

and Director of the United States Patent and Trademark Office. *Id.* § 1127. PTO regulations

implement the statutory provision for renewal of trademark registrations. *See* 37 C.F.R. §

2.6(a)(5) (setting fee); *id.* §§ 2.182-183 (prescribing requirements of application). Neither the

Lanham Act nor the regulations provides for any discretion on the part of the PTO with respect

to the maintenance or renewal of trademark registrations: if the statutory requirements are met, a registration must be maintained and renewed.

16.     On January 12, 1982, Cubaexport filed an affidavit pursuant to Lanham Act § 8 with the PTO in order to maintain its U.S. HAVANA CLUB Registration. Section 8 Affidavit (Jan. 12, 1982), attached as Exhibit 3.

17.     The PTO accepted Cubaexport's affidavit under Lanham Act § 8 and maintained the U.S. HAVANA CLUB Registration as mandated by the PTO's rules and regulations. PTO Acknowledgement of Section 8 Affidavit, attached as Exhibit 4.

18.     On October 29, 1993, Cubaexport sold the entire HAVANA CLUB rum business and transferred the worldwide rights to the HAVANA CLUB & Design trademarks to Havana Rum Liquors ("HRL"), another Cuban entity. On November 23, 1993, HRL transferred all of Cubaexport's trademarks, including the U.S. HAVANA CLUB Registration, to Havana Club Holdings, Ltd. ("HCH").

19.     In January 1996, HCH, as the owner of record of the U.S. HAVANA CLUB Registration, renewed the registration for a term of ten years, through July 27, 2006. Renewal Application (Jan. 1996), attached as Exhibit 5; PTO Notice of Removal (June 1996), attached as Exhibit 6. In the ordinary course, such registration would have been renewable prior to that date for another 10 years, as a routine matter.

## Unsuccessful Challenges To The Registration

20.     Following the 1996 renewal of the U.S. HAVANA CLUB Registration, HCH initiated an action in the United States District Court for the Southern District of New York against Bacardi-Martini, U.S.A. and affiliated companies ("Bacardi") to enjoin Bacardi's recently-commenced sales of rum under an infringing HAVANA CLUB trademark. *Havana Club Holding, S.A., v. Galleon, S.A., Bacardi-Martini, U.S.A., Inc. et al.*, 96-Civ-9655 (SAS)

(S.D.N.Y. filed Dec. 24, 1996) ("S.D.N.Y. Litigation"). In that action, the court found that Cubaexport's transfer of its U.S. HAVANA CLUB Registration to HRL and HCH was in violation of the CACR, nullified that transaction, and restored the "*status quo ante*," reaffirming Cubaexport's ownership of the U.S. HAVANA CLUB Registration and holding that HCH lacked standing to pursue an infringement claim against Bacardi. *Havana Club Holding, S.A., v. Galleon, S.A.,* 974 F. Supp. 302 (S.D.N.Y. 1997). Although Bacardi had contended that the U.S. HAVANA CLUB Registration should be cancelled because of the invalid transfer to HRL and HCH, the court rejected that contention, concluding that cancellation would lead to an "inequitable adjudication" of the "substantial rights" of Cubaexport, which was not a party to the action. *Id.* at 311. The court found that Cubaexport had "significant business interests in maintaining the registration of the mark." *Id.*

21.     While disputing the validity of the U.S. HAVANA CLUB Registration in the S.D.N.Y. Litigation, Bacardi also instituted in the PTO's Trademark Trial and Appeal Board ("TTAB") a proceeding against HCH to cancel the U.S. HAVANA CLUB Registration ("TTAB Cancellation Proceeding") on the ground, *inter alia*, that it had not been properly renewed. *Galleon S.A. v. Havana Club Holdings, S.A.*, Cancellation No. 92024108 (T.T.A.B. Jan. 29, 2004), *available at* http://ttabvue.uspto.gov/ttabvue/v?pno=92024108&pty=CAN&eno=93. Following the issuance of the decision in the S.D.N.Y. Litigation reinstating Cubaexport as the owner of the U.S. HAVANA CLUB Registration, Cubaexport was joined as a defendant in the TTAB Cancellation Proceeding.

22.     On January 29, 2004, the TTAB dismissed Bacardi's cancellation petition, holding as follows:

> [W]e conclude that HCH was in compliance with PTO renewal
> rules and practice when it filed its renewal application in its name,
> that it filed a proper renewal application, that the PTO acted
> properly in accepting the renewal application and renewing the

registration in HCH's name, and that the resulting renewal
registration is valid and must be so recognized by the Board.

*Galleon S.A., et al.*, Cancellation No. 92024108, at 39.

23.    On March 29, 2004, Bacardi appealed the TTAB decision by filing an action in

United States District Court for the District of Columbia. *Bacardi & Company Limited v.*

*Cubaexport and Havana Club Holding,* 1:04-CV-00519 (EGA) (D.D.C. filed Mar. 29, 2004) (the

"Bacardi Appeal"). That appeal remains pending.

### The OFAC Regulations And Section 211

24.    Pursuant to the CACR, transactions in the United States involving Cuban-owned

property are prohibited unless a transaction is authorized by OFAC, acting under a delegation

from the Secretary of the Treasury. 31 C.F.R. pt. 515, subpt. B. Such authorization may take

one of two forms: a "general license" or a "specific license." 31 C.F.R. §§ 515.317-.318. A

general license is one stated in the regulations and covering a type or category of transactions.

Specific licenses are granted by OFAC for specific transactions, on a case-by-case basis, upon

the filing of an application.

25.    While the CACR have effectively prohibited the use in U.S. commerce of any

trademark owned by a Cuban entity, the CACR did not override, and historically were not

interpreted to override, the Lanham Act's provisions regarding registration of marks based on

foreign registrations or the provisions regarding maintenance or renewal of such registrations.

Thus, over the years, the PTO has registered a number of such marks, including Cubaexport's

HAVANA CLUB & Design mark, and has approved the maintenance and renewal of such marks

as required by law, without objection by, or the need for any license from, OFAC.

26.    In 1995, OFAC formalized its hands-off policy regarding registration and renewal

of Cuban-owned trademarks, by issuing, via regulation, a general license expressly authorizing

"[t]ransactions related to the registration and renewal in the United States Patent and Trademark

Office . . . of . . . trademarks . . . in which the Government of Cuba or a Cuban national has an interest." 60 Fed. Reg. 54,194, 54,196 (Oct. 20, 1995). This general license, which was promulgated as 31 C.F.R. § 515.527, was in place when the HAVANA CLUB Registration was renewed in 1996 by HCH.

27.    On October 21, 1998, after the U.S. HAVANA CLUB Registration had been renewed and while the S.D.N.Y Litigation was pending, Congress, at the behest of Bacardi, enacted a provision directing OFAC to reverse its policy regarding the registration of Cuban-owned trademarks. Omnibus Consolidation and Emergency Supplemental Appropriations Act, Pub. L. No. 105-277, 112 Stat. 2681 (1998). This provision, enacted as Section 211 of an otherwise unrelated omnibus appropriations bill ("Section 211"), limited the applicability of the general license set forth in OFAC's regulation 515.527, as follows:

> (a)(1) Notwithstanding any other provision of law, no transaction or payment shall be authorized or approved pursuant to section 515.527 of title 31, Code of Federal Regulations, as in effect on September 9, 1998, with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

112 Stat at 2688. Section 211 also provided, *inter alia*, that "[t]he Secretary of the Treasury shall promulgate such rules and regulations as are necessary to carry out the provisions of this section." *Id.*

28.    Section 211 was passed without debate in the Senate. There is no official legislative history surrounding its enactment.

29.    Following passage of Section 211, OFAC amended its regulations to include a virtually identical provision. *See* 64 Fed. Reg. 25,808, 25,813 (May 13, 1999). The original 31 C.F.R. § 515.527 was retained as Paragraph (a)(1) of the amended regulation:

8

> (a)(1)   Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

However, a Paragraph (a)(2) was added to comply with Section 211(a)(1):

> (2)   No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consent.

30.    Neither Section 211 nor the OFAC regulations prescribe any process for determining whether a trademark registration or renewal is subject to the "general license" set forth in 31 C.F.R. § 515.527(a)(1) or the prohibition set forth in Section 211 and 31 C.F.R. § 515.527(a)(2) of the regulations.  Thus, no procedure is specified for determining whether, for example, a trademark that is the subject of a specific registration or renewal application is "the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated" or whether "the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented" to the registration or renewal of the registration.

31.    Neither Section 211 nor 31 C.F.R. § 515.527(a)(2) provides for cancellation of an existing trademark registration, amends the Lanham Act, or changes the PTO rules and regulations regarding renewal, expiration, or cancellation of a registration.  Nothing in the Lanham Act or the PTO's implementing regulations requires or even authorizes the PTO to consider the applicability of Section 211 or the CACR to the registration renewal process.

### The Specific Licenses Issued By OFAC In Connection With
### The Defense Of The U.S. HAVANA CLUB Registration

32.     In January 2003, in connection with the then-pending TTAB Cancellation

Proceeding, Cubaexport's law firm, Fish & Neave, applied to OFAC for a license to enable it to

defend Cubaexport's U.S. HAVANA CLUB Registration in that proceeding (the "Registration

Defense License") and a license to travel to Cuba in connection with that engagement (the

"Travel License").  Application for Registration of Defense and Travel Licenses (Jan. 29, 2003),

attached as Exhibit 7.

33.     In March 2003, OFAC granted both licenses.  The Registration Defense License

provided as follows:

> SECTION 1 - AUTHORIZATIONS:  All transactions are
> authorized to enable Fish & Neave (the "Licensee"), in connection
> with all matters related to Galleon S.A. v. Havana Club Holding,
> S.A., Trademark Trial and Appeal Board Cancellation No. 24,108,
> to provide legal services to, receive payment for such services
> from and to receive reimbursement for expenses related to such
> services from Empresa Cubana Exportadora De Alimentos y
> Productos Varios ("Cubaexport"), a Cuban national.

The Registration Defense License contained no expiration date.  The Travel License was issued

for a one-year period.  Registration of Defense and Travel Licenses (Mar. 10, 2003), attached as

Exhibit 8.

34.     In February 2004, Fish & Neave requested renewal of the Travel License, which

request was granted.  Exhibit 5;  Request for Renewal of Travel License (Feb. 11, 2004),

attached as Exhibit 9; Renewal of Travel License (Feb. 20, 2004), attached as Exhibit 10.

35.     Effective January 1, 2005, Fish & Neave merged with Ropes & Gray LLP.  By

letter dated January 5, 2005, Ropes & Gray advised OFAC of that merger and requested renewal

or re-issuance of the Registration Defense License and the Travel License in the name of Ropes

& Gray.  Letter Regarding Law Firm Merger (Jan. 5, 2005), attached as Exhibit 11.  By letter

dated January 11, 2005, OFAC requested additional information from Ropes & Gray. OFAC

Letter (Jan. 11, 2005), attached as Exhibit 12. By letter dated January 26, 2005, Ropes & Gray

responded to that request. Ropes & Gray Letter (Jan. 26, 2005), attached as Exhibit 13.

36.    On March 4, 2005, OFAC issued a new Registration Defense License and a new

Travel License, both having expiration dates of March 31, 2006. Renewal of Registration of

Defense and Travel Licenses (Mar. 4, 2005), attached as Exhibit 14. The Registration Defense

License authorization was similar to, but broader than, the original license, in that it stated as

follows:

> SECTION 1 - AUTHORIZATIONS: (a) All transactions are
> authorized to enable the Licensee, in connection [with] the legal
> representation of Empresa Cubana Exportadora de Alimentos y
> Productos Varios ("Cubaexport"), and Havana Club Holding S.A.
> in legal proceedings in the United States related to the HAVANA
> CLUB trademark, as described in the application, to receive
> payment for such services and reimbursement for expenses related
> to such services from Cuban nationals through banking channels,
> provided the funds are routed from Cuba to the United States via a
> third-country bank.

37.    In February of this year, Ropes & Gray requested renewal of the Registration

Defense License and the Travel License (Ropes & Gray Request for Renewal of OFAC Licenses

(Feb. 27, 2006), attached as Exhibit 17) and on April 10, 2006, OFAC granted that request.

Renewal of Registration of Defense and Travel Licenses (Apr. 10, 2006), attached as Exhibit 20.

Both licenses remain in effect as of the filing of this action.

38.    Pursuant to the Registration Defense License and the Travel License, Cubaexport

has incurred substantial sums in the defense of its U.S. HAVANA CLUB Registration against

Bacardi's attack in the TTAB Cancellation Proceeding and the Bacardi Appeal. To date, that

defense has been successful, and the registration remains in force, although the Bacardi Appeal

remains pending.

11

**OFAC Intervenes In The Trademark Registration Renewal Process**

39.      On December 13, 2005, Ropes & Gray sent a letter to the PTO enclosing an
application for renewal of U.S. HAVANA CLUB Registration executed by Cubaexport pursuant
to Lanham Act §§ 8 and 9, and, in accordance with PTO practice, submitted the renewal fee by
requesting that the fee be charged against Ropes & Gray's account.  Letter to PTO for
Trademark Renewal (Dec. 13, 2005), attached as Exhibit 15.

40.      In its December 13, 2005 letter to the PTO (Exhibit 15) and in a concurrent letter
to OFAC (Letter to OFAC (Dec. 13, 2005), attached as Exhibit 16), Ropes & Gray stated that
payment of the filing fee was being made pursuant to the Registration Defense License
authorizing "[a]ll transactions" in connection with the legal representation of Cubaexport "in
legal proceedings in the United States related to the HAVANA CLUB trademark," and in order
to preserve the *status quo* in those proceedings by maintaining the U.S. HAVANA CLUB
Registration until a decision regarding cancellation of the registration could be rendered in the
Bacardi Appeal.

41.      On April 6, 2006, OFAC intervened in the registration renewal process, by
issuing a letter to Ropes & Gray and the PTO (the "April 6, 2006 OFAC Letter") in which
OFAC stated that it did not consider the Registration Defense License to "authorize Ropes &
Gray LLP to pay a filing fee to the PTO for renewal of Registration No. 1,031,651 . . . on behalf
of Cubaexport."  April 6, 2006 OFAC Letter, attached as Exhibit 18.  Rather, OFAC stated, the
Registration Defense License "covers only those transactions in connection with the pending
District Court litigation," although the license itself did not so state.

42.      In the April 6, 2006 OFAC Letter, OFAC also stated that Ropes & Gray could
apply for a specific license to renew the U.S. HAVANA CLUB Registration on behalf of

Cubaexport at the PTO. OFAC thereby implied that it had the authority and discretion to issue such a license. Exhibit 18.

43.     The April 6, 2006 OFAC Letter did not explicitly address whether it considered renewal of the U.S. HAVANA CLUB Registration to be authorized by the "general license" for trademark registrations and renewals set forth in 31 C.F.R. § 515.527(a)(1) or to be excluded from that general license by Section 211 and 31 C.F.R. § 515.527(a)(2). Indeed, the April 6, 2006 OFAC Letter did not even mention Section 211 or 31 C.F.R. § 515.527(a)(2). The fact that OFAC invited Ropes & Gray to apply for a specific license for the renewal of the U.S. HAVANA CLUB Registration, however, suggests that as of April 6, 2006, OFAC had concluded that the general license did not provide authorization for that trademark renewal.

44.     In response to the April 6, 2006 OFAC Letter, Ropes & Gray, on April 7, 2006, submitted an application for a specific license authorizing it to "incur and be paid for the minor expense ($500 or less) of maintaining [U.S. Registration No. 1,031,651] through payment of the renewal fee." Ropes & Gray stated that its request was being made, *inter alia*, to preserve the *status quo* in the ongoing legal proceedings by maintaining the U.S. HAVANA CLUB Registration until a final decision regarding cancellation of the registration could be rendered in the Bacardi Appeal. Application for Specific License for Renewal (Apr. 7, 2006), attached as Exhibit 19; Exhibit 20.

45.     On July 20, 2006, the PTO formally responded to Cubaexport's December 2005 application for renewal of the U.S. HAVANA CLUB Registration as follows (PTO's July 20, 2006 Office Action, attached as Exhibit 21):

> [I]n a letter dated April 6, 2006 from the Department of Treasury, the USPTO was informed that License No. CU-74488 does not authorize Ropes & Gray LLP to pay the renewal fee. Therefore, the required fee for the combined filing has not been paid. . . . Registrant is required to notify the USPTO whether [the] specific

license [Ropes & Gray requested on April 7, 2006] has been
granted or denied.

46.     On July 28, 2006, OFAC denied Ropes & Gray's April 7, 2006 request for a

license in a one page letter (the "July 28, 2006 OFAC Letter") to Ropes & Gray, with a copy to

the PTO.  July 28, 2006 OFAC Letter, attached as Exhibit 22.  That letter stated, in its entirety,

as follows:

> This is in response to your letter dated April 7, 2006, on behalf of
> Empresa Cubana Exportadora de Alimentos y Productos Varios
> ("Cubaexport"), requesting a license authorizing transactions
> related to the renewal at the United States Patent and Trademark
> Office of Registration No. 1,031,651 of HAVANA CLUB &
> Design (the "HAVANA CLUB trademark").
>
> Pursuant to the Cuban Asset Control Regulations, 31 C.F.R. Part
> 515, administered by the US Department of the Treasury's Office
> of Foreign Assets Control ("OFAC"), renewal of the HAVANA
> CLUB trademark under these circumstances would be prohibited
> unless specifically licensed.
>
> OFAC has been engaged in consultation with the relevant agencies
> in the U.S. Government, including the Department of State
> ("State"), on this issue.  We have received guidance from State
> informing us that it would be inconsistent with U.S. policy to issue
> a specific license authorizing transactions related to the renewal of
> the HAVANA CLUB trademark.  Accordingly, your request is
> hereby denied.

47.     The July 28, 2006 OFAC Letter thus constitutes a two-part determination.  It is a

denial of the request for a specific license to renew the U.S. HAVANA CLUB Registration.  But

it also makes explicit OFAC's position that "renewal of the HAVANA CLUB trademark under

these circumstances would be prohibited unless *specifically* licensed."  Thus, the July 28, 2006

OFAC letter embodies the determination that renewal of the U.S. HAVANA CLUB Registration

is *not* authorized pursuant to the "general license" for trademark registrations and renewals set

forth in 31 C.F.R. § 515.527(a)(1), but rather is excluded from the general license by Section 211

and 31 C.F.R. § 515.527(a)(2).

48.     In this latter regard, the July 28, 2006 OFAC Letter necessarily represents a factual finding, pursuant to Section 211 and 31 C.F.R. § 515.527(a)(2), that Cubaexport's HAVANA CLUB & Design trademark is "the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated" and that "the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest" has not expressly consented to the renewal of the registration.

49.     This factual finding was made without notice to Cubaexport or any opportunity to be heard. Thus, for example, Cubaexport has never had an opportunity to litigate or gather evidence as to the inapplicability of Section 211 and 31 C.F.R. § 515.527(a)(2) to Cubaexport's U.S. HAVANA CLUB Registration and to show that its trademark is *not* "the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated."

50.     OFAC's denial of authorization for the renewal of Cubaexport's U.S. HAVANA CLUB Registration not only was made without affording Cubaexport due process of law, but it also is inconsistent with OFAC's prior grant of authorization to Cubaexport to defend that very same registration in the TTAB Cancellation Proceeding and the Bacardi Appeal.

51.     On August 1, 2006, Cubaexport filed a response to the PTO's July 20, 2006 Office Action noting (as the PTO already had been advised directly by OFAC) that OFAC had denied Ropes & Gray's request for a license on July 28, 2006. Response to Office Action (Aug. 1, 2006), attached as Exhibit 23. Cubaexport requested renewal of the U.S. HAVANA CLUB Registration notwithstanding OFAC's decision not to grant a license.

52.     Two days later, on August 3, 2006, the PTO issued a formal notice denying Cubaexport's application for renewal of the U.S. HAVANA CLUB Registration and stating as follows (PTO's August 3, 2006 Office Action, attached as Exhibit 24):

Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee for filing the Sections 8 & 9 Combined filing has not been submitted; accordingly, the registration will be cancelled/expired.

### The Effect Of OFAC's Actions On Cubaexport's Rights

53.    The direct and sole cause of the cancellation of the U.S. HAVANA CLUB Registration is the April 6, 2006 OFAC Letter (Exhibit 18) and the July 28, 2006 OFAC Letter, (Exhibit 22) and the determinations set forth therein regarding whether Cubaexport is authorized to renew the registration.

54.    Those determinations were made without affording Cubaexport due process of law.

55.    In addition, as the United Stated District Court for the Southern District of New York previously observed, cancellation of Cubaexport's U.S. HAVANA CLUB Registration would deprive Cubaexport of "substantial rights" and "significant business interests in maintaining the registration of the mark." *Havana Club Holding, S.A.,* 974 F. Supp. at 311.

56.    Furthermore, the April 6, 2006 OFAC Letter (Exhibit 18) and the July 28, 2006 OFAC Letter (Exhibit 22) and the determinations set forth therein regarding whether Cubaexport is authorized to renew the U.S. HAVANA CLUB Registration were unreasonable in light of OFAC's prior decision to permit Cubaexport to defend, at substantial cost, its U.S. HAVANA CLUB Registration in the TTAB Cancellation Proceeding and Bacardi Appeal. The denial of authorization for Cubaexport to renew the U.S. HAVANA CLUB Registration will render moot the subject matter of the cancellation claims that Bacardi has asserted in those proceedings and which OFAC repeatedly has authorized Cubaexport to oppose. Indeed, Bacardi has advised Cubaexport that it intends to seek a stay of the Bacardi Appeal because it believes that it will obtain equivalent relief if the U.S. HAVANA CLUB Registration is cancelled through non-renewal by the PTO. The April 6, 2006 OFAC Letter (Exhibit 18) and the July 28, 2006 OFAC

16

Letter (Exhibit 22) and the determinations set forth therein, coming while that appeal is pending, thus will deprive Cubaexport of its right to a final judgment by the United States courts concerning Bacardi's cancellation petition.

57.     The April 6, 2006 OFAC Letter (Exhibit 18) and the July 28, 2006 OFAC Letter, (Exhibit 22) and the determinations set forth therein regarding whether Cubaexport is authorized to renew the U.S. HAVANA CLUB Registration are unreasonable also because they are inconsistent with the underlying purposes of the CACR.  Those regulations are intended, *inter alia*, to preserve assets owned by Cuban nationals such as Cubaexport, including the U.S. HAVANA CLUB Registration.  OFAC's actions will result in the destruction of the U.S. HAVANA CLUB Registration and all attendant rights and interests.  The additional goals of the CACR include using blocked assets, like trademark registrations, as a negotiating tool with the Cuban government and retaining control over blocked funds for possible use or vesting in settlement of American claims.  OFAC's actions are inconsistent with these purposes as well.

## CLAIMS FOR RELIEF

### COUNT I:  DEFENDANTS' ACTIONS HAVE DEPRIVED CUBAEXPORT OF PROCEDURAL DUE PROCESS

58.     Paragraph 1 through 57 are incorporated herein by reference.

59.     The actions of defendants Paulson, Szubin, the Department of the Treasury, and OFAC (collectively, "Defendants") violated Cubaexport's right to Due Process under the Fifth Amendment to the United States Constitution.

60.     A federal statute vested Cubaexport with a protected property interest in the U.S. HAVANA CLUB Registration.

61.     That protected property interest has been confirmed by federal agencies, and has been deemed a "substantial right" by a federal court.

62.     By determining that Cubaexport is not authorized to renew its U.S. HAVANA

CLUB Registration and effectively directing the PTO to cancel that registration by refusing to

renew it, Defendants have deprived Cubaexport of its protected property interest.

63.     Defendants deprived Cubaexport of its protected property interest without

allowing Cubaexport the opportunity to be heard on the applicability of Section 211 and its

implementing regulation 31 C.F.R. § 515.527, as well as on the core factual issues of whether

Cubaexport's HAVANA CLUB & Design trademark is "the same as or substantially similar to a

mark, trade name, or commercial name that was used in connection with a business or assets that

were confiscated" and whether "the original owner of the mark, trade name, or commercial

name, or the bona fide successor-in-interest" has not expressly consented to the renewal of the

registration.  Further, Defendants' justification for its actions lacks any reference to evidence or

findings of fact, and provides Cubaexport with insufficient notice of the basis of its decision.

64.     The process by which Defendants deprived Cubaexport of its protected property

interest is therefore constitutionally inadequate.

### COUNT II:  DEFENDANTS' ACTIONS HAVE DEPRIVED CUBAEXPORT OF SUBSTANTIVE DUE PROCESS

65.     Paragraph 1 through 57 are incorporated herein by reference.

66.     Cubaexport registered its HAVANA CLUB & Design trademark in 1976.  The

registration was maintained in 1982 and renewed in 1996 and was not cancelled in the N.Y.

Litigation or the TTAB Cancellation Proceeding pursuant to the Lanham Act.  Section 211 was

enacted in 1998, OFAC regulation 31 C.F.R. § 515.527 was modified in compliance with

Section 211 in 1999, and OFAC issued its determinations regarding their applicability to

Cubaexport's renewal of its U.S. HAVANA CLUB Registration on April 6, 2006 and July 28,

2006.  Throughout the period from enactment of Section 211 to July 28, 2006, Cubaexport had a

vested right in its U.S. HAVANA CLUB Registration and the right to renew that registration in

perpetuity, subject only to the "payment of the prescribed fee and the filing of a written application, in such form as may be prescribed by the Director." 15 U.S.C. § 1059(a).

67.    Accordingly, Section 211 and 31 C.F.R. § 515.527, on their face or as applied by OFAC in the April 6, 2006 OFAC Letter and July 28, 2006 OFAC Letter, retroactively deprived Cubaexport of its protected property interest, in violation of the Due Process Clause of the Fifth Amendment.

68.    Further, Section 211 and 31 C.F.R. § 515.527, on their face or as applied by OFAC in the April 6, 2006 OFAC Letter and July 28, 2006 OFAC Letter, are inconsistent with the underlying purposes of the CACR and the TWEA, which include the *preservation* and not the confiscation or destruction of Cuban assets held in this country. Section 211 and 31 C.F.R. § 515.527, on their face or as applied by OFAC in the April 6, 2006 OFAC Letter (Exhibit 18) and July 28, 2006 OFAC Letter (Exhibit 22) thus are arbitrary and capricious, in violation of the Due Process Clause of the Fifth Amendment.

### COUNT III:  DEFENDANTS' ACTIONS HAVE WORKED A TAKING OF CUBAEXPORT'S PROPERTY WITHOUT DUE COMPENSATION

69.    Paragraphs 1 through 57 are incorporated herein by reference.

70.    Section 211 and 31 C.F.R. § 515.527, on their face or as applied by OFAC in its April 6, 2006 OFAC Letter (Exhibit 18) and July 28, 2006 Letter (Exhibit 22) constitute a regulatory taking of Cubaexport's protected property interest.

71.    Cubaexport received no compensation for this taking.

### COUNT IV:  DEFENDANTS' ACTIONS ARE UNLAWFUL UNDER 5 U.S.C. § 706

72.    Paragraphs 1 through 71 are incorporated herein by reference.

73.    The determinations set forth in the April 6, 2006 OFAC Letter (Exhibit 18) and July 28, 2006 OFAC Letter (Exhibit 22) regarding whether Cubaexport is authorized to renew

the U.S. HAVANA CLUB Registration constitute final agency action for which there is no other adequate remedy in a court, pursuant to, *inter alia*, 31 C.F.R. § 501.802.

74.    The determinations set forth in the April 6, 2006 OFAC Letter (Exhibit 18) and July 28, 2006 OFAC Letter (Exhibit 22) regarding whether Cubaexport is authorized to renew the U.S. HAVANA CLUB Registration were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; without observance of procedure required by law; and unwarranted by the facts.

75.    Pursuant to 5 U.S.C. § 706(2), Cubaexport is entitled to have this Court review, hold unlawful, and set aside the determinations set forth in the April 6, 2006 OFAC Letter (Exhibit 18) and July 28, 2006 OFAC Letter (Exhibit 22).

## PRAYER FOR RELIEF

WHEREFORE, Cubaexport respectfully requests that this Court enter an order:

(a)  declaring unlawful and setting aside OFAC's July 28, 2006 (Exhibit 22) determination and notification to the PTO that renewal of the U.S. HAVANA CLUB Registration is "prohibited" absent the grant of a specific license authorizing such renewal;

(b)  declaring unlawful and setting aside OFAC's April 6, 2006 (Exhibit 18) and July 28, 2006 (Exhibit 22) denials of a specific license to renew the U.S. HAVANA CLUB Registration;

(c)  declaring that Section 211 and 31 C.F.R. § 515.527(a)(2), on their face and/or as applied to the U.S. HAVANA CLUB Registration by OFAC in the April 6, 2006 OFAC Letter and July 28, 2006 OFAC Letter (Exhibit 22) are unconstitutional, null and void;

(d)  declaring that Plaintiff, and its legal representatives, are not prohibited from engaging in any and all transactions necessary or incident to the renewal of the U.S. HAVANA CLUB Registration or, in the alternative, directing Defendants, including Paulson and Szubin, to

grant a specific license authorizing the renewal of Cubaexport's U.S. HAVANA CLUB

Registration and any and all transactions necessary or incident to such renewal;

(e)  permanently enjoining Defendants from interfering, directly or indirectly,

with any renewal of the U.S. HAVANA CLUB Registration; and

(f)  awarding any additional or other relief as this Court deems proper.


Dated:  September 29, 2006
                                          Peter M. Brody (D.C. Bar No. #398717)
                                          ROPES & GRAY LLP
                                          One Metro Center
                                          700 12th Street, N.W.
                                          Washington, D.C.  20005
                                          (202) 508-4600

                                          Herbert F. Schwartz
                                          Vincent N. Palladino
                                          Eric R. Hubbard
                                          ROPES & GRAY LLP
                                          1251 Avenue of the Americas
                                          New York, New York 10020
                                          (212) 596-9000

                                          Attorneys for Plaintiff,
                                          EMPRESA CUBANA EXPORTADORA
                                          DE ALIMENTOS Y PRODUCTOS
                                          VARIOS d/b/a CUBAEXPORT

# EXHIBIT 1

ERIC K. WATERS
JOHN G. SCHWARTZ
J. HAROLD NISSEN
ERIC D. OFFNER

# HASELTINE, LAKE & WATERS

PATENTS & TRADEMARKS

19 WEST 44TH STREET

NEW YORK, N. Y. 10036

ROBERT S. WATERS
1910-1966
———
HAROLD L. RODITI
CONSULTANT

June 11, 1974

OUR REF. NVC

YOUR REF.

Hon. Commissioner of Patents
Washington, D.C.  20231

SIR:

    RE:  UNITED STATES TRADEMARK/SERVICE MARK APPLICATION

    APPLICANT   : Empresa Cubana Exportadora De Alimentos Y
                     Productos Varios, trading as Cubaexport

    TRADEMARK   : HAVANA CLUB Label (with claim to the colors
                     gold, white and black)

    SERVICE MARK  :

    CLASS NO.    33

We are attaching herewith documents comprising an application
for registration of the above mark on the Principal Register
of the 1946 Act.

We would appreciate receiving the usual filing certificate at
your early convenience.

                             Respectfully submitted,

                             By

Enclosures:

1.  Application documents;
2.  Drawing of the mark;
3.  Five (5) specimens of use;
4.  Certified copy of Cuban Reg. No. 110353 with English translation
     and
     Enclosed Bulk Check No. __576__; (this item $35.00)

IN THE UNITED STATES PATENT OFFICE
APPLICATION FOR TRADEMARK OR SERVICEMARK REGISTRAT

TRADEMARK : HAVANA CLUB Label (with claim the colors- gold, white and black
SERVICEMARK
CLASS NO. : 33

TO THE COMMISSIONER OF PATENTS

1. Empresa Cubana Exportadora De Alimentos Y Productos Varios, trading as Cubaexport

2. a company organized under the laws of Cuba

3. 55, 23 Street, Vedado,

4. Havana, Cuba.

The above-identified applicant requests that the mark shown in the accompanying drawing be registered in the United States Patent Office on the Principal Register established by the Act of July 5, 1946 for 5. rum !

6. The mark was first used on or in connection with the goods on (a)

19____ ; was first used on the goods in commerce with or in the United States on (b)

_____ 19____ ; and is now in use in such commerce.

7. Application for registration of the said mark has been filed in _____ on the _____ day of _____ 19____ ; No. _____ and a right of priority based on this application is claimed. Certified copy of such registration will be presented upon issue.

8. The mark was registered in _____Cuba_____ on the __12th__ day of __February__ 1974 No __110353__ , and said registration is now in full force and effect. Certified copy of such registration is presented herewith .

9. Applicant has adopted and is using the mark by applying the mark to

AUTHORIZATION OF AGENT

Applicant hereby appoints ERIC H. WATERS, JOHN G. SCHWARTZ, J. HAROLD NISSEN or ERIC D. OFFNER, with offices at Haseltine, Lake & Waters, 19 West 44th Street, New York, New York 10036, United States of America, to prosecute this application to register, with full power of substitution or revocation, to transact all business in the Patent Office in connection therewith, and to receive the certificate of registration.

APPOINTMENT OF DOMESTIC REPRESENTATIVE

HASELTINE, LAKE & WATERS, whose postal address is 19 West 44th Street, New York, New York 10036, United States of America, is hereby designated applicant's representative upon whom notices or process in proceedings affecting the mark may be served.

06/14/74 HAVANA CLUB    1 201 : 35.00CK

DECLARATION

10. The undersigned _____ , declares: That he is the _____ Empresa Cubana Exportadora De Alimentos Y Productos Vario; of _____ trading as Cubaexport _____ and is authorized to execute this document on behalf of said company; he believes said company to be the owner of the mark sought to be registered; that to the best of his knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that wilful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such wilful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.

11. Declared at _____Havana_____ , _____Cuba_____
                     (city)              (country)
this __17th__ day of __May__ 19__74__ .

                              Empresa Cubana Exportadora De Alimentes
SEAL                      12. Y Productos Varios, t/a CUBAEXPORT

                          13. By _____

Haseltine, Lake & Waters, 19 West 44th Street, New York, N.Y. 10036, U.S.A.

```
CLASS      :  33

REG. NO.   :  1031651

REG. DATE  :  January 27, 1976
```

**GENUINE IMPORTED
CUBAN RUM**

# Havana

## Club

RON ———— RUM



40°GL 70°PROOF   0.75 LT.  26⅔ FL.OZ.

Distilled and bottled by Fabrica Ron Havana Club

**CUBA**

REPUBLICA DE CUBA

COMISION NACIONAL DE COLABORACION ECONOMICA Y CIENTIFICO - TECNICA (C.N.C.E.C.T.)

OFICINA NACIONAL DE INVENCIONES, INFORMACION TECNICA Y MARCAS (O.N.I.I.T.M.)

TTE. REY 405 HABANA 1

TELF.: 61 - 1460  —  6 - 9243

ING. JOSE M. ROLRIGUEZ PADILLA, Director General de la Oficina
Nacional de Invenciones, Información Técnica y Marcas, de la —
Comisión Nacional de Colaboración Económica y Científico Técni-
ca, de la República de Cuba,

C E R T I F I C A

que traído a la vista el expediente número doscientos doce mil
quinientos setenta y dos, del Registro General, aparece a foja
12 del mismo, el certificado de inscripción número ciento diez
mil trescientos cincuenta y tres, expedido con fecha doce de —
febrero de mil novecientos setenta y cuatro, por un término de
quince años, contados desde la expresada fecha, a favor de la
EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS, —
(CUBALPROES), establecida en 23 No. 55, Vedado, La Habana, Cuba,
que ampara la Marca Denominada "HAVANA CLUB", para distinguir:
ron, con reivindicación de los colores oro, blanco y negro ,en
la forma y disposición que aparece en la etiqueta, en la clase
-36- del Nomenclator Oficial, siendo su diseño exactamente —
igual al que se fija en la presente, encontrándose actualmente
en pleno vigor y efectos, - - - - - - - - - - - - - - - - - - -

Y a petición de la Dra. María A. Carrillo, Agente Oficial de
la Propiedad Industrial, se expide la presente, exenta de de-
rechos, en la ciudad de La Habana, a los doce días del mes de
marzo de mil novecientos setenta y cuatro, - - - - - - - - - -

Ing. José M. Rodriguez Padilla
DIRECTOR GENERAL

Republic of Cuba

National Commission of Economic and Scientific Technical Collaboration

National Office of Inventions, Technical Information and Trademarks

Rey 405, Havana 1

ING. JOSE M. RODRIGUEZ PADILLA, Director General of the National Office of Inventions, Technical Information and Trademarks, of the National Commission of Economic and Scientific Technical Collaboration, of the Republic of Cuba,

CERTIFIES

that, having brought up File No. 212,572 of the General Register, there appears page 12 thereof Certificate of Registration No. 110,353, issued under date of February 12, 1974, for a term of fifteen years, counted from the stated date, in favor of EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS, (CUBAEXPO) established at 23 No. 55, Vedado, La Habana, Cuba, which covers the Trademark "HAVANA CLUB", to distinguish:

Rum, with claim of the colors gold, white and black, in the form and arrangement which appears on the label, in class -36- of the Official Nomenclature, its design being exactly the same as is affixed hereon, and which is at present in force, -

(see specimen attached to original)

And on request of Dr. Maria A. Carrillo, Official Agent of Industrial Property the present document is issued, exempt of taxes, in the city of Havana, this day of March, 1974.

(signature)

Ing. Jose M. Rodriguez Padilla
DIRECTOR GENERAL

APPLICANT     -     Empresa Cubana Exportadora De Alimentos Y
                            Productos Varios trading as Cubaexport
                        a company organized under the laws of Cuba

ADDRESS     -     55, 23 Street, Vedado
                        Havana, Cuba

GOODS     -     rum

The application is based on Cuban Registration No. 110353 dated
February 12, 1974.



3

10316S1

EXHIBIT 2

Int. Cl.: 33

Prior U.S. Cl.: 49

## United States Patent Office

Reg. No. 1,031,651
Registered Jan. 27, 1976

## TRADEMARK
### Principal Register



Empresa Cubana Exportadora de Alimentos y Productos Varios (Cuban company), doing business as Cuba export
55, 23rd St.
Vedado, Havana, Cuba

For: RUM, in CLASS 33 (U.S. CL. 49).
Applicant disclaims the words "Havana" and "Funda-da en 1878" apart from the mark as a whole.
The drawing is lined for the color gold.
Owner of Cuban Reg. No. 110,353, dated Feb. 12, 1974.

Ser. No. 23,981, filed June 12, 1974.

L. STRICKMAN, Examiner

EXHIBIT 3

PETER
HEINZ DAWID
ALVIN FROSS
RONALD J. LEHRMAN
ALLAN ZELNICK
STEPHEN BIGGER
MICHAEL I. DAVIS

RICHARD Z. LEHV
MARGARET F. GOLDSTEIN
ROBERT B. G. HOROWITZ
LOWRY WYMAN
ANN SHARP FISHER

750 THIRD AVENUE
NEW YORK, N.Y. 10017-2773
(212) 953-9090

CABLE ADDRESS·
LEHRMARKS NEWYORK

TELEX: ITT 422455
RCA 236674

AUTOMATIC
TELEPHONE COPIER
(212) 953-1037

January 12, 1982

Commissioner of Patents &
Trademarks
Washington, D.C. 20231

Dear Sir:

Re: Empresa Cubana Exportadora de Alimentos
y Productos Varios d/b/a/ Cubaexport
Section 8 Declaration due in connection
with U.S. Reg. No. 1031651 for HAVANA
CLUB & Design (Our Ref: TR-81/1063)

We attach the following in respect of the subject matter:

1. Section 8 Declaration

2. Our check in the amount of $10.00
   for the official filing fee.

If the enclosed payment is not correct please charge any deficiency
or credit any overage to our deposit account No. 23-0825-0576900.

We look forward to receiving confirmation that the declaration
has been filed.

Sincerely,

PETER WEISS

PW:JL/rgj
Enc.

~ Yspec

# 10^QB 213 - Tm

MAIL ROOM
JAN
13
1982
PAT & TRADE MARK OFF

## SECTION 8 DECLARATION

MARK:    Havana Club & Design

Class:    33

Reg. No.: 1031651

Reg. Date: January 27, 1976.

To the Commissioner of Patents & Trademarks:

The undersigned declares that: Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a/ Cubaexport, a company organized under the laws of the Republic of Cuba, located in Havana, Cuba, is the owner of the above-identified registration as shown by — the records of the United States Patent and Trademark Office, — and that the mark shown therein is still in use on goods or services in each class as evidenced by the attached specimen for — each class showing the mark as currently used.

The partners and associates of the law firm Weiss Dawid Fross Zelnick & Lehrman, 750 third Avenue, New York, New York 10017, — are hereby appointed applicant's attorneys to file this declaration and to transact all business in the Patent and Trademark — Office in connection therewith.  The said firm of Weiss Dawid — Fross Zelnick & Lehrman is hereby designated registrant's representative upon whom notices or process in proceeding affecting — the mark may be served.

                Fausto Alfonso Mon
The undersigned/declares that he is the director of Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a/ Cubaexport and is authorized to execute this document on behalf of said company, that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of title 18 of the United States code and that such — willful false statements may jeopardize the validity of this document.

                              Empresa Cubana Exportadora de
                              Alimentos y Productos Varios
                              d/b/a/ Cubaexport

                          by: _____

Dated:                        Fausto Alfonso Mon

    January 4, 1982


    01/19/82 1031651          1 213      10.00CK

EXHIBIT 4

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2006-09-27 17:16:13 ET

**Serial Number:** 73023981 Assignment Information

**Registration Number:** 1031651

**Mark**



**(words only):** HAVANA CLUB

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 1997-07-30

**Filing Date:** 1974-06-12

**Transformed into a National Application:** No

**Registration Date:** 1976-01-27

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 834 -Post Registration

**Date In Location:** 2006-08-03

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. EMPRESA CUBANA EXPORTADORA DE ALIMENTOSY PRODUCTOS VARIOS

**Address:**
EMPRESA CUBANA EXPORTADORA DE ALIMENTOSY PRODUCTOS VARIOS
CALLE 23 N. 55, 8 VO. PISO VEDADO

CIUDAD DE LA HABANA 10400
Cuba
**Legal Entity Type:** Company
**State or Country Where Organized:** Cuba

---

## GOODS AND/OR SERVICES

---

**International Class:** 033
**Class Status:** Active
RUM
**Basis:** 44(e)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

---

**Disclaimer:** APPLICANT DISCLAIMS THE WORDS "HAVANA" AND "FUDNADA EN 1878" APART FROM THE MARK AS A WHOLE.

**Lining and Stippling:** THE DRAWING IS LINED FOR THE COLOR GOLD.

**Design Search Code(s):**
04.01.25 - Genies; Giants; Men, Wizards; Paul Bunyan; Pied Piper; Robin Hood; Sherlock Holmes; Witches; Wizards
20.03.10 - Alcohol bottle labels; Bottles, labels for alcohol bottles; Labels, alcohol bottles
26.11.21 - Rectangles that are completely or partially shaded

**Foreign Registration Number:** 110353
**Foreign Registration Date:** 1974-02-12
**Country:** Cuba

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

2006-08-03 - Post Registration action mailed Sections 8 & 9

2006-08-02 - PAPER RECEIVED

2006-08-01 - FAX RECEIVED

2006-07-20 - Post Registration action mailed Sections 8 & 9

2006-07-20 - Assigned To Paralegal

2005-12-14 - Combined Section 8 (10-year)/Section 9 filed

2006-07-17 - Petition To Commissioner Denied

2006-07-07 - PAPER RECEIVED

2006-06-30 - PAPER RECEIVED

2006-06-28 - PAPER RECEIVED

2006-07-05 - FAX RECEIVED

2006-06-29 - FAX RECEIVED

2006-06-27 - FAX RECEIVED

2006-06-15 - PAPER RECEIVED

2006-06-14 - FAX RECEIVED

2006-05-09 - FAX RECEIVED

2006-04-07 - FAX RECEIVED

2006-04-07 - FAX RECEIVED

2006-04-07 - FAX RECEIVED

2006-02-21 - PAPER RECEIVED

2006-02-17 - FAX RECEIVED

2006-02-17 - FAX RECEIVED

2006-02-15 - PAPER RECEIVED

2006-02-14 - FAX RECEIVED

2006-02-02 - FAX SENT

2006-02-02 - FAX RECEIVED

2006-01-25 - Petition To Director Received

2006-01-31 - PAPER RECEIVED

2006-01-30 - FAX RECEIVED

2006-01-25 - FAX RECEIVED

2005-12-14 - PAPER RECEIVED

2004-01-29 - Cancellation dismissed for Proceeding

1997-07-30 - Abandonment deleted by TTAB

1997-07-30 - Counter claim canc.for Proceeding

1997-07-30 - Abandonment deleted by TTAB

1996-06-18 - First renewal 10 year

1993-02-10 - Section 9 filed/check record for Section 8

1996-04-17 - Cancellation terminated for Proceeding

1996-04-17 - Cancellation dismissed for Proceeding

1996-01-18 - Section 9 filed/check record for Section 8

1995-10-19 - Cancellation dismissed for Proceeding

1995-08-15 - Cancellation Instituted No. 999999

1995-08-15 - Cancellation Instituted No. 999999

1994-07-19 - Cancellation Instituted No. 999999

1982-04-12 - Section 8 (6-year) accepted

---

## CORRESPONDENCE INFORMATION

**Correspondent**
HERBERT F. SCHWARTZ (Attorney of record)

HERBERT SCHWARTZ
ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

**Domestic Representative**
ROPES & GRAY

EXHIBIT 5



RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C.
ATTORNEYS AT LAW
740 BROADWAY AT ASTOR PLACE
NEW YORK, N.Y. 10003-9518

TELEPHONE (212) 254-1111
CABLE "RABOUDIN, N.Y." TELEX 225028
FACSIMILE (212) 674-4614

LEONARD B. BOUDIN (1912-1989)
MICHAEL KRINSKY
ERIC M. LIEBERMAN
HILLARY RICHARD

THOMAS C. VILES
LAURIE EDELSTEIN*
CAROLINE RULE
MICHAEL LUDWIG
LAURENCE HELFER▲

*ADMITTED IN CALIFORNIA ONLY
▲ADMITTED IN PENNSYLVANIA AND
NEW JERSEY ONLY

COUNSEL
VICTOR RABINOWITZ
MICHAEL B. STANDARD
LEONARD I. WEINGLASS
ELLEN J. WINNER
DEBRA EVENSON
TERRY GROSS

January 18, 1996

VIA EXPRESS MAIL
LABEL NUMBER HB309370545

Post Registration/Fee
Assistant Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA  22202-3513

Re:    Renewal of Registration No. 1,031,651, HAVANA CLUB

Dear Trademark Office Staff:

Enclosed please find an application for renewal of the registration of the above-referenced trademark, together with a check for the $300.00 fee for this application.

Thank you for your attention.

Very truly yours,

Caroline Rule

CR/mp

Enclosure

#300 ⁰⁰ L-365                    PR

JAN 1 0 1996

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office                    9

Application for Renewal of a Federal Registration of a Mark Under
Section 9 of the Trademark Act of 1946, as Amended

Mark:                    HAVANA CLUB and Design
Registration No.:        1,031,651
Class No.:               33
Date of Registration:    January 27, 1976

TO THE ASSISTANT SECRETARY AND COMMISSIONER OF PATENTS AND
TRADEMARKS

Registrant's name:       Havana Club Holding, S.A.
Address:                 6 rue Heine, L-1720
                         Luxembourg

This application for renewal requests that the above identified
registration, granted to Empresa Cubana Exportadora de Alimentos y
Productos Varios, d/b/a/ Cubaexport, on January 27, 1976, which
applicant for renewal, Havana Club Holding, S.A., now owns as
shown in the records of the Patent and Trademark Office, be
renewed in accordance with the provisions of Section 9 of the Act
of July 5, 1946, as amended.

The owner of the registration, Havana Club Holding, S.A., is not
using the mark in commerce in the United States solely because any
such use is prohibited by the United States Treasury Department's
Cuban Assets Control Regulations, 31 C.F.R. 515.201(b). These
regulations implement the United States' total trade and financial
embargo against goods of Cuban origin and against goods in which
Cuba and Cuban nationals have or have had any interest of any
nature, direct or indirect, at any time since July 7, 1963. They
prohibit, inter alia, the importation of any goods into the United
States, and prohibit the licensing of trademarks in which Cuba or
any Cuban national has any interest of any nature, direct or
indirect, to any person subject to the jurisdiction of the United
States for use in connection with goods sold in commerce in the
United States or otherwise. Thus, the Cuban assets Control
Regulations prohibit the owner of the registration, Havana Club
Holding, S.A. from using the mark HAVANA CLUB and design in
commerce in the United States.

The Regulations explicitly provide that, notwithstanding the
foregoing prohibitions, trademarks may be registered and renewed in
the United States, 31 C.F.R. 515.527(a)(1). Thus, it is the policy
of the United States to provide protection for trademarks during
the period of time that trade between Cuban and the United States
is prohibited.

100 SH 02/08/96 1031651              0 365    300.00 CK ✓

Havana Club Holding, S.A. intends to sell and transport goods using the mark in commerce in the United States as soon as the above-cited prohibitions are lifted.

The special circumstance of the trade embargo with Cuba excuses as a matter of law the Owner's nonuse of the mark, as the nonuse is not due to any intention to abandon the mark. Indeed, the Trademark Trial and Appeal Board specifically so held with respect to this very mark in its decision in <u>Jose Ma. Arechabala Rodrigo v. Havana Rum & Liquors, et ano.</u>, Cancellation No. 22,881 (T.T.A.B. Oct. 19, 1995).

### DECLARATION

Luis Francisco Perdomo Hernandez being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of this document, declares that he is properly authorized to execute this document on behalf of the registrant; that he believes Havana Club Holding, S.A. to be the owner of the above identified registration, issued on January 27, 1976, as shown in the records in the Patent and Trademark Office. The mark shown in said registration is not currently in use in the United States for the reasons stated above; and all statements made of his own knowledge are true and all statements made on information and belief are believed to be true.

HAVANA CLUB HOLDING, S.A.

By_____
Luis Francisco Perdomo Hernandez
Vice Chairman

Date _January 12, 1996_

2

## POWER OF ATTORNEY

Registration owner hereby appoints as its attorneys, Michael Krinsky, Esq., Eric M. Lieberman, Esq., and Caroline Rule, members of the Bar of the State of New York, jointly and severally, with offices at Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., 740 Broadway, Fifth Floor, New York, New York 10003-9518, with full powers of substitution, association and revocation, including the appointment of associate counsel, to file this Declaration and to transact all business in the Patent and Trademark Office in connection therewith, all correspondence to be sent to them at their foregoing address.

## APPOINTMENT OF DOMESTIC REPRESENTATIVE

Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., 740 Broadway, Fifth Floor, New York, New York 10003-9518, is hereby designated registration owner's representative upon whom notice of process in proceedings affecting the mark may be served.

HAVANA CLUB HOLDING, S.A.

By: _____

Luis Francisco Perdomo Hernandez
Vice Chairman

Date: *January 12, 1996*

I hereby certify that today, January 18, 1996, I deposited this Application For Renewal of a Federal Registration of a Mark with the United States Postal Service, utilizing the "Express Mail Post Office to Addressee" service, label number HB 309370545 in an envelope addressed to: Post Registration/Fee, Assistant Commissioner for Trademarks, 2900 Crystal Drive, Arlington, Virginia 22202-3513.

_____

Marie Papp   1/18/96

3

# EXHIBIT 6



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

REGISTRATION NO.   1031651       SERIAL NO. 73/023981          PAPER NO.
                                                         MAILING DATE:  06/25/96

MARK: HAVANA CLUB (AND DESIGN)

REGISTRANT:  HAVANA CLUB HOLDING, S.A.

CORRESPONDENCE ADDRESS:
MICHAEL KRINSKY
RABINOWITZ, BOUDIN, STANDARD, ET AL.
740 BROADWAY, FIFTH FLOOR
NEW YORK, NY 10003-9518

Please furnish the following
in all correspondence:

1.  Your phone number and zip code.
2.  Mailing date of this action.
3.  Affidavit-Renewal Examiner's name.
4.  The address of all correspondence
    not containing fees should include
    the words "Box 5".
5.  Registration No.

RECEIPT IS ACKNOWLEDGED OF THE SUBMITTED REQUEST UNDER:

SECTION 9 OF THE TRADEMARK ACT AND 37 CFR SECS. 2.181-2.184.

YOUR REQUEST FULFILLS THE STATUTORY REQUIREMENTS AND RENEWAL HAS BEEN
GRANTED.

FRANCES A. PFOHL
AFFIDAVIT-RENEWAL EXAMINER
TRADEMARK EXAMINING OPERATION
(703) 308-9500  EXT. 127

EXHIBIT 7



**FISH & NEAVE**

Herbert F. Schwartz
Eric C. Woglom
John E. Nathan
Robert C. Morgan*
Kenneth B. Herman
Robert R. Jackson
Jesse J. Jenner
W. Edward Bailey
Patricia A. Martone
Roderick R. McKelvie***
James F. Haley, Jr.
Richard M. Barnes
Laurence S. Rogers

Vincent N. Palladino
Robert J. Goldman*
Thomas L. Secrest
Daniel M. Gantt
Norman H. Beamer*
Kevin J. Culligan
Glenn A. Ousterhout
Susan Progoff
Margaret A. Pierri
Douglas J. Gilbert
Denise L. Loring
Jeffrey H. Ingerman
Mark H. Bloomberg

Jane A. Massaro
Duane-David Hough
Mark D. Rowland*
Edward J. DeFranco*
Eric R. Hubbard
Kelsey I. Nix
William J. McCabe
Marta E. Gross
John M. Hintz
Richard A. Inz
Frances M. Lynch
Christopher J. Harnett
A. Joy Arnold

Steven Cherny
Joseph M. Guiliano
Jeanne C. Curtis
Gerald J. Flattmann, Jr.
Kevin P.B. Johnson*
Terrence J.P. Kearney*
Robert W. Morris
Avinash S. Lele*
Jane T. Gunnison
Richard L. Rainey***
James E. Hopenfeld*
Pablo D. Hendler
Brian C. Cannon**

Of Counsel
Kenneth A. Genoni
Gene W. Lee

Senior Attorneys
A. Peter Adler
Thomas J. Vetter
Charles Quinn
Lisa E. Crisci
Gabrielle E. Higgins

Frederick P. Fish 1855-1930
Charles Neave 1867-1937

* California and New York Bars    ** California Bar Only    *** Delaware Bar Only    **** DC Bar Only

HERBERT F. SCHWARTZ
DIRECT DIAL 212.596.9010
DIRECT FAX 646.728.2563
E-MAIL HSCHWARTZ@FISHNEAVE.COM

January 29, 2003

**VIA FACSIMILE (CONF. BY FEDEX)**

David W. Mills
Chief of Licensing Office of Foreign Assets Control
U.S. Department of Treasury
ANNEX 2221
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220

RE:    Application For Specific License in connection with *Galleon S.A.* v. *Havana Club Holding, S.A.,* Trademark Trial and Appeal Board Cancellation No. 24,108

Dear Mr. Mills:

Fish & Neave hereby applies for a specific license to provide and receive payment for legal services and representation to Empresa Cubana Exportadora De Alimentos y Productos Varios, S.A., dba Cubaexport ("Cubaexport") in connection with the above-captioned cancellation proceeding pending before the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office. By such proceeding, Bacardi seeks to cancel U.S. trademark registration No. 1,031,651, which is owned by Cubaexport and covers the mark HAVANA CLUB & Design. We seek this license in light of a decision issued by the TTAB on January 21, 2003 (copy enclosed) which joined Cubaexport as an additional respondent to the proceeding.

We specifically request that a specific license issue authorizing all necessary transactions in connection with legal representation by Fish & Neave of Cubaexport, a Cuban national, for the following purposes:

(i)    to defend to completion the cancellation proceeding entitled *Galleon S.A., Bacardi-Martini U.S.A., Inc., and Bacardi & Company Limited* v. *Havana Club Holding, S.A.,*

1251 AVENUE OF THE AMERICAS, NEW YORK, NY 10020 TEL 212.596.9000 FAX 212.596.9090
625 UNIVERSITY AVENUE, PALO ALTO, CA 94301 TEL 650.617.4000 FAX 650.617.4090
1825 I STREET, NW, SUITE 400, WASHINGTON DC 20006 TEL 202.857.5222 FAX 202.857.5237

FISH & NEAVE

David W. Mills
January 29, 2003
Page 2

*dba HCH, S.A., and Empresa Cubana Exportador De Alimentos y Productos Varios, S.A., dba Cubaexport,* joined as a defendant (TTAB Cancellation No. 24,108), including appeals;

     (ii)    to solicit and receive fee payments and reimbursements for expenses incurred in connection with the legal representation authorized by the license, provided that said fees and expenses are paid exclusively from fresh funds outside the United States; and

     (iii)    for travel to Cuba by attorneys at this firm and others acting under their supervision and control, for the purposes of communicating with our client in connection with the above.

We make the instant application for a license without prejudice to our position that the Office of Foreign Assets Control lacks statutory authority to require a license for a Cuban national to defend a proceeding of the nature involved here and to defend the same to conclusion.

Inasmuch as this matter concerns legal proceedings, we are taking the liberty of forwarding a copy of this application to the Office of Chief Counsel, OFAC.

Thank you for your attention to this matter.

Sincerely yours,

Herbert F. Schwartz

HFS:bjd
Enclosure

cc:    Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
       Ms. Clara David, Licensing Division, OFAC

# EXHIBIT 8



**DEPARTMENT OF THE TREASURY**

WASHINGTON, D.C. 20220

Cuban Assets Control Regulations                    License No. CU-7141

LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a), 22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:  Fish & Neave (the ''Licensee'')
     1251 Avenue of the Americas
     New York, New York 10020
     Attn: Herbert F. Schwartz

1. Pursuant to your letter dated January 29, 2003, the following is hereby licensed:

*****SEE REVERSE*****

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority of Section 620(a), Public Law 87-195, or under the authority of section 5(b) of the Act of October 6, 1917, as amended, and the terms of this license.

3. The licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license is not transferable, is subject to the provisions of Title 31, Part 501 and 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

OFFICE OF FOREIGN ASSETS CONTROL

                              By _____
                    acting for    R. Richard Newcomb, Director

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No. CU-71416
Licensee: Fish & Neave

SECTION 1 - AUTHORIZATIONS: All transactions are authorized to enable Fish & Neave (the ``Licensee''), in connection with all matters related to Galleon S.A. v. Havana Club Holding, S.A., Trademark Trial and Appeal Board Cancellation No. 24,108, to provide legal services to, receive payment for such services from and to receive reimbursement for expenses related to such services from Empresa Cubana Exportadora De Alimentos y Productos Varios (``Cubaexport''), a Cuban national.

Authority: 31 CFR 515.801.

SECTION 2 - CONDITIONS: (a) It is a condition of this License that Licensee shall keep a full and accurate record of each transaction undertaken pursuant to this License, and that each such record shall be available for examination for at least five years after the date of such transaction.

SECTION 3 - REPORTING REQUIREMENT: Pursuant to 31 CFR 501.605 Licensee i directed to provide all required reports, notices, copies and facsimiles

SECTION 4 - WARNINGS: (a) Except as explicitly authorized in Section 1 ove, nothing in this license authorizes persons subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Regulations.

SECTION 5 - WARNINGS: (b) Nothing in this License authorizes any debit credit from any blocked account.

SECTION 6 - PRECEDENCE: This License is issued on a nonprecedential basis.

*********************************************************************



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

Cuban Assets Control Regulations                    License No. CU-71417

### LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a), 22 U.S.C. 6001 et seq., Executive Order 9193, Proclamation 3447, and 31 CFR Parts 501 and 515)

To:   Fish & Neave (the "Licensee")
      1251 Avenue of the Americas
      New York, New York 10020
      Attn: Herbert F. Schwartz

1. Pursuant to your application materials dated January 29, 2003 the following is hereby licensed:

*****SEE REVERSE*****

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of e Treasury under the authority of Section 620(a), Public Law 87-195, or under the chority of section 5(b) of the Act of October 6, 1917, as amended, and the terms of this license.

3. The licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on March 1, 2004, and is not transferable, is subject to the provisions of Title 31, Parts 501 and 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

OFFICE OF FOREIGN ASSETS CONTROL

By _____    3/6/03

David W. Mills, Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

:ense No. CU-71417
.censee: Fish & Neave

SECTION 1 -- AUTHORIZATION: (a) This license authorizes attorneys and others acting under their supervision and control under the auspices of Fish & Neave (the ``Licensees'') to engage in travel-related transactions in Cuba as set forth in 31 CFR 515.560(c) and such additional transactions as are directly incident to performing professional research and participating in professional meetings with Empresa Cubana Exportadora De Alimentos y Productos Varios (``Cubaexport'') in connection with all matters related to Galleon S.A. v. Havana Club Holding, S.A., Trademark Trial and Appeal Board Cancellation No. 24,108.

(b) This license authorizes multiple trips during the validity period of the license.

Authority: 31 CFR 515.560(c) and 515.564(b).

SECTION 2 - CONDITION: (a) It is a condition of this license that the Licensees shall adhere to a full-time schedule of professional research and professional meeting activities consistent with 31 CFR 515.564(b).

`b) It is a condition of this License that Licensee shall keep a full and :urate record of each transaction undertaken pursuant to this License, and that each such record shall be available for examination for at least five years after the date of such transaction.

SECTION 3 - WARNING: (a) This license does not authorize travel-related transactions related to commercial or touristic activities that are inconsistent with a full-time agenda of professional research and professional meeting activities.

(b) This license does not authorize the Licensee to provide the travel services described in 31 CFR 515.572(a)(1) to other organizations. Specific travel service provider authorization is required for this purpose based on an application that must be filed and processed through OFAC's Miami office.

SECTION 4 - INFORMATION:  The Department of State publishes consular information sheets (and, when necessary, travel warnings) on every country and territory in the world, including Cuba, which are available on the Internet at http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000.  An abridged version of consular information sheets can be heard by calling (202) 647-5225.

TION 5 - PRECEDENCE: This license is issued on a non-precedential sis.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

EXHIBIT 9



**FISH & NEAVE**

| | | | | |
|---|---|---|---|---|
| Herbert F. Schwartz | Robert J. Goldman* | Duane-David Hough | Gerald J. Flattmann, Jr. | Of Counsel |
| Eric C. Woglom | Thomas L. Secrest | Mark D. Rowland* | Kevin P.B. Johnson* | Albert E. Fey |
| Robert C. Morgan* | Daniel M. Gantt | Edward J. DeFranco* | Terrence J. P. Kearney* | Kenneth A. Genoni |
| Kenneth B. Herman | Norman H. Beamer* | Eric R. Hubbard | Robert W. Morris | Gene W. Lee |
| Robert R. Jackson | Kevin J. Culligan | William J. McCabe | Avinash S. Lele* | Martin A. Leroy |
| Jesse J. Jenner | Glenn A. Ousterhout | John M. Hintz | Jane T. Gunnison | Daniel M. Becker*** |
| W. Edward Bailey | Susan Progoff | Richard A. Inz | Richard L. Rainey**** | Senior Attorneys |
| Patricia A. Martone | Margaret A. Pierri | Frances M. Lynch | James E. Hopenfeld** | A. Peter Adler |
| Roderick R. McKelvie**** | Douglas J. Gilbert | Christopher J. Harnett | Pablo D. Hendler | Thomas J. Vetter |
| James F. Haley, Jr. | Denise L. Loring | A. Joy Arnold | Brian C. Cannon* | Charles Quinn |
| Richard M. Barnes | Jeffrey H. Ingerman | Steven Cherny | Robert B. Wilson | Lisa E. Cristal |
| Laurence S. Rogers | Mark H. Bloomberg | Joseph M. Galliano | | Gabriele E. Higgins* |
| Vincent N. Palladino | Jane A. Massaro | Jeanne C. Curtis | | Thomas P. Burke |

Frederick P. Fish 1855-1930
Charles Neave 1867-1937          * California and New York Bars    ** California Bar Only    *** DC Bar Only

**MARTIN A. LEROY**
DIRECT DIAL 212.596.9127
DIRECT FAX 646.728.2618
E-MAIL MLEROY@FISHNEAVE.COM

February 11, 2004

**VIA FACSIMILE (CONF. BY FEDEX**

Mr. David W. Mills
Chief of Licensing
Licensing Division
Office of Foreign Assets Control
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

Dear Mr. Mills:

Fish & Neave, a law firm, is currently the licensee under License No. CU-71417 pertaining to authorization for (a) "attorneys and others acting under their supervision and control under the auspices of Fish & Neave (the 'Licensee') to engage in travel-related transactions in Cuba as set forth in 31 CFR 515.560(c) and such additional transactions as are directly incident to performing professional research and participating in professional meetings with Empresa Cubana Exportadora De Alimentos y Productos Varios ('Cubaexport') in connection with all matters related to Galleon S.A. v. Havana Club Holding, S.A., Trademark Trial and Appeal Board Cancellation No. 24,108," and (b) "multiple trips during the validity period of the license." License No. CU-71417 is set to expire on March 1, 2004 and was provided under authority of 31 CFR 515.560(c) and 515.564(b). A copy of the license is enclosed.

Because Fish & Neave is continuing to represent Cubaexport in connection with the above-mentioned matters, Fish & Neave hereby requests a renewal or extension of License No. CU-71417, or in the alternative, a new special license serving the purposes mentioned above.

FISH & NEAVE

Mr. David W. Mills
February 11, 2004
Page 2


The aforementioned cancellation proceeding was initiated by Bacardi and relates to Cubaexport's U.S. trademark registration No. 1,031,651 of HAVANA CLUB & Design. The Trademark Trial and Appeal Board joined Cubaexport as a defendant in the cancellation proceeding.

Fish & Neave previously obtained License No. CU-71416 (a copy of which is enclosed) pertaining to authorization of all transactions "to enable Fish & Neave (the 'Licensee'), in connection with all matters related to Galleon S.A. v. Havana Club Holding, S.A., Trademark Trial and Appeal Board Cancellation No. 24, 108, to provide legal services to, receive payment for such services from and to receive reimbursement for expenses related to such services from Empresa Cubana Exportadora De Alimentos y Productos Varios ('Cubaexport'), a Cuban national."

In as much as this matter concerns legal proceedings, we are taking the liberty of forwarding a copy of this application to the Office of Chief Counsel, OFAC.

Thank you for your attention to this matter. If we can be of further assistance, please do not hesitate to call me at 212.596.9127.

Sincerely yours,

Martin A. Leroy

MAL:afg
Enclosures

cc:     Matthew Tuchband, Office of Legal Counsel, OFAC
        Clara David, Licensing Division, OFAC

EXHIBIT 10

FEB-24-2004　12:44　　OFAC　　　　　　　　　　　　　　　　　　　P.01/0



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**　　　　　　　　　　　**License No. CT-1943**

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:　　**Fish & Neave (the "Licensee")**
　　　1251 Avenue of the Americas
　　　New York, NY 10020
　　　ATTN: Martin A. Leroy

1. Pursuant to your application dated **February 11, 2004**, the following is hereby licensed:

**\*\*\*\*\*SEE REVERSE\*\*\*\*\***

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **March 31, 2005**, is not transferable, is subject to the provisions of 31 C.F.R. Parts 501 and 515, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

## OFFICE OF FOREIGN ASSETS CONTROL

By _Clara David  2/20/04_
for David W. Mills
Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No. CT-1943                                                    Page 2 of 2
Licensee:  Fish & Neave

`CTION 1 – AUTHORIZATION:  (a)` This license authorizes the Licensee to engage in travel-related
.nsactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the
Regulations") and such additional transactions as are directly incident to professional research relevant to l(
proceedings in the United States, including but not limited to conducting interviews and depositions, and
creating written and other records, as described in your application, subject to the conditions set forth in Sect
2 below.

**(b)**  This license authorizes the Licensee to provide legal services to, and to receive payment for such service
from Empresa Cuban Exportatiora de Alimentos y Productos Varios ("Cubaexports"), a Cuban national.

**(c)** This license authorizes multiple trips during the validity period of the license.

Authority: 31 CFR 515.560(c), 515.564(b) and 515.801

**SECTION 2 – CONDITIONS:  (a)** The Licensee must provide each traveler with a letter confirming that th
named individual will engage in authorized activities on behalf of the Licensee and cite the number of this
license.

**(b)** It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the
Regulations, by, for example, providing each traveler with OFAC's "Travel Restrictions" brochure or other
document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c)
the Regulations prior to travel.

`.CTION 3 - WARNINGS:`  **Except as explicitly authorized in Section 1 above, nothing in this license
authorizes any person subject to the jurisdiction of the United States to engage in any transaction or
activity prohibited by the Regulations.  This license only authorizes travel-related transactions consiste
with a full-time schedule of activities authorized by this license.**

**SECTION 4 - RECORDKEEPING REQUIREMENTS:**  The Licensee is required to keep a list of
individuals whose travel transactions were authorized under this license and their actual dates of travel.  Each
individual traveler must also retain records related to his/her travel transactions.  Such records shall be made
available for examination upon demand for at least 5 years from the date of each transaction.  A report from t
Licensee is required on activities undertaken pursuant to this license in conjunction with an application to ren
or extend this license.

**SECTION 5 – INFORMATION:  (a)** For information concerning the categories of travel for which license
may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-
Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs &
Country Summaries – Cuba, Guidelines and Information).

**(b)** The Department of State publishes consular information sheets (and, when necessary, travel warnings) on
every country and territory in the world, including Cuba, which are available on the Internet at
http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000.  An
abridged version of consular information sheets can be heard by calling (202) 647-5225.

CTION 6 - PRECEDENCE:  The authorization contained in this license is limited to the facts and
..rcumstances specific to the application.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EXHIBIT 11



ROPES & GRAY LLP

ONE METRO CENTER   700 12TH STREET, NW   SUITE 900   WASHINGTON, DC 20005-3948   202-508-4600   F 202-508-4650

BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

**RENÉE L. STASIO**
DIRECT DIAL  202.303.2429
DIRECT FAX  202.303.2918
E-MAIL  RENEE.STASIO@ROPESGRAY.COM

January 5, 2005

**VIA FACSIMILE (CONF. BY FEDEX)**

Mr. David W. Mills
Chief of Licensing
Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Office, N.W.
Washington D.C. 20220

Dear Mr. Mills:

   The law firm of Fish & Neave is currently the licensee under License No. CT-1943 pertaining to authorization for (a) "…Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the 'Regulations') and such additional transactions as are directly incident to professional research relevant to legal proceedings in the United States, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below; (b) "…Licensee to provide legal services to, and receive payment for such services from Empresa Cubana Exportadora De Alimentos y Productos Varios ('Cubaexport'), a Cuban national; (c) multiple trips during the validity period of the license." License No. CT-1943 is set to expire on March 31, 2005.  A copy of this license is enclosed.

   On January 29, 2004, the Trademark Trial and Appeal Board of the United States Patent and Trademark Office dismissed cancellation proceeding number 24,108.  On March 29, 2004, Bacardi & Company Ltd. (the parent company of Galleon S.A.) and Bacardi U.S.A., Inc. filed a complaint against Havana Club Holding S.A. and Cubaexport, which was joined by the Trademark Trial and Appeal Board to the cancellation proceeding.  The complaint appeals the decision of the Trademark Trial and Appeal Board and asserts additional claims against the defendants.  Fish & Neave has continued to represent Cubaexport in these proceedings.

Mr. David W. Mills
January 5, 2005
Page 2


Effective October 1, 2004, Fish & Neave became Fish & Neave LLP.  Effective January 1, 2005, Fish & Neave merged with Ropes & Gray LLP.  The merged entity will conduct business under the name of Ropes & Gray LLP.  Because Ropes & Gray will be the law firm representing Cubaexport in connection with the above-mentioned matters, Ropes & Gray hereby requests a renewal of License No. CT-1943, or in the alternative, a new special license naming Ropes & Gray as the Licensee and giving Ropes & Gray the same rights as authorized in License No. CT-1943.

Thank you for your attention to this matter.  If we can be of further assistance, please do not hesitate to call me at (202)303-2429.

Sincerely yours,

Renée L. Stasio

RS:rs
Enclosures

cc:    Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC

# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

Cuban Assets Control Regulations

License No. CT-1943

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:     **Fish & Neave** (the "Licensee")
1251 Avenue of the Americas
New York, NY 10020
ATTN: Martin A. Leroy

1. Pursuant to your application dated **February 11, 2004**, the following is hereby licensed:

*****SEE REVERSE*****

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **March 31, 2005**, is not transferable, is subject to the provisions of 31 C.F.R. Parts 501 and 515, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

## OFFICE OF FOREIGN ASSETS CONTROL

By *Clara David* 2/20/04
for David W. Mills
Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No. CT-1943                                                    Page 2 of 2
Licensee:  Fish & Neave

**SECTION 1 – AUTHORIZATION:**  (a) This license authorizes the Licensee to engage in travel-related
transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the
"Regulations") and such additional transactions as are directly incident to professional research relevant to legal
proceedings in the United States, including but not limited to conducting interviews and depositions, and
creating written and other records, as described in your application, subject to the conditions set forth in Section
2 below.

**(b)**  This license authorizes the Licensee to provide legal services to, and to receive payment for such services
from Empresa Cuban Exportatiora de Alimentos y Productos Varios ("Cubaexports"), a Cuban national.

**(c)** This license authorizes multiple trips during the validity period of the license.

**Authority: 31 CFR 515.560(c), 515.564(b) and 515.801**

**SECTION 2 – CONDITIONS:**  (a) The Licensee must provide each traveler with a letter confirming that the
named individual will engage in authorized activities on behalf of the Licensee and cite the number of this
license.

**(b)** It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the
Regulations, by, for example, providing each traveler with OFAC's "Travel Restrictions" brochure or other
document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of
the Regulations prior to travel.

**SECTION 3 – WARNINGS:  Except as explicitly authorized in Section 1 above, nothing in this license
authorizes any person subject to the jurisdiction of the United States to engage in any transaction or
activity prohibited by the Regulations.  This license only authorizes travel-related transactions consistent
with a full-time schedule of activities authorized by this license.**

**SECTION 4 - RECORDKEEPING REQUIREMENTS:**  The Licensee is required to keep a list of
individuals whose travel transactions were authorized under this license and their actual dates of travel.  Each
individual traveler must also retain records related to his/her travel transactions.  Such records shall be made
available for examination upon demand for at least 5 years from the date of each transaction.  A report from the
Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew
or extend this license.

**SECTION 5 – INFORMATION:**  (a) For information concerning the categories of travel for which licenses
may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-
Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs &
Country Summaries – Cuba, Guidelines and Information).

**(b)** The Department of State publishes consular information sheets (and, when necessary, travel warnings) on
every country and territory in the world, including Cuba, which are available on the Internet at
http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000.  An
abridged version of consular information sheets can be heard by calling (202) 647-5225.

**SECTION 6 - PRECEDENCE:**  The authorization contained in this license is limited to the facts and
circumstances specific to the application.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DAY FILE COPY**

DC:26368.1
001214.0001

**RENÉE L. STASIO**
DIRECT DIAL 202.303.2429
DIRECT FAX 202.303.2918
E-MAIL RENEE.STASIO@ROPESGRAY.COM

January 5, 2005

**VIA FACSIMILE (CONF. BY FEDEX)**

Mr. David W. Mills
Chief of Licensing
Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Office, N.W.
Washington D.C. 20220

Dear Mr. Mills:

     The law firm of Fish & Neave is currently the licensee under License No. CT-1943 pertaining to authorization for (a) "...Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the 'Regulations') and such additional transactions as are directly incident to professional research relevant to legal proceedings in the United States, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below; (b) "...Licensee to provide legal services to, and receive payment for such services from Empresa Cubana Exportadora De Alimentos y Productos Varios ('Cubaexport'), a Cuban national; (c) multiple trips during the validity period of the license." License No. CT-1943 is set to expire on March 31, 2005. A copy of this license is enclosed.

     On January 29, 2004, the Trademark Trial and Appeal Board of the United States Patent and Trademark Office dismissed cancellation proceeding number 24,108. On March 29, 2004, Bacardi & Company Ltd. (the parent company of Galleon S.A.) and Bacardi U.S.A., Inc. filed a complaint against Havana Club Holding S.A. and Cubaexport, which was joined by the Trademark Trial and Appeal Board to the cancellation proceeding. The complaint appeals the decision of the Trademark Trial and Appeal Board and asserts additional claims against the defendants. Fish & Neave has continued to represent Cubaexport in these proceedings.

Mr. David W. Mills
January 5, 2005
Page 2


      Effective October 1, 2004, Fish & Neave became Fish & Neave LLP.  Effective January 1, 2005, Fish & Neave merged with Ropes & Gray LLP.  The merged entity will conduct business under the name of Ropes & Gray LLP.  Because Ropes & Gray will be the law firm representing Cubaexport in connection with the above-mentioned matters, Ropes & Gray hereby requests a renewal of License No. CT-1943, or in the alternative, a new special license naming Ropes & Gray as the Licensee and giving Ropes & Gray the same rights as authorized in License No. CT-1943.

      Thank you for your attention to this matter.  If we can be of further assistance, please do not hesitate to call me at (202)303-2429.

      Sincerely yours,


      Renée L. Stasio


RS:rs
Enclosures

cc:     Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC

bcc:    Oscar M. Garibaldi, Esq.
       William R. Golden, Jr., Esq.
       Charles S. Sims, Esq.

EXHIBIT 12



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

Case No. CT-4410

JAN 1 1 2005

Renee L. Stasio
Ropes & Gray LLP
700 12th H Street, NW, Suite 900
Washington, DC 20005-3948

RE: Letter dated January 5, 2005

Dear Mr. Stasio:

This is in response to your letter on behalf of the Ropes & Gray LLP, requesting authorization to engage in travel-related transactions involving Cuba.

The Cuban Assets Control Regulations, 31 C.F.R. Part 515 (the "Regulations"), administered by the U.S. Department of the Treasury's Office of Foreign Assets Control, prohibit all persons subject to the jurisdiction of the United States from dealing in property in which Cuba or a Cuban national has an interest. This prohibition includes all Cuba travel-related transactions unless such transactions are authorized in accordance with current licensing policy set forth in § 515.560(a) and the related sections of the Regulations enumerated in § 515.560(a).

We have reviewed your request and determined that you have not addressed a portion of the relevant criteria listed in our *Comprehensive Guidelines for License Applications to Engage in Travel-Related Transactions Involving Cuba* (the "Application Guidelines"), which are available on our Internet website at www.treas.gov/ofac. Accordingly, your application is hereby denied.

Should you wish to reapply for a license, please review and address the Application Guidelines for the relevant category of travel in order that we may more favorably consider your request.

Sincerely,

David W. Mills
Chief of Licensing
Office of Foreign Assets Control



RECEIVED
JAN 1 9 2005

FILE COPY

## XI.    TRAVEL RELATED TO LICENSED EXPORTATIONS

**1.  Exportations from the United States and exportations of 100% U.S.-origin items from oversees entities — 31 CFR § 515.533(e)**

**Application Criteria for a specific license under § 515.533(e):**

    1.  <u>Identify yourself</u>.  Furnish your name, address, and daytime phone number.

    2.  <u>Identify your organization</u>.  If you are applying on behalf of an organization, tell us about the organization:  what type of organization is it (e.g., charitable organization, producer, or seller of agricultural commodities), what are its goals/objectives.  If available, provide a copy of its mission statement, brochure, or other literature describing typical activities it undertakes.

    3.  <u>Identify the category of travel</u>.  State your request for a specific license under § 515.533(e) of the Regulations to engage in travel-related transactions in Cuba for the purpose of marketing, sales negotiation, accompanied delivery, or servicing of exports that are consistent with the licensing policy of the U.S. Department of Commerce.

    4.  <u>Identify the exportations involved</u>.

     (a)  <u>Humanitarian donations</u>:  The following must be provided in the application: 1) a copy of the Department of Commerce export license or other Department of Commerce authorization listing the donated goods; 2) the name and address of the Cuban consignee(s) or donee(s); and 3) a description of the plan of delivery of the items in Cuba that correlates to the consignees identified in the Department of Commerce license.  Travel-related transactions will only be authorized for purposes of delivering the goods to consignees pre-approved and identified in the license issued by the Department of Commerce.  Licenses will not be issued under this section in connection with carrying or transporting small quantities of items such as those that are eligible to be shipped in gift parcels.  Furthermore, licenses will generally authorize 5-days of travel in Cuba for deliveries to Havana including arrival and departure, but additional days of travel for deliveries to areas outside of Havana, Cuba, may be authorized where appropriate.

     (b)  <u>Commercial exportations</u>: 1) Provide a description of the goods that are or may be exported to Cuba and the purpose of travel in regard to such exports: *e.g.*, marketing, sales negotiation, accompanied delivery, or servicing.  2) Provide

General transportation services relating to licensed exports are authorized by general license in § 515.533(a) of the Regulations. Financing of these exports is restricted by TSRA to payment of cash in advance or financing by third country financial institutions. Such financing may be confirmed or advised by a U.S. financial institution.  Vessels are authorized by general license under § 515.550 of the Regulations to carry goods to Cuba that are authorized for export by the Department of Commerce or items that are exempt from the embargo, e.g., informational materials, provided that: 1) they have not engaged in unauthorized trade, including services in Cuba within 180 days and, 2) the vessels are not otherwise carrying goods or passengers in which Cuba or a Cuban national has an interest.  Travel-related transactions by transportation services companies must be specifically licensed and will be considered pursuant to § 515.533(e) of the Regulations.

For questions related to the licensing requirements for the exportation of commodities and humanitarian goods from the United States to Cuba, please contact the U.S. Department of Commerce, Bureau of Industry and Security at (202) 482-4811

**Examples:**

<u>Licensable</u>

Example 1:  A U.S. charitable organization has obtained authorization from the U.S. Department of Commerce to deliver medicine and clothing to a Cuban non-governmental organization and furnishes a copy of the license and information on the organization's plan for delivery of the goods to the consignees designated in the Commerce Department's license.

Example 2:  A consultant hired by a U.S. medical supply company proposes to engage in travel-related transactions in Cuba for the purpose of meeting with Cuban officials to discuss the sale of medical supplies to Cuba eligible for exportation under Department of Commerce rules.

Example 3:  A U.S. association representing grain producers proposes to engage in travel-related transactions in Cuba to discuss with Cuban officials the marketing and sale of grains in Cuba eligible for exportation under Department of Commerce rules.

Example 4:  Representatives of a medical supplies company wish to attend a Cuba-sponsored trade fair on medical equipment and medicine to market and sell medical supplies to Cuban entities that are eligible consignees under Department of Commerce rules.

Example 5:  A seaport authority wants to travel to Cuba on its own behalf for a brief visit to discuss the marketing and sale of products that would be exported through that particular seaport to

entering into a contractual agreement to provide services directly to a Cuban national. These services go beyond the type of activities permitted under this licensing provision.

**Mailing Address:**  Applications for specific licenses should be submitted to:

Licensing Division
Office of Foreign Assets Control
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C.  20220
Tel. 202/622-2480
Internet website at www.treas.gov/ofac (Sanctions Programs & Country Summaries - Cuba, Guidelines and Information)

Revised September 30, 2004

**(d) [Reserved]**

**(e) Specific licenses may be issued on a case-by-case basis authorizing the travel-related transactions set forth in § 515.560(c) and other transactions that are directly incident to the marketing, sales negotiation, accompanied delivery, or servicing of exports that appear consistent with the export or re-export licensing policy of the Department of Commerce.**

Revised September 30, 2004

EXHIBIT 13



**ROPES & GRAY LLP**

ONE METRO CENTER   700 12TH STREET, NW   SUITE 900   WASHINGTON, DC 20005-3948   202-508-4600   F 202-508-4650

BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

January 26, 2005

Renée L. Stasio
202-508-4673
renee.stasio@ropesgray.com

**VIA FACSIMILE (CONF. BY FEDEX)**

Jay Ahn
Licensing Department
Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, DC  20220

Mr. Ahn:

      Pursuant to your request made during our January 25 telephone conversation, I am providing you with additional information regarding the renewal of License No. CT-1943. I had previously requested renewal of this license in my January 5, 2005 letter to David Mills (the "Stasio letter").

      Referring you to the second paragraph of the Stasio letter, I explained that a complaint is currently pending in the U.S. District Court for the District of Columbia against our clients Cubaexport and Havana Club Holdings S.A. (the "District Court case"). On behalf of our clients, Ropes & Gray has filed a motion to dismiss that complaint, and we are currently awaiting a decision from the Court on that motion.

      In the past year, we have not had the opportunity to travel to Cuba despite the authorization given to us by OFAC in License No. CT-1943. We have not traveled to Cuba because we have not started to conduct discovery in the District Court case. Once the Court rules on our clients' motion to dismiss, we will know whether we need to proceed with discovery, which undoubtedly will require travel to Cuba to, among other things, conduct depositions and collect documents.

      For your convenience, I have attached the Stasio letter which included License No. CT-1943. In addition, I have attached OFAC's January 11 letter in response to the Stasio letter.

ROPES & GRAY LLP

Jay Ahn                              - 2 -                        January 26, 2005


        I hope this letter provides you with the information you need in order to renew
Ropes & Gray's license.  Thank you for your attention to this matter.  If I can be of further
assistance, please do not hesitate to call me at (202) 508-4673.


Regards,

Renée L. Stasio

RLS:cs
Enclosure

cc:     Matthew Tuchband, Office of Legal Counsel, OFAC
        Clara David, Licensing Division, OFAC

EXHIBIT 14

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

License No. CU-74488

Cuban Assets Control Regulations

# L I C E N S E

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:    **Ropes & Gray LLP (the "Licensee")**
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
Attn: Renee L. Stasio, Esq.

1.  Pursuant to an application dated **January 26, 2005**, the following transactions are hereby licensed:

*****SEE REVERSE*****

2.  This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3.  The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4.  This license expires on **March 31, 2006**, and is not transferable, is subject to the provisions of Title 31, Part 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5.  This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

**OFFICE OF FOREIGN ASSETS CONTROL**

By *Clara David* · 3/4/05
for David W. Mills
Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

ense No. CU-74488                                                      **Page 2 of 2**
ensee:  Ropes & Gray LLP

CTION 1 - AUTHORIZATION:  (a) All transactions are authorized to enable the Licensee, in connection
legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and
vana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark,
lescribed in the application, to receive payment for such services and reimbursement for expenses related to
h services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the
ited States via a third-country bank.

**thority:  31 C.F.R. § 515.801.**

CTION 2 --RECORDKEEPING REQUIREMENTS:  The Licensee is required to keep a record of all
asactions engaged in pursuant to the authorization (Section 1) of this license.  Such records shall be made
ailable for examination, upon demand, by the Office of Foreign Assets Control for at least five years from the
e of each transaction.

CTION 3 - WARNINGS:  (a) Except as authorized above, nothing in this license authorizes persons subject
the jurisdiction of the United States to engage in any transaction or activity prohibited by the Cuban Assets
ntrol Regulations, 31 C.F.R. Part 515, as amended.

) Nothing in this license authorizes the transfer of funds through methods which involves debits or credits to
icked accounts subject to the jurisdiction of the United States.

CTION 4 - PRECEDENCE:  The authorization contained in this license is limited to the facts and
cumstances specific to the application.
*******************************************************************************



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                                    **License No. CT-4558**

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:    **Ropes & Gray LLP (the "Licensee")**
       700 12th Street, NW, Suite 900
       Washington, DC 20005-3948
       Attn: Renee L. Stasio, Esq.

1. Pursuant to an application dated **January 26, 2005**, the following transactions are hereby licensed:

**\*\*\*\*\*SEE REVERSE\*\*\*\*\***

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **March 31, 2006**, and is not transferable, is subject to the provisions of Title 31, Part 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

### OFFICE OF FOREIGN ASSETS CONTROL

By  *Clara David*  3/4/05
   ~~for~~ David W. Mills
   Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No. CT-4558                                                    Page 2 of 2
Licensee: Ropes & Gray LLP

**SECTION 1 – AUTHORIZATION:** (a) This license authorizes the Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the "Regulations") and such additional transactions as are directly incident to professional research in connection the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below.

**Authority: 31 CFR 515.560(c) and 515.564(b).**

**SECTION 2 – CONDITIONS:** (a) The Licensee must provide each traveler with a letter confirming that the named individual will engage in authorized activities on behalf of the Licensee and cite the number of this license.

(b) It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the Regulations, by, for example, providing each traveler with OFAC's "Travel Restrictions" brochure or other document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of the Regulations prior to travel.

**SECTION 3 - WARNINGS: Except as explicitly authorized in Section 1 above, nothing in this license authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Regulations. This license only authorizes travel-related transactions consistent with a full-time schedule of activities authorized by this license.**

**SECTION 4 - RECORDKEEPING REQUIREMENTS:** The Licensee is required to keep a list of individuals whose travel transactions were authorized under this license and their actual dates of travel. Each individual traveler must also retain records related to his/her travel transactions. Such records shall be made available for examination upon demand for at least 5 years from the date of each transaction. A report from the Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew or extend this license.

**SECTION 5 – INFORMATION:** (a) For information concerning the categories of travel for which licenses may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs & Country Summaries – Cuba, Guidelines and Information).

(b) The Department of State publishes consular information sheets (and, when necessary, travel warnings) on every country and territory in the world, including Cuba, which are available on the Internet at http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000. An abridged version of consular information sheets can be heard by calling (202) 647-5225.

**SECTION 6 - PRECEDENCE:** The authorization contained in this license is limited to the facts and circumstances specific to the application.
*********************************************************************************************

EXHIBIT 15

# ROPES & GRAY

## FISH & NEAVE IP GROUP

ROPES & GRAY LLP

1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

<u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

Enclosed is an original application for renewal of Registration No. 1,031,651, executed by the registrant Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"). Please use Ropes & Gray deposit account number 06-1075 (Order Number 001214-0001) for the filing fee in this matter. A duplicate copy of the application is included at Attachment 1 to this letter.

Payment of the filing fee is being made pursuant to License No. CU 74488 issued by the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury on March 4, 2005 (the "License", Attachment 2) in order to maintain the *status quo* by maintaining Registration No. 1,031,651 until a decision regarding cancellation of the registration can be rendered in ongoing litigation, *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation").

For the benefit of the Patent and Trademark Office, Cubaexport is setting forth in this letter the circumstances under which it applied for and received from OFAC licenses concerning representation of Cubaexport in the Litigation, as well as the reasons Cubaexport believes the *status quo* should be maintained pending resolution of this dispute.

### The Dispute

Cubaexport was joined as a respondent in a cancellation proceeding, *Galleon S.A., Bacardi-Martini U.S.A., Inc., and Bacardi Company Limited* v. *Havana Club*, No. 24108 (1995) (the "Cancellation Proceeding"), on January 21, 2003. On January 29, 2004, the United States Trademark Trial and Appeal Board (the "Board") denied petitioners' ("Bacardi's") motion for

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 2

summary judgment and dismissed the Cancellation Proceeding (the "Board Decision", Attachment 3).

In reaching its decision, the Board stated:

we conclude that HCH [Havana Club Holding] was in compliance with PTO renewal rules and practice when it filed its renewal application in its name [in 1996], that it filed a proper renewal application, that the PTO acted properly in accepting the renewal application and renewing the registration [1,031,651] in HCH's name, and that the resulting renewal registration is valid and must be so recognized by the Board. (Board Decision 39)

and went on to state:

Also, we have found that none of the allegations of the supplemental and amended petition to cancel state a claim for cancellation. Therefore, the supplemental and amended petition to cancel is DISMISSED. (Board Decision 56)

Bacardi appealed the Board Decision by instituting the Litigation on March 29, 2004. In its Complaint, Bacardi seeks among other relief reversal of the Board Decision and cancellation of Registration No. 1,031,651. The Court in the Litigation has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint and has ordered the parties to engage in discovery relating to those motions before the motions are filed. That discovery is currently being conducted by the parties.

### OFAC's Grant of Specific Authority
### To Represent Cubaexport In The Dispute

Since Cubaexport was joined as a respondent in the Cancellation Proceeding, the law firm of Ropes & Gray or its predecessor firm Fish & Neave has been retained to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark. Ropes & Gray and its predecessor firm Fish & Neave have sought and received a license from OFAC for this purpose.

In particular, on March 10, 2003 OFAC issued License No. CU-71416 authorizing:

All transactions ... to enable Fish & Neave (the "Licensee"), in connection with all matters related to *Galleon S.A.* v. *Havana Club Holding, S.A.,* Trademark Trial and Appeal Board Cancellation No. 24,108, to provide legal services to, receive payment for such services from and to receive reimbursement for expenses related to such services from Empresa

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 3

Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport"), a Cuban national.
(Attachment 4).

That license was renewed on February 20, 2004 in License No. CT-1943, which
authorized Fish & Neave to "provide legal services to, and to receive payment for such services
from ... Cubaexport" until March 31, 2005 (Attachment 5). Following the merger of Fish & Neave
and Ropes & Gray, on March 4, 2005 OFAC issued the current License authorizing until March 31,
2006:

> All transactions ... to enable the Licensee [Ropes & Gray], in connection [with] the legal
> representation of Empresa Cubana Exportadora de Alimentos y Productos Varios
> ("Cubaexport"), and Havana Club Holding S.A. in legal proceedings in the United States
> related to the HAVANA CLUB trademark ... to receive payment for such services and
> reimbursement for expenses related to such services from Cuban nationals. (Attachment 2)

It is pursuant to these licenses that Ropes & Gray currently represents Cubaexport in
the Litigation in which Bacardi has appealed the Board Decision and requested cancellation of
Registration No. 1,031,651 and, as part of that representation of Cubaexport, has applied herein for
renewal of Registration No. 1,031,651. Ropes & Gray has advised OFAC of this renewal
application in the enclosed letter dated December 13, 2005 (Attachment 6).

### Reasons To Maintain The *Status Quo*
### Pending Resolution Of The Dispute

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by
maintaining Registration No. 1,031,651 until the Court can decide whether the Board Decision
should be affirmed or reversed and the registration maintained or cancelled. Given the current
posture of the Litigation, no final unappealable decision on those issues will be rendered before
Registration No. 1,031,651 must be renewed.

If Registration No. 1,031,651 is not maintained, the Court will be denied an
opportunity to reach a reasoned decision as to whether the registration should be cancelled, as
Bacardi claims, or whether the Board correctly dismissed the Cancellation Petition, as Cubaexport
contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been
authorized to provide by cancelling the registration before the Court can decide whether it should
be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has
determined that the registration was properly maintained in 1996 and that Bacardi failed to plead
any legal basis for cancelling the registration in the Cancellation Proceeding. In Bacardi's appeal

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 4

of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint. Effectively overruling the Board Decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the Board Decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were not to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the present Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport submits the enclosed renewal application to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

Kindly acknowledge receipt of this letter and attachments by stamping and returning the enclosed self-addressed postcard.

Sincerely,

Vincent N. Palladino

VNP:emf
Enclosures

cc:    David W. Mills, OFAC
       Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC
       (Each With Enclosures)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Registration No.      :    1,031,651

Mark                  :    HAVANA CLUB & Design

Registrant            :    Empresa Cubana Exportadora de Alimentos y Productos Varios

Issued                :    January 27, 1976

International Class    :    33

Attachments to Ropes & Gray Letter To Commissioner
for Trademarks Concerning Renewal of Registration

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Registration No.      :    1,031,651

Mark                  :    HAVANA CLUB & Design

Registrant            :    Empresa Cubana Exportadora de Alimentos y Productos Varios

Issued                :    January 27, 1976

International Class    :    33


Box Post Reg Fee
Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451


## COMBINED DECLARATION AND APPLICATION
### FOR RENEWAL OF REGISTRATION UNDER §§ 8 & 9

The above identified applicant for renewal requests that the above-

identified registration, granted to it on January 27, 1976, be renewed for all of the goods

listed in the registration in accordance with the provisions of Section 9 of the Trademark

Act of July 5, 1946, as amended, 15 U.S.C. § 1059, and 15 U.S.C. § 1058(b)(2),

37 C.F.R. §§ 2.161(f)(2), 2.166 and TMEP §§ 1604.11, 1604.19.

Francisco Santiago Pichardo declares as follows. He is Director of the

registrant, a Cuban company having its principal offices at Calle 23 No. 55, 8 vo. Piso,

Vedado, Ciudad de La Habana Cuba CP: 10400, and is authorized to execute this

declaration and application on behalf of the registrant. The registrant owns Registration

No. 1,031,651, issued on January 27, 1976. The mark is not being used in commerce on

the goods recited in the registration due solely to special circumstances, namely, the

embargo on trade with Cuba instituted in 1963 and implemented by the Cuban Assets

Control Regulations, 31 C.F.R. § 515, which prohibit the importation, distribution or sale

in the United States of goods produced in Cuba. Nonuse is not due to any intention to abandon the mark, and the registrant intends that the mark be used in commerce after the embargo is lifted.

He further declares that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both, under Section 1001 of Title 18 of the United States Code; and that such willful false statements may jeopardize the validity of said registration.

<u>CONTACT INFORMATION</u>

Applicant has appointed Herbert F. Schwartz, Vincent N. Palladino and Pablo D. Hendler, members of the bar of the State of New York, at Ropes & Gray LLP, 1251 Avenue of the Americas, New York, New York 10020 (Telephone (212) 596-9000), its attorneys to file this combined declaration and application on its behalf, to prosecute this application for renewal, to transact all business in the Patent and Trademark Office in connection therewith, and to receive all documents in connection with the renewal of this registration.

Dated: ___9 , 12_____, 2005    _____

2

EXHIBIT 16

# ROPES &GRAY

FISH & NEAVE IP GROUP

ROPES & GRAY LLP

1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Mr. David W. Mills
Chief of Licensing
U.S. Department of Treasury
Office of Foreign Assets Control
1500 Pennsylvania Office, N.W.
Washington, DC  20220

Dear Mr. Mills:

We are enclosing a copy of our December 13, 2005 letter addressed to the Commissioner for Trademarks in connection with an application filed by Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") to renew United States Trademark Registration No. 1,031,651 of the HAVANA CLUB & Design trademark and the attachments to that letter.

On behalf of our client Cubaexport, Ropes & Gray has prepared the renewal application and undertaken to pay the filing fee that is required in order to maintain the registration and intends to recover those expenses from Cubaexport. Ropes & Gray has taken these steps pursuant to License No. CU 74488, which Ropes & Gray understands authorizes the firm to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark, including *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding,* 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation"), and to be paid for the services it renders and expenses it incurs in the course of that representation. In the Litigation, Bacardi & Company Limited ("Bacardi") has appealed a decision of the Trademarks Trial and Appeal Board (the "Board") and requested cancellation of Registration No. 1,031,651.

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board's decision should be affirmed or reversed and the registration maintained or cancelled. Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 2

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed Bacardi's cancellation petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in its cancellation proceeding. In Bacardi's appeal of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint, and the parties are currently engaged in Court ordered discovery concerning those motions. Effectively overruling the Board's decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were deemed not authorized under the License (or otherwise) to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport has relied on License No. CU 74488 to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 3


        We appreciate this office's continued attention to this matter.  If we can be of further
assistance, please do not hesitate to call me.

                                Sincerely,

                                Vincent N. Palladino

VNP:emf
Enclosures

cc:     Matthew Tuchband, Office of Legal Counsel, OFAC (encl.)
        Clara David, Licensing Division, OFAC (encl.)
        Commissioner for Trademarks

EXHIBIT 17



FISH & NEAVE IP GROUP

ROPES & GRAY LLP

1251 AVENUE OF THE AMERICAS     NEW YORK, NY 10020-1104     212-596-9000     F 212-596-9090

BOSTON     NEW YORK     PALO ALTO     SAN FRANCISCO     WASHINGTON, DC     www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

February 27, 2006

**VIA FACSIMILE - CONFIRMATION BY FEDEX**

Ms. Barbara Hemmerslee
Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC  20220

Dear Ms. Hemmerslee:

      The law firm of Ropes & Gray is currently the licensee under License No. CU-74488.  License No. CU-74488 is set to expire on March 31, 2006.  A copy of this license is enclosed.

      That license was granted in response to an application to renew License No. CT-1943 authorizing (a) "...Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the 'Regulations') and such additional transactions as are directly incident to professional research relevant to legal proceedings in the United States, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below; (b) "...Licensee to provide legal services to, and receive payment for such services from Empresa Cubana Exportadora De Alimentos y Productos Varios ('Cubaexport'), a Cuban national; (c) multiple trips during the validity period of the license."

      On January 29, 2004, the Trademark Trial and Appeal Board of the United States Patent and Trademark Office dismissed cancellation proceeding number 24,108.  On March 29, 2004, Bacardi & Company Ltd. (the parent company of Galleon S.A.) and Bacardi U.S.A., Inc. filed a complaint against Havana Club Holding S.A. and Cubaexport, which was joined by the Trademark Trial and Appeal Board to the cancellation proceeding.  The complaint appeals the decision of the Trademark Trial and Appeal Board and asserts additional claims against the defendants.  Ropes & Gray has continued to represent Cubaexport in these proceedings.

ROPES & GRAY LLP

Ms. Barbara Hemmerslee
February 27, 2006
Page 2

Ropes & Gray hereby requests a renewal of License No. CU-74488, authorizing Ropes & Gray to continue to represent Cubaexport and to receive payment and engage in authorized travel in connection with that representation.

Thank you for your attention to this matter. If we can be of further assistance, please do not hesitate to call me at (212) 596-9070.

Sincerely,

Vincent N. Palladino

VNP:emf
Enclosures

cc:    Mr. Matthew Tuchband, Office of Legal Counsel, OFAC
       Ms. Clara David, Licensing Division, OFAC

EXHIBIT 18

# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

FAC No. CU-268932

APR  6 2006

Vincent N. Palladino
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020-1104

      Re:   License No. CU-74488

Dear Mr. Palladino:

      The purpose of this letter is to clarify that License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005, does not authorize Ropes & Gray LLP to pay a filing fee to the U.S. Patent and Trademark Office ("PTO") for renewal of Registration No.1,031,651 (the "HAVANA CLUB trademark") on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"). In a December 13, 2006, letter to PTO, Ropes & Gray LLP applied for renewal of the HAVANA CLUB trademark and requested that PTO deduct the filing fee from a Ropes & Gray LLP deposit account, arguing that License No. CU-74488 authorizes payment of the filing fee.

      License No. CU-74488 pertains to a cancellation proceeding. It states that it is issued "Pursuant to an application dated January 26, 2005." The authorization section of License No. CU-74488, quoted in full (with emphasis added), states:

> All transactions are authorized to enable the Licensee [Ropes & Gray LLP], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, *as described in the application*, to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United States via a third-country bank.

The only legal proceeding described in your firm's January 26, 2005 application was "a complaint [] currently pending in the U.S. District Court for the District of Columbia against our clients Cubaexport and Havana Club Holdings S.A." This complaint is an appeal from the dismissal of a cancellation proceeding before the United States Trademark Trial and Appeal Board concerning the HAVANA CLUB trademark.

      In your letter to PTO dated December 13, 2005, you present a number of arguments why the renewal fee for the HAVANA CLUB trademark should be allowed to

be paid, including the following: (1) paying the fee is necessary to maintain the *status quo* by maintaining the HAVANA CLUB trademark registration, (2) failure to pay the fee will result in cancellation of the registration, (3) if the registration is not maintained, the District Court will be denied an opportunity to reach a reasoned decision in the pending litigation, and (4) failure to maintain the registration will effectively overrule the decision of the United States Trademark Trial and Appeal Board while it is on appeal. These arguments do not extend the limited authorization contained in License No. CU-74488, which covers only those transactions in connection with the pending District Court litigation, to those transactions that are external to the pending District Court litigation, such as the payment of a renewal fee to initiate a separate action before the PTO.

In your letter of December 13, 2005, you also argue that the failure of the District Court to reach a reasoned decision, which allegedly will result from the failure to pay the trademark registration renewal fee, will deprive Cubaexport of the representation that OFAC has authorized Ropes & Gray LLP to provide. We disagree with that argument. In issuing License No. CU-74488, OFAC authorized Ropes & Gray LLP to engage in transactions necessary to provide Cubaexport representation only in the litigation pending before the District Court. OFAC is not in a position to gauge the extent to which any other administrative or judicial proceedings may have some effect on that litigation, and, in any event, License No. CU-74488 does not purport to authorize any transactions related to such other proceedings.

We note that this discussion does not in any way prejudice the ability of Ropes & Gray LLP to request separate authorization from OFAC to engage in transactions related to the renewal of the HAVANA CLUB trademark registration at the PTO. If you wish to request such a specific license or further guidance from OFAC, you may do so by writing directly to OFAC's Licensing Division. Should you have any further questions, please contact the Deputy Chief Counsel (Foreign Assets Control) at 202-622-2410.

Sincerely,

*Barbara C. Hammerle*

Barbara C. Hammerle
Acting Director
Office of Foreign Assets Control

cc: Commissioner for Trademarks, PTO

EXHIBIT 19

# ROPES & GRAY

## FISH & NEAVE IP GROUP

ROPES & GRAY LLP

1251 AVENUE OF THE AMERICAS   NEW YORK, NY 10020-1104   212-596-9000   F 212-596-9090

BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

VINCENT N. PALLADINO

DIRECT DIAL 212.596.9070

DIRECT FAX 646.728.2671

E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

April 7, 2006

## VIA FACSIMILE - CONFIRMATION BY FEDEX

Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, N.W. - Annex
Washington, DC 20220

**Attn: Licensing Division**

### License To Pay HAVANA CLUB Registration Renewal Fee

Dear Sir/Madam:

This letter is prompted by Ms. Barbara C. Hammerle's April 6, 2006 letter (copy enclosed).

Ropes & Gray was granted License No. CU-74488 authorizing it to receive payment for services rendered and expenses incurred in connection with representing Cubaexport in a dispute with Bacardi regarding among other issues cancellation of Cubaexport's United States Registration No. 1,031,651 of HAVANA CLUB & Design ("the HAVANA CLUB Registration"). Ropes & Gray interpreted that license to authorize it to incur the expense of renewing the HAVANA CLUB Registration, which is at issue in the litigation, by paying the United States Patent and Trademark Office ("PTO") registration renewal filing fee and to receive payment for that expense.

Ms. Hammerle's letter states that License No. CU-74488 does not authorize Ropes & Gray to incur and receive payment for the expense of renewing the registration. The letter invites Ropes & Gray to seek a license authorizing Ropes & Gray to do so. Ropes & Gray respectfully requests that such a license be granted.

ROPES & GRAY LLP

Office of Foreign Assets Control
April 7, 2006
Page 2

Ropes & Gray respectfully submits that in light of OFAC's willingness to grant License No. CU-74488, authorizing payment for large legal and other expenses incurred on Cubaexport's behalf in maintaining the HAVANA CLUB Registration, it would be reasonable to authorize Ropes & Gray to incur and be paid for the minor expense ($500 or less) of maintaining the registration through payment of the renewal fee.

In addition, Ropes & Gray submits that the grant of this further limited license is reasonable in light of the following reasons discussed in our December 13, 2005 letter (copy enclosed) and summarized in Ms. Hammerle's letter:

(1) paying the fee is necessary to maintain the *status quo* by maintaining the HAVANA CLUB trademark registration, (2) failure to pay the fee will result in cancellation of the registration, (3) if the registration is not maintained, the District Court will be denied an opportunity to reach a reasoned decision in the pending litigation, and (4) failure to maintain the registration will effectively overrule the decision of the United States Trademark Trial and Appeal Board while it is on appeal.

As we stated in our December 13, 2005 letter, we believe that "outcome would be and would be perceived to be unfair." Although we appreciate that OFAC has determined these reasons do not support payment of the renewal fee under License No. CU-74488, we believe they offer further support for the grant of the additional limited license Ropes & Gray hereby requests.

Finally, Ropes & Gray wishes to point out that renewing the HAVANA CLUB Registration before it would otherwise expire on July 27, 2006 does not mean the Court hearing the litigation will affirm the PTO's Trademark Trial and Appeal Board decision that the HAVANA CLUB Registration should not be cancelled. That issue will remain to be resolved by the Court, along with Bacardi's additional claims for declaratory and injunctive relief.

If the additional license is granted *nunc pro tunc* to December 13, 2005 when Ropes & Gray submitted Cubaexport's renewal application, the renewal fee will be $400. If the additional license is not granted *nunc pro tunc*, the fee will be $500.

ROPES & GRAY LLP

Office of Foreign Assets Control
April 7, 2006
Page 3

Because the renewal period for the HAVANA CLUB Registration will expire on
July 27, 2006, Ropes & Gray respectfully requests that any new license be issued well before that
date so that the PTO may be so advised. We appreciate OFAC's attention to this matter and
respectfully request that the additional license be granted.

Sincerely yours,

Vincent N. Palladino

VNP:emf
Enclosure

cc:     Commissioner for Trademarks
        Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
        Liz Farrow, OFAC
        (each via facsimile and FedEx)

EXHIBIT 20

# DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                                                **License No. CU-75745**

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:     **Ropes & Gray LLP (the "Licensee")**
1251 Avenue of the Amercas
New York, NY 10020
Attn: Vincent N. Palladino, Esq.

1. Pursuant to your application dated **February 27, 2006**, the following transactions are hereby licensed:

### * * * * * SEE REVERSE * * * * *

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of Treasury under the authority of cited above and the terms of this license.

3. The licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **April 30, 2007**, is not transferable, is subject to the provisions of Title 31, Parts 501 and 515 of the Code of Federal Regulations and any regulations and rulings issued pursuant thereto, and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

### OFFICE OF FOREIGN ASSETS CONTROL

By *Clara David* 4/10/06
for Elizabeth W. Farrow
Assistant Director for Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

nse No. CU-75745                                                    **Page 2 of 2**
nsees:  **Ropes & Gray LLP**

**SECTION 1 - AUTHORIZATION:**   All transactions are authorized to enable the Licensee, in connection with the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport") in legal proceedings in the United States related to Trademark Trade and Appeals Board cancellation proceeding number 24,108 (including appeals of that proceeding), as described in the Application, to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United States via third-country bank.

**SECTION 2 – RECORDKEEPING REQUIREMENT:** The Licensee shall keep a record of the transactions under this license.  Such records shall be made available for examination upon demand for at least five years from the date of each transaction.

**SECTION 3 - WARNINGS:**   **(a)** Except as explicitly authorized in Section 1 above, nothing in this license authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Cuban Assets Control Regulations, 31 CFR 515.

**(b)** Nothing in this license authorizes the transfer of funds through methods which involve debits or credits blocked accounts subject to the jurisdiction of the United States.

**SECTION 4 - PRECEDENCE:** The authorization contained in this license is limited to the facts and circumstances specific to the application.
*******************************************************************************



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                      **License No. CT-7571**

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:   **Ropes & Gray LLP (the "Licensee")**
     1251 Avenue of the Americas
     New York, NY 10020
     Attn: Vincent N. Palladino, Esq.

1. Pursuant to your application dated **February 27, 2006**, the following transactions are hereby licensed:

#### *****SEE REVERSE*****

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **April 30, 2007**, is not transferable, is subject to the provisions of Title 31, Parts 501 and 515 of the Code of Federal Regulations and any regulations and rulings issued pursuant thereto, and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

### OFFICE OF FOREIGN ASSETS CONTROL

By *Clara David* 4/10/06
for Elizabeth W. Farrow
Assistant Director for Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No.  CT-7571                                         **Page 2 of 2**
Licensee:  Ropes & Gray

**SECTION 1 – AUTHORIZATION:  (a)** This license authorizes representatives of Ropes & Gray (the "Licensee") to engage in the travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the "Regulations") and such additional transactions as are directly incident to professional research and professional meetings relevant to legal proceedings in the United States related to Trademark Trade and Appeals Board cancellation proceeding number 24,108 (including appeals of that proceeding), including but not limited to conducting interviews and depositions, and creating written and other records, subject to the conditions set forth in Section 2 below.

**(b)** This license authorizes **multiple trips** during the validity period of the license.

**Authority:  31 CFR 515.560(c) and 515.564(b).**

**SECTION 2 – CONDITIONS:  (a)** The Licensee must provide each traveler with a letter confirming that the named individual will engage in authorized activities on behalf of the Licensee and cite the number of this license.

**(b)** It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the Regulations prior to the travel, by, for example, providing each traveler with OFAC's brochure "Cuba:  What You Need to Know about the Embargo" or other document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of the Regulations.

**SECTION 3 - WARNINGS:  Except as explicitly authorized in Section 1 above, nothing in this license authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Regulations.  This license only authorizes travel-related transactions consistent with a full-time schedule of activities authorized by this license.**

**SECTION 4 - RECORDKEEPING REQUIREMENTS:**  The Licensee is required to keep a list of individuals whose travel transactions were authorized under this license and their actual dates of travel.  Each individual traveler must also retain records related to his/her travel transactions.  Such records shall be made available for examination upon demand for at least 5 years from the date of each transaction.  A report from the Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew or extend this license.

**SECTION 5 – INFORMATION:  (a)** For information concerning the categories of travel for which licenses may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs & Country Summaries – Cuba, Guidelines and Information).

**(b)** The Department of State publishes consular information sheets (and, when necessary, travel warnings) on every country and territory in the world, including Cuba, which are available on the Internet at http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000.  An abridged version of consular information sheets can be heard by calling (202) 647-5225.

**SECTION 6 - PRECEDENCE:**  The authorization contained in this license is limited to the facts and circumstances specific to the application.
*******************************************************************************************

EXHIBIT 21

# UNITED STATES PATENT AND TRADEMARK OFFICE

**REGISTRATION NO:**    1,031,651

July 20, 2006

**REGISTRANT:** EMPRESA CUBANA EXPORTADORA DE ALIMENTOS ETC.

# *1031651*

**CORRESPONDENT ADDRESS:**
HERBERT SCHWARTZ
ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

**RETURN ADDRESS:**
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**MARK:**    HAVANA CLUB

**CORRESPONDENT'S REFERENCE/DOCKET NO:** N/A

Please provide in all correspondence:

**CORRESPONDENT EMAIL ADDRESS:**

1. Registration date, registration number, mark and registrant's name.
2. Date of this Office Action.
3. Examiner's name and Post Registation Division.
4. Your telephone number and e-mail address.

# POST REGISTRATION OFFICE ACTION

Registration Number  1,031,651

The Sections 8 & 9 combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.

The owner must submit the filing fee of $500 for the Sections 8 & 9 combined filing.  37 C.F.R. §§ 2.161(d)(1) and 2.183(b).  The fee for filing a Section 8 & 9 combined filing is $500 per class.  37 C.F.R. §2.6.

The combined filing included authorization to charge the fee to the deposit account of Ropes and Gray LLP, attorney for registrant.  As indicated in the cover letter accompanying the combined filing, this authorization was given pursuant to License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005.  However, in a letter dated April 6, 2006 from the Department of the Treasury, the USPTO was informed that License No. CU-74488 does not authorize Ropes & Gray LLP to pay the renewal fee.  Therefore, the required fee for the combined filing has not been paid.[1]

It is noted that in a letter dated April 7, 2006, Ropes & Gray LLP filed an application for another specific license for authorization of payment of the fees required for renewal of the subject registration.  Registrant is required to notify the USPTO whether that specific license has been granted or denied.

RESPONSE TIME DEADLINE: A complete response must be received within 6 months from the mailing date of this Office action. The owner must respond by notifying the USPTO whether the specific license application filed on April 7, 2006 has been granted or denied. If the owner informs the USPTO that the specific license has been granted, the fee or authorization to charge the fee must accompany the response. If the owner informs the USPTO that the specific license has been denied, or if OFAC notifies the USPTO that the specific license has been denied, the registration will be deemed cancelled/expired.

DEFICIENCY SURCHARGE REQUIRED: The owner also must submit a $100 deficiency surcharge with its response to this Office action. 37 C.F.R. §§2.6, 2.164(a)(1) and 2.185(a)(1); TMEP §1604.19. **PLEASE NOTE THE ENCLOSED FEE SHEET WHICH SHOULD BE RETURNED ALONG WITH THE RESPONSE AND FEE.**

Sharon Granata

/Sharon Granata/

Trademark Specialist

Post Registration Division

Ph: (571) 272-9167

Direct Fax - 571-273-9167

sharon.granata@uspto.g

**How to respond to this Office Action:**

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**

## PLEASE ENCLOSE THIS FORM WITH YOUR RESPONSE
**\*\*This form must be included with your response to ensure proper fee processing.\*\***

**Registration No.  1031651**

The Post Registration Paralegal has determined that the amounts indicated below are outstanding:

$_____    Section 8 affidavit filing fee (fee code 372)

$_____    Section 8 affidavit grace period surcharge (fee code 381)

***$100.00    Section 8 affidavit deficiency surcharge (fee code 382)***

$_____    Section 9 renewal application filing fee (fee code 365)

$_____    Section 9 renewal application grace period surcharge (fee code 366)

$_____    Section 9 renewal application deficiency surcharge (fee code 380)

$_____    Section 15 affidavit filing fee (fee code 373)

$_____    Section 7 correction/amendment filing fee (fee code 369)

$_____    Section 7 issue new certificate of registration filing fee (fee code 368)

$_____    Deficiency surcharge—if response filed after _____ (fee code 382)

Date

$_____    Deficiency surcharge—if response filed after _____ (fee code 380)

Date

PLEASE NOTE THAT A FEE OF $_____ WAS PREVIOUSLY REFUNDED BECAUSE THE FEE SUBMITTED WAS INSUFFICIENT TO COVER THE FILING FEE REQUIREMENT.  ALL FEES LESS THAN OR IN EXCESS OF THE AMOUNT PER FEE CODE ARE <u>ELECTRONICALLY</u> REFUNDED OR CREDITED TO A DEPOSIT ACCOUNT OR BANK CHECKING ACCOUNT.

---

[1] The fee charged on December 21, 2005, for the combined filing will be refunded since it was not properly authorized.

EXHIBIT 22



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

Case No. CU-75835

Vincent N. Palladino, Esquire                      JUL 2 8 2006
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Dear Mr. Palladino:

This is in response to your letter dated April 7, 2006, on behalf of Empresa Cubana Exportadora
de Alimentos y Productos Varios ("Cubaexport"), requesting a license authorizing transactions
related to the renewal at the United States Patent and Trademark Office of Registration No.
1,031,651 of HAVANA CLUB & Design (the "HAVANA CLUB trademark").

Pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, administered by the U.S.
Department of the Treasury's Office of Foreign Assets Control ("OFAC"), renewal of the
HAVANA CLUB trademark under these circumstances would be prohibited unless specifically
licensed.

OFAC has been engaged in consultation with relevant agencies in the U.S. Government,
including the Department of State ("State"), on this issue. We have received guidance from
State informing us that it would be inconsistent with U.S. policy to issue a specific license
authorizing transactions related to the renewal of the HAVANA CLUB trademark. Accordingly,
your request is hereby denied.

Sincerely,

J. Robert McBrien
Acting Director
Office of Foreign Assets Control

cc: Commissioner for Trademarks, USPTO

EXHIBIT 23

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
POST REGISTRATION DIVISION

Registration No.    :    1,031,651

Mark    :    HAVANA CLUB & Design

Registrant    :    Empresa Cubana Exportadora de Alimentos y Productos Varios

Issued    :    January 27, 1976

International Class    :    33

Specialist    :    Sharon Granata

**VIA FACSIMILE:  (571) 273-9167**
**CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

## RESPONSE TO OFFICE ACTION

This responds to the July 20, 2006 Office Action requiring registrant Cubaexport to

"notify the USPTO whether ... [the] specific license [Cubaexport sought from OFAC] has been

granted or denied."  On July 28, 2006, OFAC declined to grant the specific license.  A copy of

the decision, which was also sent to the Commissioner for Trademarks, is enclosed.

Cubaexport respectfully requests that the HAVANA CLUB Registration be renewed

notwithstanding OFAC's decision not to grant Cubaexport a specific license.  First, Cubaexport

filed a timely and complete renewal application together with the renewal fee prescribed by the

PTO regulations that implement the Lanham Act.  Accordingly, the PTO should carry out its

statutory mandate under Lanham Act § 9, 15 U.S.C. § 1059, to renew a registration when a

registrant submits a renewal application and tenders the prescribed  renewal fee.  Second, the

PTO should not look beyond the Lanham Act and its own implementing regulations.  Third, even

Reg. No. 1,031,651
Post Registration
Sharon Granata

if the PTO were to take into account the Cuban Asset Control Regulations ("the CACR") and

OFAC's decision not to grant a specific license, it should not conclude in the absence of a Court

decision that the CACR prohibit renewal of the registration.

### The PTO Should Carry Out Its Statutory Mandate

Lanham Act § 9 requires the PTO to renew a registration when the registrant submits

within the statutory renewal period "the prescribed fee and ... a written application, in such form

as may be prescribed by the Director," who is the Under Secretary of Commerce for Intellectual

Property and Director of the United States Patent and Trademark Office. 15 U.S.C. § 1127. This

statutory mandate is implemented by 37 C.F.R. § 2.6(a)(5) (setting fee) and 37 C.F.R. §§ 2.182-

183 (prescribing requirements of application).

Neither Lanham Act § 9 nor the PTO's implementing regulations require or permit the

PTO to consider the applicability of the CACR to the registration renewal process. Where as

here Cubaexport's renewal application was timely filed together with the fee prescribed by the

PTO regulations that implement the Lanham Act's renewal provisions, Cubaexport submits that

the application should be accepted and the registration renewed. *See, e.g.,* 3 *McCarthy on*

*Trademarks* § 21:9 at 21-13 to 21-14 (4th ed. 2006) ("The Director has no authority to waive a

requirement of the statute ... [or] to suspend compliance with the statute."); *Consarc* v. *U.S.*

*Treasury, OFAC*, 71 F.3d 909, 915 (D.C. Cir. 1995) ("an agency's application of its own

regulations . . . receives 'an even greater degree of deference than the *Chevron* standard.'").[1]

---

[1]     As an arm of the Treasury Department, OFAC stated that "[w]e have received guidance
from [the] State [Department] informing us that it would be inconsistent with U.S. policy to issue
a specific license." As an arm of the Commerce Department, the PTO should apply its own
regulations in carrying out the statutory mandate entrusted to it by Congress. That is particularly
the case because preserving the HAVANA CLUB Registration is consistent with United States
(Continued...)

Reg. No. 1,031,651
Post Registration
Sharon Granata

**The PTO Should Not Look Beyond The Lanham
Act And Its Own Implementing Regulations**

In renewing the registration, the PTO should not look beyond Lanham Act § 9 and its

own implementing regulations for the foregoing reason and because the PTO has "little or no

experience in [construing]. . . regulations that do not directly concern registration of

trademarks." *Galleon S.A.* v. *Havana Club Holding, S.A.*, 2004 TTAB LEXIS 38 * 63 (T.T.A.B.

2004) (declining to construe the CACR). "[N]owhere is this more true than in a case where [a

registration would be cancelled] based upon [an] alleged failure to comply with the requirements

of a statute which is outside of [the PTO's] area of expertise. . . . [There] must [be] no room for

doubt . . . or interpretation." *Santine Societa* v. *P.A.B. Products*, 209 U.S.P.Q. 958, 965

(T.T.A.B. 1988).

Although OFAC has declined to grant Cubaexport a specific license, the PTO may not

refuse to renew the HAVANA CLUB Registration unless it interprets the *general* license

provisions of 31 CACR § 515.227(a) and decides that they prohibit renewal. The court in

*Havana Club Holding, S.A.* v. *Galleon S.A.*, 974 F. Supp. 302, 306-07 (S.D.N.Y. 1997),

explained that:

> The CACR creates both general licenses, which permit classes or
> categories of transactions with Cuban nationals, see, e.g., 31 C.F.R. §515, 542
> (authorizing "all transactions of common carriers incident to the receipt of mail

---

(...Continued)
policy. *See Banco National de Cuba* v. *Chemical Bank*, 658 F.2d 903, 909 (2d Cir. 1981)
(permitting suit by Cuban successor to nationalized banks "because that will assist in providing
funds in the United States" and thereby "further the goals of the United States"); *Havana Club
Holding, S.A.* v. *Galleon S.A.*, 961 F. Supp. 498, 505 (S.D.N.Y. 1997) (a key purpose of the
CACR is to preserve "blocked assets [the HAVANA CLUB Registration] ... which ... would
function as bargaining chips in United States relations with Cuba").

between the United States and Cuba"), and specific licenses, which require individualized determinations and approval by OFAC. See id. § 515.801. A general license, furthermore, "is any license or authorization the terms of which are set forth [in the CACR]." 31 C.F.R. § 515.318. *The general license pertaining to United States intellectual property authorizes "transactions related to the registration and renewal in the United States Patent and Trademark Office ... of ... trademarks, ... in which the Government of Cuba or a Cuban national has an interest . . . ."* 31 C.F.R. § 515.527(a).

*By the express terms set forth in this section, the general license allows for the registration and renewal of trademarks* (emphasis added).

Subsequent to that decision, 31 CACR § 515.227(a) was amended to provide:

(a)(1)  Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

(2)  No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consent.

To conclude that 31 CACR § 515.227(a) does not authorize the renewal of the HAVANA CLUB Registration, the PTO would have to interpret 31 CACR § 515.227(a) and decide that 31 CACR § 515.227(a)(2) prohibits renewal of the registration despite 31 CACR § 515.227(a)(1), which provides for renewal on its face.  That is not an exercise in which the PTO should engage.

**The PTO Should Renew The Registration
Even If The PTO Considers The CACR**

Even if the PTO elects to interpret 31 CACR § 515.227(a), it should not conclude that it prohibits renewal of the HAVANA CLUB Registration for at least the following reasons.

*First,* amended 31 CACR § 515.227(a) should not and cannot properly be read as a repeal of Lanham Act § 9, which provides that a registrant may renew its registration "upon the

payment of the prescribed fee and the [timely] filing of a written application." In keeping with the statute, Cubaexport has filed a timely renewal application and tendered the PTO's prescribed fee. Unless or until it is determined that 31 CACR § 515.227(a)(2) prohibits Cubaexport from paying the fee, the PTO should reconcile the Lanham Act's renewal provisions and its own regulations with the CACR by accepting payment of the renewal fee pursuant to its own regulations and 31 CACR § 515.227(a)(1). *See Sandoz, Inc.* v. *Michael Leavitt*, 2006 U.S. Dist. LEXIS 17549 *15 (D.D.C. 2006), citing *Morton* v. *Mancari*, 417 U.S. 535, 551 (1974) ("when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective"). This outcome is particularly appropriate here because no court has yet ruled on the applicability of 31 CACR § 515.227(a) to renewal of the HAVANA CLUB Registration, and a statute trumps a regulation.

*Second,* it would be inappropriate to cancel the HAVANA CLUB Registration at this time when Cubaexport has not had an opportunity to show that 31 CACR § 515.227(a)(2) is inapplicable to the renewal of its registration. *See Havana Club Holding, S.A.,* 974 F. Supp. at 1089 (cancelling the HAVANA CLUB Registration before Cubaexport has had its day in court would be "an inequitable adjudication"). That, in turn, involves two issues: whether there was a confiscation within the meaning of 31 CACR § 515.227(a)(2) when Jose Arechebala, S.A. ("JASA") was nationalized in 1959 and, even if there was, whether Cubaexport is required to obtain permission to renew its registration.

Regarding the first issue, 31 CACR § 515.227(a)(2) applies only to a "mark ... that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336." 31 CACR § 515.336 refers to the nationalization of property by the Cuban government in 1959 without "adequate and effective compensation." Property includes

trademarks. 31 CACR § 515.311. Cubaexport maintains that it should be entitled to prove that

neither the HAVANA CLUB trademark nor a business or assets associated with the trademark,

owned by a party referred to in 31 CACR § 515.527(a)(2), were nationalized without

compensation. Even if 31 CACR § 515.227(a)(2) is ultimately determined to apply to the

HAVANA CLUB Registration, the registration should be preserved through renewal until that

determination is made in a case to which Cubaexport is a party.

That is particularly appropriate because the Trademark Trial and Appeal Board ("the

Board") has already concluded that the registration should not be cancelled despite Bacardi's

claim that the registration was obtained and maintained by fraud. In reaching that result, the

Board observed that Cubaexport did not commit fraud because it had reason to believe that

JASA did *not* have rights in HAVANA CLUB. Cubaexport knew that JASA had not used

HAVANA CLUB in years and had allowed its HAVANA CLUB registrations to expire although

it could have renewed them if Cuba's nationalization of its business in 1959, rather than an intent

to abandon the mark, was the reason the mark was not in use in 1974. *See* Board Decision, 2004

TTAB LEXIS 38 *48-*56 (T.T.A.B. 2004).

Concerning the second issue, only Bacardi, as the alleged successor in interest to JASA's

trademark rights, could be adjudicated a party whose permission is required by 31 CACR

§ 515.227(a)(2). No such adjudication has been made in any forum including the New York

litigation referred to above. On the contrary, as the PTO Attorney examining Bacardi's

application to register HAVANA CLUB observed in rejecting the application:

> [The New York litigation] reveals a few clearly decided points.... [T]he rights in the mark and . . . Registration no. 1,031,651 reside in Cuba Export.... Registration no. 1,031,651 was neither cancelled nor determined to be the property of [Bacardi].

Reg. No. 1,031,651
Post Registration
Sharon Granata

If JASA had no rights in HAVANA CLUB that it could have assigned to Bacardi, Bacardi is not

a "bona fide successor-in-interest" whose consent is required under 31 CACR 515.227(a)(2) for

renewal of the HAVANA CLUB Registration.

*Third*, 31 CACR § 515.227(a)(2) was not promulgated until 1999 following the passage

of Section 211 of the Omnibus Consolidated and Supplemental Appropriations Act in 1998. It

should not be applied retroactively to destroy an asset that was created in 1976 when the

HAVANA CLUB Registration issued. *Cf. Havana Club Holding, S.A.* v. *Galleon S.A.*, 203 F.3d

116, 126 n.9 (2d Cir. 2000), citing *Landgraf* v. *USI Film Products*, 511 U.S. 244, 265 (1994)

("the presumption against retroactive legislation is deeply rooted in our jurisprudence, and

embodies a legal doctrine centuries older than our Republic.")

The PTO has the power, and the statutory obligation, to renew the HAVANA CLUB

Registration in accordance with Lanham Act § 9 and its own implementing regulations. For the

foregoing reasons, Cubaexport respectfully submits that the PTO should not permit the

destruction of the HAVANA CLUB Registration in contravention of Lanham Act § 9, the PTO's

implementing regulations and a basic purpose of the CACR by giving retroactive effect to 31

CACR 515.227(a)(2), before Cubaexport has had its day in court. If a court ultimately

determines that the PTO should not have renewed the HAVANA CLUB Registration, the court

can issue an order consistent with that judgment pursuant to 15 U.S.C. § 1119. Accordingly,

7

Reg. No. 1,031,651
Post Registration
Sharon Granata

Cubaexport respectfully requests that the PTO charge Ropes & Gray's deposit account number

06-1075 in the amount set forth in the July 20, 2006 Office Action ($600) and approve

Cubaexport's renewal application.  A copy of the Notice of Deficiency Surcharge is enclosed.

Respectfully submitted,

Dated:  August 1, 2006

By: _Vincent N. Palladino_

Vincent N. Palladino
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York  10020
Tel.:  (212) 596-9000
Fax:  (212) 596-9090

cc:    Liz Farrow
       Assistant Director for Licensing, OFAC
       (Via Facsimile and FedEx)

8

EXHIBIT 24

# UNITED STATES PATENT AND TRADEMARK OFFICE

**REGISTRATION NO:**     1,031,651

**REGISTRANT:** EMPRESA CUBANA EXPORTADORA DE ALIMENTOS ETC.

August 3, 2006

**\*1031651\***

**CORRESPONDENT ADDRESS:**
     HERBERT SCHWARTZ
     ROPES & GRAY LLP
     1251 AVENUE OF THE AMERICAS
     NEW YORK, NY 10020

**RETURN ADDRESS:**
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**MARK:**     HAVANA CLUB

**CORRESPONDENT'S REFERENCE/DOCKET NO:**  N/A

**CORRESPONDENT EMAIL ADDRESS:**

Please provide in all correspondence:

1. Registration date, registration number, mark and registrant's name.
2. Date of this Office Action.
3. Examiner's name and Post Registation Division.
4. Your telephone number and e-mail address.

## POST REGISTRATION OFFICE ACTION

Registration Number  1,031,651

The Sections 8 & 9 Combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.

The Office has received your letter of August 1, 2006, indicating  that the specific license necessary to authorize the required fee for filing the combined document has been denied.  Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee for filing the Sections 8 & 9 Combined filing has not been submitted; accordingly, the registration will be cancelled/expired.

It is noted that your letter contains arguments in support of renewing the subject registration.  You may file a petition to the Director requesting review of this decision.  The petition must be filed within six months from the mailing date of this letter and must be accompanied by a fee of $100.  37 C.F.R. §§2.6, 2.146(a)(2) and 2.176.

Sharon Granata

/Sharon Granata/

Trademark Specialist

Post Registration Division

PH:  (571) 272-9167

FAX (571) 273-9167

sharon.granata@uspto.govov

**How to respond to this Office Action:**

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**