# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

———————————————————— )
)
EMPRESA CUBANA EXPORTADORA )
DE ALIMENTOS Y PRODUCTOS )
VARIOS d/b/a CUBAEXPORT, )
)
           Plaintiff, )
)
        v. )     Civil Action No. 1:06CV01692 (ESH)
)
)     Hon. Ellen S. Huvelle
UNITED STATES DEPARTMENT OF )
THE TREASURY, OFFICE OF FOREIGN )
ASSETS CONTROL, )
HENRY M. PAULSON, JR., as Secretary )
of Treasury, ADAM J. SZUBIN, as )
Director of the Office of Foreign Assets )
Control, and THE UNITED STATES, )
)
        Defendants. )
———————————————————— )

## NOTICE OF FILING OF ADMINISTRATIVE RECORD

    Defendants U.S. Department of the Treasury; Office of Foreign Assets Control; Henry M.

Paulson, Jr., Secretary of the Treasury; and Adam J. Szubin, Director of the Office of Foreign

Assets Control, hereby file pages of the Administrative Record described in the accompanying

Table of Contents.

1

Dated December 21, 2006                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           JEFFREY A. TAYLOR
                                           U.S. Attorney for the District of Columbia

                                           SANDRA M. SCHRAIBMAN
                                           (DC Bar No. 188599)
                                           Assistant Branch Director
                                           Federal Programs Branch


                                           ____s/ Eric R. Womack_____
                                           ERIC R. WOMACK (IL Bar No. 6279517)
                                           Trial Attorney
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           Post Office Box 883
                                           Washington, D.C.  20001
                                           Tel: (202) 514-4020
                                           Fax: (202) 616-8470

                                           *Counsel for the Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2006, I caused a true and correct copy of the

foregoing Notice of Filing of Administrative Record and accompanying Administrative Record

Pages to be served on Plaintiff's counsel electronically by means of the Court's ECF system.


_____*/s/ Eric R. Womack*_____
ERIC R. WOMACK

**Empresa Cubana Exportadora De Alimentos Y Productos Varios D/B/A Cubaexport v.
U.S. Department of the Treasury, Office of Foreign Assets Control, et al.**

**No. 1:06CV01692 (D.D.C.)**

**Administrative Record ("AR") Index**

<table>
<tr><td><u>**DOCUMENT**</u></td><td align="right"><u>**PAGE NUMBER**</u></td></tr>
<tr><td>Letter to Vincent N. Palladino, Ropes & Gray LLP, from OFAC dated July 28, 2006</td><td align="right">000001</td></tr>
<tr><td>Memorandum to OFAC from the Department of State, dated July 28, 2006</td><td align="right">000002</td></tr>
<tr><td>Letter to Commissioner for Trademarks, USPTO, from William R. Golden, Jr., Kelley Drye & Warren LLP, dated July 5, 2006</td><td align="right">000004</td></tr>
<tr><td>Letter to Commissioner for Trademarks, USPTO, from Vincent N. Palladino, Ropes & Gray LLP, dated June 29, 2006</td><td align="right">000006</td></tr>
<tr><td>Letter to Commissioner for Trademarks, USPTO, from William R. Golden, Kelley Drye & Warren LLP, dated June 27, 2006</td><td align="right">000010</td></tr>
<tr><td>Letter to Commissioner for Trademarks, USPTO, from Vincent N. Palladino, Ropes & Gray LLP, dated June 14, 2006</td><td align="right">000034</td></tr>
<tr><td>Letter to OFAC from Oscar M. Garibaldi, Covington & Burling, dated May 9, 2006</td><td align="right">000041</td></tr>
<tr><td>License No. CU-75745 issued to Ropes & Gray LLP by OFAC</td><td align="right">000045</td></tr>
<tr><td>License No. CT-7571 issued to Ropes & Gray LLP by OFAC</td><td align="right">000047</td></tr>
</table>

| | |
|---|---|
| Letter to OFAC from Vincent N. Palladino, Ropes & Gray LLP, dated April 7, 2006 (omitted attachments located at AR 52 and AR 56) | 000049 |
| Letter to Vincent N. Palladino, Ropes & Gray LLP from OFAC, dated April 6, 2006 | 000052 |
| Letter to OFAC from Vincent N. Palladino, Ropes & Gray LLP, dated February 27, 2006 (omitted attachment located at AR 83) | 000054 |
| Letter to OFAC from Vincent N. Palladino, Ropes & Gray LLP, dated December 13, 2005 (omitted attachment located at AR 59) | 000056 |
| Letter to Commissioner for Trademarks, USPTO, from Vincent N. Palladino, Ropes & Gray LLP, dated December 13, 2005 | 000059 |
| License No. CU-74488 issued to Ropes & Gray LLP by OFAC | 000083 |
| License No. CT-4558 issued to Ropes & Gray LLP by OFAC | 000085 |
| Letter to OFAC from Renée L. Stasio, Ropes & Gray LLP, dated January 26, 2005 (omitted attachments located at AR 97, AR 99, and AR 89) | 000087 |
| Letter to Renée L. Stasio, Ropes & Gray LLP, from OFAC, dated January 11, 2005 | 000089 |
| Letter to OFAC from Renée L. Stasio, Ropes & Gray LLP, dated January 5, 2005 (omitted attachment located at AR 99) | 000097 |
| License No. CT-1943 issued to Fish & Neave by OFAC | 000099 |

Certification



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Case No. CU-75835

Vincent N. Palladino, Esquire                    JUL 2 8 2006
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Dear Mr. Palladino:

This is in response to your letter dated April 7, 2006, on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), requesting a license authorizing transactions related to the renewal at the United States Patent and Trademark Office of Registration No. 1,031,651 of HAVANA CLUB & Design (the "HAVANA CLUB trademark").

Pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, administered by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), renewal of the HAVANA CLUB trademark under these circumstances would be prohibited unless specifically licensed.

OFAC has been engaged in consultation with relevant agencies in the U.S. Government, including the Department of State ("State"), on this issue. We have received guidance from State informing us that it would be inconsistent with U.S. policy to issue a specific license authorizing transactions related to the renewal of the HAVANA CLUB trademark. Accordingly, your request is hereby denied.

Sincerely,

J. Robert McBrien
Acting Director
Office of Foreign Assets Control

cc: Commissioner for Trademarks, USPTO

000001

07/28/06  FRI 11:17 FAX 2026474064          EB ESC                                    Ø001



United States Department of State

*Washington, D.C.  20520*

July 28, 2006

<u>UNCLASSIFIED</u>
<u>MEMORANDUM</u>

TO:       Barbara C. Hammerle
          Acting Director
          Office of Foreign Assets Control
          Department of the Treasury

FROM:     Paul Simons
          Deputy Assistant Secretary
          Economic Bureau
          Department of State

SUBJECT:  CU-75835 – Ropes & Gray LLP (Havana Club) Licensing Case

This responds to your request for foreign policy guidance with respect to an application from Ropes & Gray LLP for a specific license authorizing transactions related to renewal at the United States Trademark and Patent Office (USPTO) of trademark Registration No. 1,031,651, HAVANA CLUB & Design ("Havana Club"), which is held by Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), a Cuban entity.

On April 6, 2006, OFAC notified Cubaexport, through its counsel Ropes & Gray, that it would need a specific license from OFAC in order to pay the filing fee to renew Cubaexport's Havana Club trademark registration. On April 7, 2006, Ropes & Gray applied for the license. On May 15, 2006, OFAC referred the specific license request to the State Department for its views on the issues raised by the application.

The State Department has evaluated this referral in light of a number of factors, including the particular facts of the case, the United States' Cuba policy, and U.S. policy with regard to the domestic and international protection of intellectual property rights. Denial of the license application would be consistent with the U.S. approach toward non-recognition of trademark rights associated with confiscated property. Also, to the extent that registration of the trademark in this

000002

case has current or potential financial value to the Cuban government, denial of the license would be consistent with the recommendations of the Commission for Assistance to a Free Cuba and the policy of the United States to deny resources to the Castro regime in order to hasten a transition to democracy in Cuba.

Having weighed the facts and foreign policy concerns presented by this referral, the Department of State recommends that OFAC deny Ropes & Gray's application for a specific license authorizing transactions related to the renewal of Cubaexport's Havana Club trademark.

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

### 101 PARK AVENUE

NEW YORK, NEW YORK 10178

———

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

LOS ANGELES, CA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

HONG KONG

———

AFFILIATE OFFICES
BANGKOK, THAILAND
JAKARTA, INDONESIA
MUMBAI, INDIA
TOKYO, JAPAN

FACSIMILE
(212) 808-7897
www.kelleydrye.com
DIRECT LINE: (212) 808-7982
EMAIL: wgoldan@kelleydrye.com

July 5, 2006

VIA FACSIMILE (571-273-8950) AND EXPRESS MAIL

Commissioner for Trademarks
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia 22314

Re:   HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Sir/Madam:

Bacardi is constrained to respond to the June 29 letter from counsel for Cubaexport, as Bacardi's position is misstated and the effect of the Cuban Asset Control Regulations ("CACR") is either misportrayed or misunderstood.

Plainly, Bacardi *does* dispute that the renewal requirements of Section 9 of the Lanham Act have been met. The Office of Foreign Assets Control ("OFAC") of the Treasury Department has addressed the purported December 13, 2005 HAVANA CLUB renewal, at Cubaexport's own insistence, and has advised both Cubaexport and the Commissioner for Trademarks of its determination that the renewal was not authorized by the license to Ropes & Gray to be paid for fees incurred in the federal court litigation. Without a specific OFAC license, the CACR rendered Cubaexport's renewal attempt void and of no legal force and effect.

There can be no doubt on this point since OFAC's letter clearly indicates that Cubaexport's only recourse was "to request separate authorization from OFAC to engage in transactions related to the renewal of the HAVANA CLUB trademark registration at the PTO" (April 6, 2006 letter from Barbara C. Hammerle to Vincent N. Palladino). *This is precisely what Cubaexport has done, conceding by its actions the need for a specific license from OFAC.*

000004

NY01/GOLDW/1119896.2

# KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
July 5, 2006
Page Two


The continued badgering of the PTO to act on an invalid application verges on a deliberate attempt to evade the CACR.

Sincerely,

*William R. Golden Jr.*

William R. Golden, Jr.


cc:    Vincent N. Palladino, Esq.
David W. Mills, OFAC
Matthew Tuchband, Office of Legal Counsel, OFAC
Clara David, Licensing Division, OFAC

000005



FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO , SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

June 29, 2006

Vincent N. Palladino
212-596-9070
Vincent.Palladino@ropesgray.com

**BY FACSIMILE/CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
Trademark Assistance Center
600 Dulany Street, Madison East
Concourse Level, Room C55
Alexandria, Virginia  22314

<u>HAVANA CLUB & Design Registration No. 1,031,651</u>

Dear Sir/Madam:

   This letter responds to William R. Golden's June 27, 2006 letter.  Bacardi's latest attempt to litigate Cubaexport's right to renew the HAVANA CLUB Registration *confirms* that the registration should be renewed for the reasons set forth in Cubaexport's June 14, 2006 letter.

   Bacardi does not dispute that Cubaexport has complied with the renewal requirements of Lanham Act § 9 and the PTO's implementing regulations by submitting a complete application and remitting the required renewal fee within the statutory renewal period.  On the contrary, Bacardi says that the PTO *must apply the CACR in order to conclude* that the registration may not be renewed.  However, the applicability of the CACR to the PTO's statutory duty to renew registrations is precisely the issue the PTO should *not* decide.  *See* Cubaexport's June 14, 2006 Letter pages 2-3.

   Bacardi's reliance on *In re Michael Stern & Company, Limited*, 199 U.S.P.Q. 382 (Comm'r. 1978), is entirely misplaced.  In that case the Commissioner ruled that the registration expired because the renewal applicant did not *remit* within the statutory renewal period the *fee required by Lanham Act § 9 and the PTO's implementing regulations*.  Here, in accordance with Lanham Act § 9 and the PTO's regulations, Cubaexport remitted the fee when it filed its renewal application within the statutory renewal period on December 13, 2005.  There is nothing *in Lanham Act § 9 or the PTO's regulations* that prohibits the PTO from *accepting* that timely payment or permits the PTO to refuse it.

   It is only by looking *beyond* Lanham Act § 9 and the PTO's regulations to the CACR that Bacardi can claim the fee should not be accepted.  By endorsing Bacardi's intervention in the *ex parte* renewal process on such grounds, the PTO would set an unfortunate precedent.  Third parties, eager to see a registration expire to further their own commercial

000006

ROPES & GRAY LLP

Commissioner for Trademarks
Page 2
June 29, 2006

interests, could insist that the PTO hear any number of objections to the alleged insufficiency of a renewal applicant's submission, including supposed conflicts with other federal laws, e.g., the renewal applicant allegedly must pay the fee money to the federal government pursuant to an IRS decree or to an alleged creditor in a federal bankruptcy proceeding including the third party itself.

That is a road the PTO has avoided and should continue to avoid. *See, e.g., Galleon S.A. v. Havana Club Holding, S.A.*, 2004 TTAB LEXIS 38 *46, *63 (T.T.A.B. 2004) (rejecting Bacardi's construction of PTO renewal regulations and argument that violation of the CACR required cancellation of registration); *Time Warner Entertainment Co. v. Jones*, 65 USPQ2d 1651, 1653 n.4 (T.T.A.B. 2002) (declining to hear antitrust defense in opposition because "the Board has no jurisdiction over such issues"). In doing so, the PTO is not "ignor[ing] applicable federal law" as Bacardi contends. It is properly declining to consider whether other laws outside its area of expertise are applicable to the execution of its statutory mandate.

There is no reason to depart from this practice and permit Bacardi to intervene in the renewal process because Bacardi is supposedly JASA's successor in interest and has filed its own application. "There is no provision in the Trademark Act or Rules of Practice for intercession by a third party in an *ex parte* matter." *See* TMEP § 1705.01. And the only thing that makes "[t]his an unusual renewal process" is Bacardi's decision to violate the statute and break the rules. Like any other party whose application is barred by a registration, Bacardi's remedy is cancellation of the registration on the grounds set forth in the Lanham Act. Bacardi's unsuccessful pursuit of that remedy gives it no standing to intervene in the *ex parte* renewal process.

Bacardi's letter highlights why the PTO should not engage in that exercise. Because Bacardi wants to eliminate the HAVANA CLUB Registration as a bar to its own pending application, it says the PTO must assume the role of a court, consider a host of complex issues that the PTO is not equipped to decide and resolve them in Bacardi's favor. These include Bacardi's contentions that:

- CACR § 515.201(b) precludes the PTO from applying Lanham Act § 9 and its own regulations. CACR § 515.201(b) says nothing of the kind. Moreover, Bacardi's unsupported reading of that section of the CACR is plainly inconsistent with CACR § 515.527(a)(1), which provides for the renewal of registrations. If as Bacardi's claims CACR § 515.201(b) requires every renewal applicant to obtain a specific OFAC license, the general license provisions of CACR § 515.527(a)(1) would be read out of the CACR.

ROPES & GRAY LLP

Commissioner for Trademarks
Page 3
June 29, 2006

- Applying CACR § 515.527(a)(2) to invalidate the *1976* HAVANA CLUB Registration would not be a retroactive application because it would not invalidate the 1996 renewal of the registration. This non-sequitur – Bacardi's only response to the obviously retroactive effect of applying a 1999 regulation to an asset created in 1976 – is no response at all.

- The PTO should not read the CACR and the Lanham Act in a way that reconciles them. Instead, it should conclude – in the absence of any support whatsoever – that CACR § 515.527(a)(2) is "fully effective to add conditions to acts regulated by the Lanham Act" when of course Lanham Act § 9 and the PTO's implementing regulations remain unchanged.

- The PTO should refuse to renew the HAVANA CLUB Registration although Bacardi concedes that the applicability of the CACR to *renewal* of a registration has *not* hitherto been decided by a court because "[t]his is the first time Cubaexport has attempted to renew the HAVANA CLUB Registration since ... 31 C.F.R. § 515.527(a)(2) was adopted."

Bacardi also says the PTO may not renew the HAVANA CLUB Registration under CACR § 515.527(a)(1) because only CACR § 515.527(a)(2) applies to the registration. Even if the PTO could make that determination, Bacardi has failed to show why it should. Among the reasons it should *not* are: (1) JASA's consent to renewal under CACR § 515.527(a)(2) is not required because JASA relinquished whatever claim it had to the HAVANA CLUB mark when it purported to assign it to Bacardi in 1997; and (2) Bacardi's consent is not required because (a) Bacardi has not proven that it acquired any trademark rights in the primarily geographically deceptively misdescriptive term HAVANA CLUB as JASA's alleged successor in interest and (b) JASA owned no trademark rights in HAVANA CLUB when it purported to assign them in 1997 – decades after it stopped using HAVANA CLUB in 1960 and allowed its Supplemental Registrations of HAVANA CLUB to expire in 1973. Indeed, as the PTO well knows, those registrations were not evidence that JASA had any valid trademark rights in HAVANA CLUB even *before* they expired because a Supplemental Registration is evidence that the mark has "not ... acquired trademark significance." 2 *McCarthy on Trademarks* § 19:32 at 19-124 (4th ed. 2006).[1]

---

[1]     The decision in *Havana Club Holding S.A.* v. *Jimmy Buffett*, Opposition No. 91116754 (T.T.A.B. 2003), including its reliance on the New York HAVANA CLUB litigation, plainly does not show that Cubaexport needs Bacardi's consent. The case was a contested, not an *ex parte*, matter. The decision is not citable as precedent. Cubaexport was not a party to either the opposition or the New York litigation and, therefore, is not bound by them. And the opposition did not conclude that Bacardi has any rights in HAVANA CLUB as JASA's alleged successor or address the statutory renewal process in which Cubaexport is now engaged. On the contrary, the Board expressly stated that its decision concerned only "the issue of [Havana Club Holding S.A.'s] standing in this opposition proceeding." Page 14, note 12. Nor does it matter that JASA did not consent to Cubaexport's renewal of the registration. JASA has no rights in HAVANA CLUB. And its failure to give Cubaexport consent does not mean Cubaexport must obtain Bacardi's consent when Bacardi has no rights in HAVANA CLUB.

.ROPES & GRAY LLP

Commissioner for Trademarks
Page 4
June 29, 2006

     Finally, Bacardi contends that the PTO must accept its unsupported assertion that one purpose of the CACR "is to prevent the Cuban government from ... maintaining U.S. property that it could not ... have acquired but for the confiscation of property from its legitimate owners", conclude that this alleged purpose applies to the HAVANA CLUB Registration, conclude that Bacardi has standing to invoke the CACR to serve its own interests and decide that effectuating that purpose outweighs the CACR's undisputed purpose to *preserve* Cuban assets including trademark registrations. The PTO should decline Bacardi's invitation to promote Bacardi's commercial interest in destroying the HAVANA CLUB Registration in the face of the CACR's purpose to preserve Cuban assets. *Cf. De Arellano* v. *Weinberger*, 788 F.2d 762, 746 (D. C. Cir. 1986) (where a decision "may seriously embarrass the accomplishment of important government ends, a court ... acts with caution and only upon a clear showing that its intervention is necessary").

     By Bacardi's own admission, the PTO can refuse to renew the HAVANA CLUB Registration only if, taking on the role of a court, it applies the CACR, resolves numerous issues outside its area of expertise and does so in Bacardi's favor. Bacardi has no standing to ask the PTO to do this and gives no reason why the PTO should other than Bacardi's own desire to be rid of the HAVANA CLUB Registration. Even if the PTO decided to head down this road as it has wisely declined to do until now, it should rule *against* Bacardi for the reasons discussed above.

     The PTO should refuse Bacardi's invitation to set an unfortunate precedent, which will open the door to unwanted and unauthorized third party intervention in *ex parte* proceedings, and should carry out it statutory mandate by renewing Registration No. 1,031,651.

                 Respectfully submitted,

                 Vincent N. Palladino

VNP:emf

cc:    Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
      Ms. Liz Farrow, OFAC
      William R. Golden, Jr., Esq.
      (Each Via Facsimile and FedEx)

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

101 PARK AVENUE

NEW YORK, NEW YORK 10178

—

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

—

BRUSSELS, BELGIUM

—

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

DIRECT LINE: (212) 808-7992

EMAIL: wgolden@kelleydrye.com

June 27, 2006

VIA FACSIMILE (571-273-8950) AND EXPRESS MAIL

Commissioner for Trademarks
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia 22314

Re:     HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Sir/Madam:

This letter responds to the letter of June 14, 2006 submitted by Mr. Palladino on behalf of Cubaexport. Mr. Palladino's letter misrepresents the law and ignores crucial facts in the service of reaching an erroneous conclusion. The Lanham Act does not require that the HAVANA CLUB Registration be renewed. On the contrary, no such renewal can occur under the Lanham Act unless Cubaexport can submit a complete application for renewal prior to July 27, 2006. Absent such renewal the Registration must expire on that date. *See In re Michaels Stern & Co.*, 199 U.S.P.Q. 382 (Comm.'s Pats. & TMs 1978). No application for the renewal of the HAVANA CLUB Registration can be complete unless it includes a specific license from the Office of Foreign Assets Control (OFAC) authorizing all transactions incident to the renewal of the HAVANA CLUB Registration, including the payment of the renewal fee. In the absence of such a specific OFAC license, the renewal of the HAVANA CLUB Registration is prohibited by the Cuban Assets Control Regulations (CACR), which are binding on all persons and entities subject to U.S. jurisdiction, including the PTO.

Cubaexport's application to renew the HAVANA CLUB Registration is incomplete because it does not include a valid specific license from OFAC authorizing all transactions incident to such renewal, including the payment of the corresponding fees. The specific license invoked by Cubaexport in its December 13, 2005 renewal application (License No. CU-74488) does not authorize any such renewal, as OFAC has expressly ruled on April 6, 2006. Cubaexport has applied for a specific license to authorize such transactions from OFAC, but OFAC has not yet acted on that application. In the absence of a specific license authorizing all transactions

000010

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Two

related to such a renewal, the renewal application is incomplete and must be denied as such. Further, as Cubaexport concedes, the PTO has no authority to waive a requirement of the Lanham Act or to suspend compliance with the statute.

Cubaexport erroneously asserts that it has paid the fee connected with the renewal. As noted, OFAC has ruled that such payment is not authorized under license No. CU-74488 and has not yet acted on Cubaexport's request for a new specific license to authorize the renewal. Consequently, any tender of monies by Cubaexport or its counsel was not authorized by OFAC and did not and could not serve as payment of the required fee. Section 515.203(a) of the CACR provides that any transfer in violation of any provision of the CACR "is null and void."

Furthermore, payment of the license fee is not the only transaction at issue under the CACR, despite Cubaexport's assumption to the contrary. The CACR prohibit not only payment of the renewal fee but also the renewal itself. More precisely, the CACR prohibit any transaction related to the renewal of the HAVANA CLUB Registration, unless authorized by a specific license from OFAC. Section 515.201(b) of the CACR prohibits (in the absence of an OFAC license) certain transactions referred to below if they involve "property" in which Cuba or a Cuban national has had, at any time since 8 July 1963, "an interest of any nature whatsoever, direct or indirect." 31 C.F.R. §515.201(b). The HAVANA CLUB Registration is "property" (as this term is defined in 31 C.F.R. §515.311(a)) in which Cuba or a Cuban national has an interest, because Cubaexport, the registrant, is a Cuban person as well as an agency of the Cuban government.

The transactions prohibited by the CACR include "[a]ll dealings in, including, without limitation, transfers . . . of, any property . . . or evidences of ownership of property by any person subject to the jurisdiction of the United States." 31 C.F.R. §515.201(b)(1). The term "transfer" refers to "any actual or purported act or transaction . . . the purpose, intent, or effect of which is to create, surrender, release, transfer or alter, directly or indirectly, any right, remedy, power, privilege or interest with respect to any property . . ." 31 C.F.R. §515.310. Accordingly, any acts or transactions related to the renewal of the HAVANA CLUB Registration are "dealings" and "transfers" of property in which Cuba or a Cuban person has an interest. They are therefore prohibited absent an OFAC license.

Cubaexport argues in its letter of June 14, 2006 that payment of the renewal fee for the HAVANA CLUB Registration is authorized by the general license set forth in 31 C.F.R. §515.527(a). This argument, which is inconsistent with Cubaexport's application for a *specific* license to the same effect, is foreclosed by §515.527(a) on its face. The generic authorization of 31 C.F.R. §515.527(a)(1) is expressly restricted by 31 C.F.R. §515.527(a)(2), which was added to the CACR in 1999 in compliance with Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681 (1998) ("Section 211").

000011

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Three

Section 211(a)(1) excluded certain transactions or payments from the generic license of 31 C.F.R. §515.527 (as it was in effect at the time the statute was enacted) and in so doing it overrode "any other provision of law."  Section 211(a)(1) provides:

> Notwithstanding any other provision of law, no transaction or payment shall be authorized or approved pursuant to section 515.527 of title 31, Code of Federal Regulations, as in effect on September 9, 1998, with respect to a mark, trade name or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

Section 515.527 was accordingly amended to include paragraph (a)(2), which provides:

> No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark . . . that is the same as or substantially similar to a mark . . . that was used in connection with a business or assets that were confiscated, as that term is defined in §515.336, unless the original owner of the mark . . . or the bona fide successor-in-interest has expressly consented.

The renewal of the HAVANA CLUB Registration falls squarely within the prohibition of section 515.527(a)(2):

- The Registration concerns a mark (HAVANA CLUB) that is the same as a mark (HAVANA CLUB) that was used in connection with the business and assets of Jose Arechabala S.A. (JASA).  *See Havana Club Holding S.A. v. Galleon, S.A.*, 203 F.3d 116, 119 (2d Cir. 2000) ("Before the Cuban revolution, Jose Arechabala S.A. ('JASA'), a Cuban corporation owned principally by members of the Arechabala family, produced 'Havana Club' rum and owned the trademark 'Havana Club' for use with its rum").

- The business or assets of JASA were confiscated by the Cuban Government after 1 January 1959, within the meaning of 31 C.F.R. §515.336.  JASA's business and assets were seized, expropriated, and nationalized and no compensation was ever paid.  *Id.* at 119-20. ("JASA exported its rum to the United States until 1960, when the Cuban government, under the leadership of Fidel Castro, seized and expropriated JASA's assets.  Neither JASA nor its owners ever received compensation for the seized assets from the Cuban government.").

- Neither JASA nor Bacardi (JASA's bona fide successor in interest) has ever consented to the renewal of the HAVANA CLUB trademark nor has Cubaexport ever alleged any such consent.

000012

# KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Four

As the renewal of the HAVANA CLUB Registration falls within Section 211(a)(1) and the express exception of 31 C.F.R. §515.527(a)(2), it is not covered by the general license of 31 C.F.R. §515.527(a)(1). Therefore, it is prohibited by section 31 C.F.R. §515.201(b)(1) in the absence of a specific OFAC license.

Cubaexport asks the PTO to renew the Registration without considering "the applicability of the CACR to the registration renewal process." The CACR, however, are binding on all agencies of the federal government as well as on any other person subject to the jurisdiction of the United States. The PTO does not have the power to ignore applicable federal law just because it is outside the Lanham Act. Nor may the PTO ignore the CACR because it may have less experience applying these regulations than applying its own. Cubaexport raises the specter of the PTO having to "interpret" the general license of section 515.527(a)(1) and the exception of section 515.527(a)(2) as if the relationship between these two provisions were somehow in need of "interpretation." On the contrary, it is plain on the face of these provisions that paragraph (a)(2) is a carve-out of paragraph (a)(1), just as it is plain on the face of the CACR and Section 211 that they apply to any person subject to U.S. jurisdiction and notwithstanding any other provision of law. In any event, if the PTO has any doubt about how these rules should be applied, it should consult OFAC – not ignore the CACR altogether, as Cubaexport urges it to do.

Cubaexport argues, apparently in the alternative, that the CACR do not prohibit renewal of the HAVANA CLUB Registration. Cubaexport's arguments in this regard ignore the plain meaning of the regulations and try to introduce issues of fact that are either irrelevant or have been resolved in prior legal actions. We respond to Cubaexport's arguments in the order in which they are stated.

*First*, the purpose of the CACR is not merely to preserve assets owned by Cuban nationals, but to implement the general trade embargo against Cuba. One purpose of the CACR (expressly reflected in section 515.527(a)(2)) is to prevent the Cuban government from acquiring and maintaining U.S. property that it could not acquire or have acquired but for the confiscation of property from its legitimate owners.

*Second*, applying section 515.527(a)(2) of the CACR to the renewal of the HAVANA CLUB Registration would not be a retroactive application. Applying that provision would not invalidate the last renewal of the Registration in 1996, nor would failure to renew the Registration in 2006 cancel the Registration *nunc pro tunc*. The requirement of a specific license for the renewal of trademarks such as HAVANA CLUB has no retroactive effect; it applies only to prospective renewals following the enactment of Section 211 and the adoption of Section 515.527(a)(2).

*Third*, applying 31 C.F.R. §515.527(a)(2) would not "repeal" section 9 of the Lanham Act. The Lanham Act would of course remain in effect and would continue to govern the federal registration of trademarks. Section 211 and §515.227(a) of the CACR merely introduced

000013

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Five

additional requirements for the registration and renewal of certain trademarks, such as
HAVANA CLUB, that are the same as or substantially similar to those confiscated by the Cuban
government. Those requirements are either (i) the express consent of the original owner or its
bona fide successor-in-interest or (ii) a specific license from OFAC. Nor can there be any doubt
that Section 211, being a later statute, and §515.527(a)(2) issued thereunder, are fully effective to
add conditions to acts regulated by the Lanham Act.

   *Fourth*, while it is true that in *Havana Club Holding S.A. v. Galleon S.A.* the District
Court did not decide whether §515.527(a)(2) applied to the renewal of the HAVANA CLUB
Registration, that fact has no significance, because the issue was not before the court. This is the
first time that Cubaexport has attempted to renew the HAVANA CLUB Registration since
Section 211 was enacted in 1998 and 31 C.F..R. §515.527(a)(2) was adopted in 1999.

   *Fifth*, there can be no reasonable question that JASA's assets, including the HAVANA
CLUB trademark, were confiscated, that is, expropriated or nationalized by the Cuban
government without compensation. As already noted, that issue was decided in *Havana Club
Holding, S.A. v. Galleon, S.A.*, 203 F.3d at 119-120 ("Neither JASA nor its owners ever received
compensation for the seized assets from the Cuban government."). The Trademark Trial and
Appeal Board, in a proceeding involving the same HAVANA CLUB mark, adopted those
findings and granted summary judgment. *Havana Club Holding, S.A. v. Buffett*, Opposition No.
91/116,754 (T.T.A.B. Mar. 13, 2003) (a copy of this decision is annexed hereto as Exhibit "A.")

   Nor can there be any question that Bacardi is JASA's successor in interest. Bacardi
acquired in 1997 all of JASA's right and interest in the HAVANA CLUB trademark (with an
intermediate transfer to JASA's affiliate Jose Arechabala International Ltd.). In any event, this
purported factual issue is a red herring. If Cubaexport truly believed that Bacardi is not the bona
fide successor to JASA, under §515.527(a)(2) Cubaexport should have produced the express
consent of JASA, which was the original owner of the confiscated assets, as determined by the
Second Circuit and the TTAB. Of course, Cubaexport has not produced and cannot produce any
such consent.

   Cubaexport closes by asserting that Bacardi lacks any rights to intervene in this renewal
process. This is an unusual renewal process, for it is subject to the CACR prohibitions and has
been characterized by Cubaexport's repeated attempts to evade them. Bacardi is the party whose
express consent is needed under §515.527(a)(2) to obviate a specific OFAC license. Bacardi is
also the owner of a pending application to register the HAVANA CLUB trademark. For these
reasons, Bacardi, as an interested party, should be allowed the right to protest Cubaexport's
multitude of misrepresentations of law and fact.

   For all the foregoing reasons, the PTO should decline to accept Cubaexport's incomplete
application to renew the HAVANA CLUB Registration until and unless OFAC issues a license
authorizing all transactions related to the renewal of that registration. If no such license issues

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Six

before July 27, 2006, the Registration will lapse for failure to file a complete renewal application before the required date.

Sincerely,

William R. Golden, Jr.

cc:    Vincent N. Palladino, Esq.
       David W. Mills, OFAC
       Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC

000015

# EXHIBIT A

000016

┌─────────────────────────────────┐
│ THIS OPINION IS NOT CITABLE     │
│ AS PRECEDENT OF THE TTAB        │
└─────────────────────────────────┘

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513

NLO/AKL

Mailed:  March 13, 2003

Opposition No. 91116754

HAVANA CLUB HOLDING S.A.

v.

JIMMY BUFFETT

Before Quinn, Walters, and Drost,
Administrative Trademark Judges.

By the Board:

Jimmy Buffett ("applicant"), seeks to register the mark
HAVANAS AND BANANAS on the Principal Register for "menu items,
namely, prepared alcoholic cocktails."[1]  Havana Club Holding,
S.A. ("opposer") has opposed registration on the grounds that
the mark:  (1) is primarily geographically deceptively
misdescriptive under Section 2(e)(3) of the Trademark Act
because the goods do not originate from Cuba; (2) disparages
and suggests a false connection with opposer within the
meaning of Section 2(a); and (3) dilutes opposer's HAVANA CLUB

---

[1] Application Serial No. 75/730,955, filed November 30, 1999,
reciting February 4, 1999 as the date of first use and first use
in commerce.

000017

trademark² in violation of Sections 43(c) and 13.  **Applicant,
in his answer, denied the salient allegations of the Notice of
Opposition.**

This case now comes up for consideration of **applicant's
motion for summary judgment.  The motion has been fully
briefed.**  In his motion, applicant argues that opposer lacks
standing in this proceeding and cannot make a sufficient
showing to establish the essential elements of any of its
claims that applicant's mark is primarily geographically
deceptively misdescriptive, disparages or falsely suggests a
connection with opposer, or dilutes opposer's HAVANA CLUB
trademark.

Summary judgment is appropriate in cases where the moving
party establishes that there is no genuine issue of material
fact which requires resolution at trial and that the moving
party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c).  An issue is material when its resolution would
affect the outcome of the proceeding under governing law.

---

² Opposer, through its predecessors-in-interest, claims ownership
of the mark HAVANA CLUB for rum manufactured exclusively in Cuba,
and owns Luxembourg Registration No. 032424 (dated May 13, 1971)
for same.  Opposer also claims ownership of two pending
applications in the United States Patent and Trademark Office
(USPTO) which were filed under Section 44(e) of the Trademark
Act:  (1) Serial No. 74/673,898 for HAVANA CLUB for "rums
produced exclusively in the Province of La Havana, Cuba"; and (2)
Serial No. 75,409,541 for HAVANA CLUB and design for "rums
produced exclusively in the Province of La Havana, Cuba."  Action
on both applications is currently suspended.

000018

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A
fact is genuinely in dispute if the evidence of record is such
that a reasonable fact finder could return a verdict in favor
of the nonmoving party. *Anderson*, 477 U.S. at 248. Under
Fed. R. Civ. P. 56, the nonmoving party must be given the
benefit of all reasonable doubt as to whether genuine issues
of material fact exist, and the evidentiary record on summary
judgment, and all reasonable inferences to be drawn from the
undisputed facts, must be viewed in the light most favorable
to the nonmoving party. *See Opryland USA, Inc. v. Great
American Music Show, Inc.*, 970 F.2d 847, 23 USPQ2d 1471 (Fed.
Cir. 1992); *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d
200, 22 USPQ2d 1542 (Fed. Cir. 1992).

In support of his motion for summary judgment, applicant
argues that opposer lacks standing to bring the instant
opposition because opposer's claims to the HAVANA CLUB mark
are void in the United States as a matter of law.
Specifically, applicant alleges that due to the existence of
the Cuban embargo imposed by the United States government in
1963 and the finding of the court in *Havana Club Holding, S.A.
v. Galleon S.A.*, 203 F.3d 116, 53 USPQ2d 1609 (2d Cir. 2000)
(*"Galleon V"*), opposer has no claim to the HAVANA CLUB mark.
Further, applicant asserts that, despite ownership of its
Luxembourg registration, opposer's attempts to claim standing
through ownership of its two pending U.S. applications under

000019

Section 44(e) are invalid under U.S. law because these applications are for marks that are the same as or substantially similar to a mark that was used in connection with a business that was confiscated by the Cuban government.

Opposer contends that its two pending applications filed under Section 44(e) of the Trademark Act provide standing in this proceeding because they were filed prior to the application being opposed herein. Opposer also contends that, pursuant to the law of the case doctrine, the Board "implicitly decided the issue of standing in favor of opposer" when it denied applicant's previous motion to dismiss under Fed. R. Civ. P. 12(b)(6). Additionally, opposer asserts that because it is a Luxembourg corporation, and not a "designated national" under statutory law, it is not subject to the Cuban embargo prohibitions found in U.S. law. Moreover, opposer argues U.S. law expressly invests opposer with the right to file and prosecute applications.

In reply, applicant argues that the Board never reached the issue, nor entered a decision regarding opposer's standing in this matter and, hence, the law of the case doctrine is inapplicable. Applicant recounts that the Board merely denied applicant's motion to dismiss following the submission of opposer's amended notice of opposition and applicant's lack of objection to the amended pleading. Also, applicant asserts that opposer "hopes to out-fox this Board" into believing that

4

000020

it does not fall within the purview of regulations implementing the Cuban embargo by claiming it is "...merely an innocent Luxembourg corporation...."

Applicant's contention with regard to the court's ruling in *Galleon V*[1] is essentially a claim that res judicata, in particular, issue preclusion, is appropriate in this case.

Under the doctrine of issue preclusion (collateral estoppel), once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is normally conclusive in a subsequent suit involving the parties to the prior litigation. *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 220 USPQ 1017 (Fed. Cir. 1984). The underlying rationale is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again. *Mother's Restaurant Incorporated v. Mama's Pizza, Inc.*, 723 F.2d 1566, 221 USPQ 394 (Fed. Cir. 1983).

In order for issue preclusion to apply, the following requirements must be met: 1) the issue to be determined must

[1] See also *Havana Club Holding, S.A. v. Galleon S.A.*, 961 F. Supp. 498 (S.D.N.Y. 1997) ("Galleon I"), *Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F. Supp. 302 (S.D.N.Y. 1997) ("Galleon II"), *Havana Club Holding, S.A. v. Galleon, S.A.*, 49 USPQ2d (BNA) 1296 (S.D.N.Y. 1998) ("Galleon III"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085 (S.D.N.Y. 1999) ("Galleon IV").

000021

be identical to the issue involved in the prior litigation;
2) the issue must have been raised, litigated and actually
adjudged in the prior action; 3) the determination of the
issue must have been necessary and essential to the
resulting judgment; and 4) the party precluded must have
been fully represented in the prior action. *Polaroid Corp.
v. C & E Vision Services Inc.*, 52 USPQ2d 1954 (TTAB 1999);
*Mother's Restaurant, supra.*

Issue preclusion is applicable in the instant proceeding.
The ownership rights of opposer to the HAVANA CLUB mark was an
issue actually litigated in *Galleon V.* This issue was raised,
litigated and actually adjudged in that case and opposer's
ownership rights to HAVANA CLUB were necessary and essential
to the resulting judgment of the Second Circuit. Moreover,
absent any reason to assume otherwise, we find that opposer
was fully represented in the prior action. Accordingly, we
adopt the following factual findings of the Second Circuit
Court of Appeals regarding opposer's mark and assignments as
recited in *Galleon V.*

Prior to the Cuban revolution, Jose Arechabala, S.A.
("JASA"), a Cuban corporation formed by members of the
Arechabala family, produced HAVANA CLUB rum and owned the
trademark for use therewith. JASA exported the rum to the
United States until 1960 when Fidel Castro's government

000022

confiscated JASA's assets, including the HAVANA CLUB mark.[*]  In
1963, the United States government imposed an embargo on Cuba.

Beginning in 1972, Empresa Cubana Exportadora De
Alimentos y Productos Varios ("Cubaexport"), a Cuban state-run
organization established by the Cuban Ministry of Foreign
Commerce, exported HAVANA CLUB rum to Eastern Europe and the
Soviet Union.  This state enterprise registered the HAVANA
CLUB and design mark with USPTO in 1976 under Registration No.
1,031,651.

Following an effort to reorganize, Cubaexport became
Havana Rum & Liquors, S.A. ("HR&L") in 1993 and entered into a
joint venture agreement with the French company Pernod Ricard,
S.A., an international liquor distributor.  An agreement
between these entities in 1993 created the opposer herein,
Havana Club Holding, S.A. ("HCH") and Havana Club
International, S.A. ("HCI").  HCH is a Luxembourg corporation
and HCI is a joint-stock company organized under the laws of
Cuba.

In 1994, Cubaexport assigned U.S. Registration No.
1,031,651 (for the mark HAVANA CLUB and design) to HR&L, and
in a subsequent agreement HR&L assigned this registration to

---

[*] On October 15, 1960, Cuban Law No. 890 ("Law No. 890") was
issued, expropriating for the Cuban government the physical
assets, property, accounts and business records of JASA.  See DX
57A "Law No 890" ("Nationalization is ordered by the forced
expropriation of all industrial and commercial corporations, as
well as the factories, stores, warehouses and other assets and
rights of same and the properties of the following natural
persons or companies").

7

000023

HCH. After the reorganization, upon application by HCH in June 1996, the USPTO renewed the registration of the HAVANA CLUB mark for a term of ten years. In 1995, the Office of Foreign Assets Control ("OFAC") of the U.S. Department of Treasury issued a license to Cubaexport approving the assignments from Cubaexport to HR&L and from HR&L to HCH (opposer). These assignments were nullified, however, when OFAC revoked the license in 1997, pursuant to Section 515.805 of the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. Part 515.[5]

The Second Circuit in *Galleon V* affirmed a holding of the lower court that HCH (opposer herein)[6] did not have standing to assert trademark rights in HAVANA CLUB against another rum producer because the specific license to assign the mark to

-----

[5] On April 17, 1997, OFAC issued a Notice of Revocation stating that "as a result of facts and circumstances that have come to the attention of this Office which were not included in the application of October 5, 1995, License No. C-18147 . . . is hereby revoked retroactive to the date of issuance." *See Havana Club Holding, S.A. v. Galleon, S.A.,* 974 F. Supp. 302, 306 (S.D.N.Y. 1997).

[6] Opposer acknowledges that it was in the position as plaintiff in Galleon through the following statement: "...the reason why Opposer amended its Notice of Opposition was to interpose paragraphs 9 and 9, thus providing a Section 44(e) basis for standing that is independent of Opposer's 910 registration of the HAVANA CLUB mark, whose assignment to Opposer was rejected in the *Galleon* decision." Opp. Brief, p 9.

000024

opposer was nullified by OFAC's revocation of the license and

because the Cuban embargo did not authorize the assignment.'

Turning to the issue of standing before us in this case,

we note that standing is a threshold inquiry directed solely

to establishing a plaintiff's interest in the proceeding.' The

purpose in requiring standing is to prevent litigation where

there is no real controversy between the parties, where a

plaintiff is no more than an intermeddler.  *American Vitamin

Products, Inc. v. DowBrands, Inc.*, 22 USPQ2d 1313 (TTAB 1992).

To establish standing, it must be shown that a plaintiff has a

"real interest" in the outcome of a proceeding; that is,

plaintiff must have a direct and personal stake in the outcome

of the opposition.  *See Ritchie v. Simpson*, 170 F.3d 1092, 50

USPQ2d 1023 (Fed. Cir. 1999); and *Jewelers Vigilance

Committee, Inc. v. Ullenberg Corp.*, 823 F.2d 490, 2 USPQ2d

2021, 2023 (Fed. Cir. 1987) ("it is in the pleading stage of

the opposition proceeding that the opposer must plead facts

---

* *Galleon V*, 53 USPQ2d at 1611.  The Board notes that as a result
of the *Galleon V* decision, the recordation of assignments of U.S.
Registration No. 1,031,651 from Cubaexport to HRL and from HRL to
HCH have been invalidated by the Commissioner for Trademarks.
Current PTO records indicate that ownership of said registration
remains with Cubaexport [i.e., the original registrant].  *See*
Trademark Assignment Records, Reel 2398 Frame 0855.

* Section 13 of the Trademark Act, 15 U.S.C. § 1063, sets forth the
foundation for establishing standing in an opposition proceeding,
stating in relevant part:

    Any person who believes that he would be damaged by the
    registration of a mark upon the principal register . . . may
    upon payment of the prescribed fee, file an opposition in the
    Patent and Trademark Office.

000025

sufficient only to show a personal interest in the outcome of the case beyond that of the general public").

As a preliminary matter, we determine that applicant is correct in stating that the Board never reached the issue of standing, nor entered a decision regarding opposer's standing in this matter.  Hence, the law of the case doctrine is inapplicable.

The most common way to demonstrate standing is by proving ownership of a relevant U.S. trademark registration or a common law mark.  Opposer's standing may be rooted in enforceable rights despite the existence of the strictures of the Cuban embargo and the relevant regulations surrounding its implementation.

The CACR, 31 C.F.R. Part 515, implements the U.S. embargo against Cuba.[*]  Unless authorized, the embargo prohibits, with respect to property in which a Cuban national or entity has an interest, (1) "all dealings in, including, without limitation, transfers, withdrawals, or exportations of, any property . . . or evidences of ownership of property by any person subject to the jurisdiction of the United States"; (2) "all transfers outside the United States with regard to any property or

---

[*] The CACR was implemented in 1963 under Section 5(b) of the Trading with the Enemy Act of 1917, as amended, 50 U.S.C. App. 1-44. The Cuban Liberty and Democratic Solidarity Act ("LIBERTAD Act"), Pub. L. No. 104-114, 110 Stat. 785 (1996), was passed by Congress in 1996, which subsequently codified the regulations implementing the embargo.

000026

property interest subject to the jurisdiction of the United States"; and (3) "any transaction for the purpose or which has the effect of evading or avoiding any of the prohibitions [above]." Id. at Section 515.201(b) and (c). The embargo defines "property" to include trademarks. See id. at Section 515.311.

In the Galleon V decision, the court found that the party who is opposer herein has no rights to U.S. Registration No. 1,031,651 for the mark HAVANA CLUB and design because the specific license granted to Cubaexport to assign the mark to opposer was nullified by the OFAC's revocation of the specific license and because CACR does not authorize the assignments. Thus, opposer cannot have standing based on that registration.

Similarly, opposer's standing based on claims of ownership of the Luxembourg registration for the mark and its two pending United States applications fails as a matter of law. Opposer is explicitly barred by statute from bringing this opposition based upon a trademark that is the same or substantially similar to a trademark used in connection with a business that was confiscated by the Cuban government. We note that on October 21, 1998, Congress passed Section 211 of the Department of Commerce Appropriations Act 1999, as included in the Omnibus Consolidated and Emergency Supplemental Appropriations Act 1999 (hereinafter "Section 211"). See Pub. Law 105-277, 112 Stat. 1681.

000027

This statute limits the registration and renewal of, and the assertion of trademark and trade name rights in, marks that were used in connection with property confiscated by the Cuban government. The statute, in relevant part, provides:

> (2)(b) No U.S. court shall recognize, enforce or otherwise validate any assertion of treaty rights by a designated national or its successor-in-interest under sections 44(b) or (e) of the Trademark Act of 1946 (15 U.S.C. 1126(b) or (e)) for a mark, trade name or commercial name that is the same or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of such mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

Opposer argues that because the Board is not a "U.S. court," we are not bound by the restrictions of this provision. We disagree. While it is true that the Board is not a "U.S. court," it is also true that any judicial review of our decision will be to a "U.S. court." See Section 21 of the Trademark Act. If opposer would be barred from asserting its rights in that court, it would not have standing to assert them before the Board. It would make no sense to ignore opposer's statutorily imposed inability to assert its rights in any judicial review and render a decision that opposer could not appeal or defend on the merits.

Opposer also contends that it does not fall within the parameters of subsection (b) of Section 211 because it is not by definition a "designated national or its successor-in-interest." We again disagree. Section 211 states:

000028

The term "designated national" has the
meaning given such term in section 515.305
of title 31, Code of Federal Regulations, as
in effect on September 9, 1998, and includes
a national of any foreign country who is a
successor-in-interest to a designated
national.

We turn to 31 C.F.R. Section 515.305 which defines a

"designated national" as "Cuba and any national thereof

including any person who is a specially designated national."

A "specially designated national" is defined in 31 C.F.R.

Section 515.306 and includes "any partnership, association,

corporation or other organization which on or since [July 8,

1963]" has been owned or controlled directly or indirectly by

the Government or authorities exercising control over a

designated foreign country or by any specially designated

national."

Opposer is a Luxembourg corporation, but it is 50% owned

by the Cuban entity HR&L, and therefore, is a "designated

national."[11]  Because it is half owned, and therefore

indirectly controlled, by a designated national, under Section

515.306, opposer is a specially designated national.  As a

specially designated national, opposer is validly deemed a

"designated national" for purposes of Section 211.

Consequently, because opposer's pending Section 44(e)

---

This is the "effective date" established under 31 C.F.R.
Section 515.201(d).

13

000029

applications are for the same or a substantially similar mark as the mark confiscated by the Cuban government and because opposer has not provided any evidence of any express consent by the original owner of the mark, opposer's claimed rights to the pending applications at issue cannot be recognized, enforced, or validated under U.S. law. Opposer's rights to ownership of these marks in the United States, therefore, fail despite the fact that these applications were filed before the mark being opposed."[11]

Additionally, we note that under 31 C.F.R. Section 515.528,[13] designated nationals are precluded from filing and prosecuting any applications for blocked trademarks.[14] Thus, opposer's contention that the Cuban embargo regulations

---

[11] We note that the relevant restrictions of the Cuban embargo apply to a Cuban national or entity regardless of the degree or amount of ownership interest involved. 31 C.F.R. § 515.201(b).
[12] This decision has no practical effect on these pending applications because they are not within the Board's jurisdiction. Our consideration of these applications falls only within the context of determining the issue of standing in this opposition proceeding.

[13] 31 C.F.R. Section 515.528 reads, in relevant part:

(a)  The following transactions by any person who is not a designated national are hereby authorized:

(1)  The filing and prosecution of any application for a blocked foreign patent, trademark or copyright, or for the renewal thereof;
(2)  The receipt of any blocked foreign patent, trademark, or copyright;
(3)  The filing and prosecution of opposition or infringement proceedings with respect to any blocked foreign patent, trademark, or copyright, and the prosecution of a defense to any such proceedings...

000030

"expressly" invest opposer with the right to file and
prosecute applications and "thus with the precise predicate
for standing" in this proceeding also fails as a matter of law
given opposer's status as a "designated national."

Although Section 13 of the Trademark Act[14] establishes a
broad class of persons who may be considered proper opposers,
we find that no material issue exists as to whether opposer
falls within said class as a person capable of filing an
opposition in this instance.  With regard to opposer's claim,
under Section 2(e)(3) of the Trademark Act, that applicant's
mark "HAVANAS AND BANANAS" is primarily geographically
deceptively misdescriptive of rum drinks not originating from
Cuba, it is clear that opposer has no standing to pursue this
claim just as it had no standing to pursue its false
designation of origin claim under Section 43(a) in *Galleon V.*
The Second Circuit affirmed the District Court's holding that
opposer had no standing because the Cuban embargo prevented
opposer from selling its rum in the United States, and thereby

---

[13] 31 C.F.R. Section 515.528 states that the term "blocked foreign
patent, trademark, or copyright" as used in the section means
"any patent, petty patent, design patent, trademark or copyright
issued by any foreign country in which a designated foreign
country or national thereof has an interest, including any
patent, petty patent, design patent, trademark, or copyright
issued by a designated foreign country."

[14] Section 13 of the Act, which provides:

   Any person who believes that he would be damaged by the
   registration of a mark upon the principal register may, upon payment
   of the prescribed fee, file an opposition in the Patent and
   Trademark Office, stating the grounds therefor....

000031

from suffering commercial injury because of Bacardi's actions;
and quoted the District Court, as saying:  "Any competitive
injury plaintiffs will suffer based upon their intent to enter
the U.S. market once the embargo is lifted is simply too
remote and uncertain to provide them with standing." *Galleon
V* at 122; cf. *The Joint Stock Society v. UDV North America*,
266 F.3d 164, 60 USPQ2d 1258 (3rd Cir. 2001).

As to its claim of dilution, the absence of a proprietary
right to the HAVANA CLUB trademark weighs against standing.
Section 43(c)(1) states that "[t]he owner of a famous
trademark shall be entitled...to obtain such...relief as is
provided in this subsection."  Because opposer has no
ownership rights to the mark, any attempt to calculate the
dilution to said mark is unwarranted.

Similarly, with regard to the its claim involving Section
2(a), opposer's attempts to assert that applicant's use of the
HAVANAS AND BANANAS mark may disparage or falsely suggest a
connection with opposer's persona or identity is ill founded.
Opposer's lack of proprietary rights to the HAVANA CLUB mark
having thus been established, we are aware of no reason why
the creation of a name or identity brought about by the mere
addition of an entity designator (Holding, S.A.) to a
trademark owned by another should  in effect, confer standing
on opposer in this instance.

000032

Opposer cannot demonstrate any real interest in the outcome of this proceeding and lacks standing to assert the claims alleged in this proceeding.  Accordingly, applicant's motion for summary judgment is granted and the opposition is dismissed.[16]

---

[16] In view of our finding regarding opposer's lack of standing we need not address the issues with respect to opposer's substantive claims.

17

ROPES
&GRAY

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS     NEW YORK, NY 10020-1104     212-596-9000     F 212-596-9090
BOSTON     NEW YORK     PALO ALTO     SAN FRANCISCO     WASHINGTON, DC     www.ropesgray.com

June 14, 2006

Vincent N. Palladino
212-596-9070
Vincent.Palladino@ropesgray.com

**VIA FACSIMILE/CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
Customer Service Window
401 Dulany Street
Alexandria, Virginia 22314

<u>HAVANA CLUB & Design Registration No. 1,031,651</u>

Dear Sir/Madam:

This letter requests that the Patent and Trademark Office ("PTO") approve the renewal application that the registrant Cubaexport filed on December 13, 2005 and renew Registration No. 1,031,651 of the HAVANA CLUB & Design trademark ("the HAVANA CLUB Registration").

Cubaexport filed a timely and complete renewal application together with the renewal fee prescribed by the PTO regulations that implement the Lanham Act. Out of an abundance of caution, Cubaexport's attorneys Ropes & Gray advised the PTO that the renewal fee was being tendered pursuant to its understanding that OFAC's specific License CU-74488 authorized Ropes & Gray to pay the renewal fee and receive reimbursement for that expense from Cubaexport. On April 6, 2006, OFAC advised Ropes & Gray that specific License CU-74488 does not authorize the payment and invited Ropes & Gray to seek a specific license that entitles Ropes & Gray to pay the renewal fee. Ropes & Gray applied for such a specific license on April 7, 2006. We appreciate OFAC's continued attention to this matter. However, OFAC has not yet acted on the request for a new specific license, and we have not been able to determine when OFAC will do so.

The HAVANA CLUB Registration will expire on July 27, 2006 if it is not renewed. Accordingly, Cubaexport requests that the registration be renewed. First, the PTO should carry out its statutory mandate under Lanham Act § 9, 15 U.S.C. § 1059, to renew a registration when a registrant submits a renewal application and tenders the prescribed renewal fee. Second, even if the PTO decides to take into account the Cuban Asset Control Regulations ("the CACR"), it should not conclude that the CACR prohibit renewal of the registration. Finally, Bacardi has no right to intervene in the *ex parte* renewal process.

000034

ROPES & GRAY LLP

Commissioner for Trademarks
Page 2
June 14, 2006

### The PTO Should Carry Out Its Statutory Mandate

Lanham Act § 9 requires the PTO to renew a registration when the registrant submits within the statutory renewal period "the prescribed fee and ... a written application, in such form as may be prescribed by the Director," who is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. 15 U.S.C. § 1127. This statutory mandate is implemented by 37 C.F.R. § 2.6(a)(5) (setting fee) and 37 C.F.R. §§ 2.182-183 (prescribing requirements of application).

Neither Lanham Act § 9 nor the PTO's implementing regulations require or permit the PTO to consider the applicability of the CACR to the registration renewal process. Where as here Cubaexport's renewal application was timely filed together with the fee prescribed by the PTO regulations that implement the Lanham Act's renewal provisions, Cubaexport submits that the application should be accepted and the registration renewed. *See, e.g.,* 3 *McCarthy on Trademarks* § 21:9 at 21-13 to 21-14 (4th ed. 2006) ("The Director has no authority to waive a requirement of the statute ... [or] to suspend compliance with the statute."); *Consarc* v. *U.S. Treasury, OFAC,* 71 F.3d 909, 915 (D.C. Cir. 1995) ("an agency's application of its own regulations . . . receives 'an even greater degree of deference than the *Chevron* standard.'").

In renewing the registration, the PTO should not look beyond Lanham Act § 9 and its own implementing regulations for the foregoing reason and because the PTO has "little or no experience in [construing]. . . regulations that do not directly concern registration of trademarks." *Galleon S.A.* v. *Havana Club Holding, S.A.,* 2004 TTAB LEXIS 38 * 63 (T.T.A.B. 2004) (declining to construe the CACR). "[N]owhere is this more true than in a case where [a registration would be cancelled] based upon [an] alleged failure to comply with the requirements of a statute which is outside of [the PTO's] area of expertise. . . . [There] must [be] no room for doubt . . . or interpretation." *Santine Societa* v. *P.A.B. Products,* 209 U.S.P.Q. 958, 965 (T.T.A.B. 1988).

Even if OFAC does not act on the request for a specific license or denies that license, the PTO may not refuse to renew the HAVANA CLUB Registration unless it interprets the *general* license provisions of 31 CACR § 515.227(a) and decides that they prohibit renewal. The court in *Havana Club Holding, S.A.* v. *Galleon S.A.,* 974 F. Supp. 302, 306-07 (S.D.N.Y. 1997), explained that:

The CACR creates both general licenses, which permit classes or categories of transactions with Cuban nationals, see, e.g., 31 C.F.R. §515, 542 (authorizing "all transactions of common carriers incident to the receipt of mail between the United States and Cuba"), and specific licenses, which require individualized determinations and approval by OFAC. See id. § 515.801. A

ROPES & GRAY LLP

Commissioner for Trademarks
Page 3
June 14, 2006

general license, furthermore, "is any license or authorization the terms of which are set forth [in the CACR]." 31 C.F.R. § 515.318. *The general license pertaining to United States intellectual property authorizes "transactions related to the registration and renewal in the United States Patent and Trademark Office ... of ... trademarks, ... in which the Government of Cuba or a Cuban national has an interest . . . ."* 31 C.F.R. § 515.527(a).

*By the express terms set forth in this section, the general license allows for the registration and renewal of trademarks* (emphasis added).

Subsequent to that decision, 31 CACR § 515.227(a) was amended to provide:

(a)(1)  Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

(2)  No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consent.

To conclude that 31 CACR § 515.227(a) does not authorize the renewal of the HAVANA CLUB Registration, the PTO would have to interpret 31 CACR § 515.227(a) and decide that 31 CACR § 515.227(a)(2) prohibits renewal of the registration despite 31 CACR § 515.227(a)(1), which provides for renewal on its face. That is not an exercise in which the PTO should engage.

### The PTO Should Renew The Registration
### Even If The PTO Considers The CACR

Even if the PTO elects to interpret 31 CACR § 515.227(a), it should not conclude that it prohibits renewal of the HAVANA CLUB Registration for at least the following reasons.

*First*, construing 31 CACR § 515.227(a) to prohibit renewal of the HAVANA CLUB Registration would be contrary to a key purpose of the CACR. The CACR are intended to *preserve* assets owned by Cuban nationals such as Cubaexport. *Havana Club Holding, S.A.* v. *Galleon S.A.*, 961 F. Supp. 498, 505 (S.D.N.Y. 1997). By

ROPES & GRAY LLP

Commissioner for Trademarks
Page 4
June 14, 2006

contrast, declining to renew the HAVANA CLUB Registration "raises the specter of the destruction of blocked assets [the HAVANA CLUB Registration] ... which otherwise would function as bargaining chips in United States relations with Cuba". *Ibid.*

      *Second*, 31 CACR § 515.227(a)(2) was not enacted until 1999 following the passage of Section 211 of the Omnibus Consolidated and Supplemental Appropriations Act in 1998. It should not be applied retroactively to destroy an asset that was created in 1976 when the HAVANA CLUB Registration issued. *Cf. Havana Club Holding, S.A.* v. *Galleon S.A.*, 203 F.3d 116, 126 n.9 (2d Cir. 2000), citing *Landgraf* v. *USI Film Products*, 511 U.S. 244, 265 (1994) ("the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.")

      *Third*, amended 31 CACR § 515.227(a) should not be read as a repeal of Lanham Act § 9, which provides that a registrant may renew its registration "upon the payment of the prescribed fee and the [timely] filing of a written application." In keeping with the statute, Cubaexport has filed a timely renewal application and tendered the PTO's prescribed fee. Unless or until it is determined that 31 CACR § 515.227(a)(2) prohibits Cubaexport from paying the fee, the PTO should reconcile the Lanham Act's renewal provisions and its own regulations with the CACR by accepting payment of the renewal fee pursuant to its own regulations and 31 CACR § 515.227(a)(1). *See Sandoz, Inc.* v. *Michael Leavitt*, 2006 U.S. Dist. LEXIS 17549 *15 (D.D.C. 2006), citing *Morton* v. *Mancari*, 417 U.S. 535, 551 (1974) ("when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective").

      This outcome is particularly appropriate here. No court has yet ruled on the applicability of 31 CACR § 515.227(a) to renewal of the HAVANA CLUB Registration. Moreover, preserving the HAVANA CLUB Registration until such a ruling is made comports with a key purpose of the CACR.

      *Fourth*, the New York litigation referred to above involved Bacardi and Havana Club Holding, S.A. ("HCH"), which was the PTO record owner of the HAVANA CLUB Registration for a time until Cubaexport was held to be the owner of the registration. The New York litigation did not decide whether 31 CACR § 515.227(a)(2) prohibits *renewal* of the HAVANA CLUB Registration because it concerned the applicability of the CACR to the *transfer* of the registration from Cubaexport to HCH. Moreover, Cubaexport was not a party to the New York litigation. For that reason, the New York court ruled that cancelling the HAVANA CLUB Registration before Cubaexport has had its day in court would be "an inequitable adjudication." *Havana*

ROPES & GRAY LLP

Commissioner for Trademarks
Page 5
June 14, 2006

*Club Holding, S.A.,* 974 F. Supp. at 1089. The PTO should follow suit by preserving the HAVANA CLUB Registration through renewal until Cubaexport has had its day in court.

> **Fifth**, it would be inappropriate to destroy the HAVANA CLUB Registration at this time in contravention of the CACR's basic purpose in order to give retroactive effect to 31 CACR § 515.227(a)(2) when Cubaexport has not had an opportunity to show that 31 CACR § 515.227(a)(2) is inapplicable to the renewal of its registration. That, in turn, involves two issues: whether there was a confiscation within the meaning of 31 CACR § 515.227(a)(2) and, even if there was, whether Cubaexport is required to obtain permission to renew its registration.

> Regarding the first issue, 31 CACR § 515.227(a)(2) applies only to a "mark ... that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336." 31 CACR § 515.336 refers to the nationalization of property by the Cuban government in 1959 without "adequate and effective compensation." Property includes trademarks. 31 CACR § 515.311. Cubaexport maintains that it should be entitled to prove that neither the HAVANA CLUB trademark nor a business or assets associated with the trademark, owned by a party referred to in 31 CACR § 515.527(a)(2), were nationalized without compensation. Even if 31 CACR § 515.227(a)(2) is ultimately determined to apply to the HAVANA CLUB Registration, the registration should be preserved as an asset through renewal until that determination is made in a case to which Cubaexport is a party.

> Concerning the second issue, only Bacardi, as the alleged successor in interest to the trademark rights of Jose Arechabala, S.A. ("JASA"), could be adjudicated a party whose permission is required by 31 CACR § 515.227(a)(2). No such adjudication has been made in any forum including the New York litigation referred to above. On the contrary, as the PTO Attorney examining Bacardi's application to register HAVANA CLUB observed in rejecting the application:

>> [The New York litigation] reveals a few clearly decided points.... [T]he rights in the mark and . . . Registration no. 1,031,651 reside in Cuba Export.... Registration no. 1,031,651 was neither cancelled nor determined to be the property of [Bacardi].

> If JASA had no rights in HAVANA CLUB that it could have assigned to Bacardi, Bacardi is not a "bona fide successor-in-interest" whose consent is required under 31 CACR 515.227(a)(2) for renewal of the HAVANA CLUB Registration. Whether JASA had rights in HAVANA CLUB it could have assigned to Bacardi is an issue that will be litigated in Bacardi's District of Columbia case against Cubaexport and HCH, where Bacardi *inter alia* seeks review of the decision Trademark Trial & Appeal

000038

ROPES & GRAY LLP

Commissioner for Trademarks
Page 6
June 14, 2006

Board ("Board") dismissing Bacardi's petition to cancel the HAVANA CLUB
Registration. It is not an issue the PTO can or should decide.

### Bacardi Has No Right to Intervene
### In The *Ex Parte* Renewal Process

Bacardi's attempt to cancel the HAVANA CLUB Registration in the
Board and in court for its own commercial ends seeks the destruction of an asset that the
CACR is designed to preserve. Bacardi seeks the same outcome by improperly
intervening in the *ex parte* renewal process and urging the PTO to ignore Lanham Act § 9
and the PTO's own regulations and not renew the registration because 31 CACR
515.227(a)(2) supposedly prohibits that.

Bacardi has no right to intervene, much less to urge that the registration
not be renewed. Review of Cubaexport's renewal application is the province of the Post-
Registration Division, which has yet to act on the application. *See* TMEP §§ 1606.11-13.
Bacardi has no right to tell the Post-Registration Division what it should do. Even if the
Post-Registration Division had renewed the registration and Bacardi regarded that
decision as adverse to Bacardi's own interests, Bacardi would have no standing to petition
the Director for relief. *See* TMEP § 1606.14; 2 *McCarthy on Trademarks* § 21:5 at 21-8
(4th ed. 2006).

If Bacardi wishes to eliminate the HAVANA CLUB Registration as a bar
to its own rejected application to register HAVANA CLUB, its sole remedy is a
cancellation proceeding raising one or more of the grounds set out in the Lanham Act.
*See* TMEP §§ 1607. Bacardi has already availed itself of that procedure. The Board
dismissed its petition. Bacardi may not try to obtain the same relief by improperly
intervening in the *ex parte* renewal process even as it appeals the Board's decision not to
cancel the HAVANA CLUB Registration.

Despite Bacardi's improper intervention, the PTO should preserve the
HAVANA CLUB Registration by renewing it and allow the District of Columbia court to
resolve Bacardi's dispute with Cubaexport and HCH. Bacardi in effect wants the PTO to
replace the HAVANA CLUB Registration with a registration of HAVANA CLUB
owned by Bacardi. Toward that end, Bacardi asks the PTO to disregard the Lanham Act,
the PTO's own regulations and a key purpose of the CACR. Moreover, it asks this of the
PTO although the PTO has refused to grant Bacardi's application to register HAVANA
CLUB because the application is barred by the HAVANA CLUB Registration and the
designation HAVANA CLUB is primarily geographically deceptively misdescriptive of
Bacardi's non-Cuban rum.

000039

ROPES & GRAY LLP

Commissioner for Trademarks
Page 7
June 14, 2006

In short, Bacardi wants the PTO to destroy an existing Cuban asset although no new asset – Cuban or otherwise – will be created because Bacardi's application has properly been refused. The PTO should decline to do that when it plainly has the power, and the statutory obligation, to renew the HAVANA CLUB Registration in accordance with Lanham Act § 9 and its own implementing regulations.

For the foregoing reasons, Cubaexport respectfully submits that the PTO should not permit the destruction of the HAVANA CLUB Registration in contravention of Lanham Act § 9, the PTO's implementing regulations and a basic purpose of the CACR by giving retroactive effect to 31 CACR 515.227(a)(2), before Bacardi has had its day in court. If a court ultimately determines that the PTO should not have renewed the HAVANA CLUB Registration, the court can issue an order consistent with that judgment pursuant to 15 U.S.C. § 1119. Accordingly, Cubaexport respectfully requests that the PTO accept payment of the renewal fee and any late renewal fee it may deem appropriate and approve Cubaexport's renewal application.

Respectfully submitted,

Vincent N. Palladino

VNP:emf

cc:    Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
       Ms. Liz Farrow, OFAC
       (each Via Facsimile and FedEx)

000040

# COVINGTON & BURLING

1201 PENNSYLVANIA AVENUE NW        WASHINGTON                OSCAR M. GARIBALDI
WASHINGTON, DC 20004-2401         NEW YORK
TEL 202.662.6000                  SAN FRANCISCO            TEL 202.662.5824
FAX 202.662.6291                  LONDON                  FAX 202.778.5624
WWW.COV.COM                       BRUSSELS                OGARIBALDI @ COV.COM

9 May 2006

VIA FACSIMILE-CONFIRMATION VIA FEDEX

Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, N.W. – Annex
Washington, D.C. 20220

Attn: Licensing Division

Re:    License To Pay HAVANA CLUB Registration Renewal Fee

Dear Sir or Madam:

We are writing on behalf of Bacardi & Company Limited and Bacardi U.S.A.,
Inc. in opposition to the April 7, 2006 letter of Vincent N. Palladino, Esq., of Ropes &
Gray, requesting a license to incur and receive payment for the expense of renewing
Registration No. 1,031,651 of HAVANA CLUB & Design ("the HAVANA CLUB
Registration"). Ropes & Gray is counsel to Empresa Cubana Exportadora de Alimentos
y Productos Varios d/b/a Cubaexport ("Cubaexport"), the purported registrant of the
HAVANA CLUB Registration. The transaction for which the license is sought would be
performed on behalf and for the benefit of Cubaexport.

Mr. Palladino's letter responds to the April 6, 2006 letter of Barbara C.
Hammerle, Acting Director of OFAC, in which OFAC determined that License No. CU-
74488 did not authorize Ropes & Gray to pay a filing fee to the U.S. Patent and
Trademark Office ("PTO") to renew the HAVANA CLUB Registration on behalf of
Cubaexport. In light of that determination, Mr. Palladino requests that OFAC grant
Ropes & Gray an additional license permitting it to pay the renewal fee prior to July 27,
2006, the expiration of the grace period for renewal.

We submit that OFAC should refuse to issue any license authorizing renewal of
the HAVANA CLUB Registration on behalf or for the benefit of Cubaexport or any
payment or transaction related to any such renewal. In the circumstances of this case,
any renewal of the HAVANA CLUB Registration on behalf or for the benefit of
Cubaexport would contradict the policies underlying the Cuban embargo and the long-
standing principles of international law and U.S. public policy that deny recognition to
claims of title to U.S. property based on foreign confiscatory measures. Those principles
are now codified in respect of Cuba in Section 211 of the Omnibus Consolidated and
Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat.

COVINGTON & BURLING

Office of Foreign Assets Control
9 May 2006
Page Two

2681 (1998) (hereafter "Section 211") and Section 515.527 of the Cuban Assets Control
Regulations ("CACRs"), 31 C.F.R. § 515.527.

Section 515.527 of the CACRs, as amended pursuant to Section 211 and currently
in effect, provides as follows:

> "(a)(1) Transactions related to the registration and renewal in the United
> States Patent and Trademark Office or the United States Copyright Office
> of patents, trademarks, and copyrights in which the Government of Cuba
> or a Cuban national has an interest are authorized.

> (2)     No transaction or payment is authorized or approved pursuant to
> paragraph (a)(1) of this section with respect to a mark, trade name, or
> commercial name that is the same as or substantially similar to a mark,
> trade name, or commercial name that was used in connection with a
> business or assets that were confiscated, as that term is defined in
> § 515.336, unless the original owner of the mark, trade name, or
> commercial name, or the bona fide successor-in-interest has expressly
> consented." 31 C.F.R. § 515.527.

The renewal of the HAVANA CLUB Registration falls squarely within the
prohibition set out in paragraph (a)(2) above. *First*, the purported registrant being
Cubaexport, an agency of the Cuban Government, the HAVANA CLUB Registration is
property in which the Government of Cuba has an interest. *Second*, the HAVANA
CLUB mark registered in the United States is identical to the HAVANA CLUB mark that
was used (and owned) by José Arechebala, S.A. ("JASA") in connection with its rum-
making business in Cuba. *Third*, that business and all the related assets (including the
HAVANA CLUB trademark) were confiscated in 1960 by the Cuban government within
the meaning of 31 C.F.R. § 515.336. In *Havana Club Holding, S.A. v. Galleon, S.A.*, 203
F.3d 116 (2d Cir. 2000), the Second Circuit found that "[b]efore the Cuban revolution,
Jose Arechebala, S.A., a Cuban corporation owned principally by members of the
Arechebala family, produced 'Havana Club' rum and owned the trademark 'Havana
Club' for use with its rum. JASA exported its rum to the United States until 1960, when
the Cuban government, under the leadership of Fidel Castro, seized and expropriated
JASA's assets. Neither JASA nor its owners ever received compensation for the seized
assets from the Cuban government." 203 F.3d at 119-20. *Fourth*, Bacardi is the *bona
fide* successor-in-interest to all of JASA's rights in the HAVANA CLUB trademark.
Neither Bacardi nor JASA has ever consented, expressly or otherwise, to the renewal of
the HAVANA CLUB Registration by or on behalf of Cubaexport.

COVINGTON & BURLING

Office of Foreign Assets Control
9 May 2006
Page Three

While OFAC has broad discretion to grant or deny specific licenses under the CACRs, no case has been made by Cubaexport why OFAC should disregard Section 211 and the long standing policy of the United States against giving extraterritorial effect to claims of title to U.S. intellectual property on the basis of a foreign confiscatory measure. *See, e.g., Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 293 F. Supp. 892, 916 (S.D.N.Y. 1968) *aff'd in pertinent part*, 433 F.2d 686 (2d Cir. 1970), *cert. denied*, 403 U.S. 905 (1971). The same reasons that exclude cases like the present one from the generic license of Section 515.527(a)(1) of the CACRs compel denial of a specific license. Further, the Congressional policy in this regard is made abundantly clear not only in Section 211(a)(1), which underlies the amended Section 515.527 of the CACRs, but also in Section 211(a)(2), which provides as follows:

> "No U.S. court shall recognize, enforce or otherwise validate any assertion of rights by a designated national based on common law rights or registration obtained under such section 515.527 of such a confiscated mark, trade name or commercial name."

Cubaexport and Havana Club Holding, S.A., have previously sought an OFAC license for a transfer of the same HAVANA CLUB Registration. Their request was based on statements that falsely described the transactions which were the subject of the license sought. A license issued by OFAC in reliance of those false statements was later revoked retroactively to the date of issuance when OFAC became aware of the misrepresentation. While Cubaexport and Havana Club Holding fail to disclose the true circumstances of the purported transfer of the U.S. HAVANA CLUB mark to Havana Club Holding, they cannot deny that the putative transactions involved the payment of large sums of money to the Cuban government in exchange for U.S. property, in violation of U.S. laws and regulations.

Mr. Palladino argues that License No. CU-74488 authorized "payment for large fees and other expenses incurred on Cubaexport's behalf in maintaining the HAVANA CLUB Registration" and claims that it would be reasonable to authorize the minor expense of "maintaining the registration through payment of the renewal fee." This argument, which is deceptively presented as an argument *a maiore ad minus*, fails for two reasons. *First*, the petitioner again misrepresents the extent of License No. CU-74488. That license did not authorize payments incurred "in maintaining" the HAVANA CLUB Registration. As Ms. Hammerle's letter explained, License No. CU-74488 merely authorized Ropes & Gray "to engage in transactions necessary to provide Cubaexport representation only in the litigation pending before the District Court." *Second*, the size of the renewal fee relative to the previously authorized payments does not matter, because the real object of the license sought by Ropes & Gray is a separate and distinct *transaction*, namely the proposed renewal of the registration in 2006. That new

000043

COVINGTON & BURLING

Office of Foreign Assets Control
9 May 2006
Page Four

transaction has nothing to do with the fees and expenses incurred to defend Cubaexport in the District Court action.

     Mr. Palladino further argues that Ropes & Gray is merely trying to maintain the *status quo* by renewing the HAVANA CLUB Registration pending a decision of the District Court for the District of Columbia on the validity of the 1996 renewal of that registration. The pending dispute on the validity of the 1996 renewal has nothing to do, however, with the proposed transaction for which a license is sought, *i.e.*, the renewal of the trademark in 2006. The existing controversy on the 1996 renewal does not exempt Cubaexport or its counsel from the existing laws and regulations applicable to further renewals, nor does it justify ignoring fundamental U.S. public policies against permitting any such renewal in 2006.

     Based on the foregoing, we respectfully request that OFAC deny Mr. Palladino's April 7 application for an additional license authorizing Ropes & Gray to incur and receive payment for the expense of renewing the HAVANA CLUB Registration on behalf of Cubaexport.

Respectfully submitted,

Oscar. M. Garibaldi
*Attorney for Bacardi & Company
Limited & Bacardi U.S.A., Inc.*

cc:    Commissioner for Trademarks
       Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
       Elizabeth W. Farrow, OFAC
       (Each Via Facsimile and FedEx)

000044



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Cuban Assets Control Regulations                                    License No. CU-75745

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:    **Ropes & Gray LLP (the "Licensee")**
1251 Avenue of the Amercas
New York, NY 10020
Attn: Vincent N. Palladino, Esq.

1. Pursuant to your application dated **February 27, 2006**, the following transactions are hereby licensed:

**\* \* \* \* \* SEE REVERSE \* \* \* \* \***

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority of cited above and the terms of this license.

3. The licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **April 30, 2007**, is not transferable, is subject to the provisions of Title 31, Parts 501 and 515 of the Code of Federal Regulations and any regulations and rulings issued pursuant thereto, and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

**OFFICE OF FOREIGN ASSETS CONTROL**

By *Clara David* 4/10/06
for Elizabeth W. Farrow
Assistant Director for Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No. CU-75745                                                    **Page 2 of 2**
Licensees: Ropes & Gray LLP

**SECTION 1 - AUTHORIZATION:**  All transactions are authorized to enable the Licensee, in connection
with the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios
("Cubaexport") in legal proceedings in the United States related to Trademark Trade and Appeals Board
cancellation proceeding number 24,108 (including appeals of that proceeding), as described in the
Application, to receive payment for such services and reimbursement for expenses related to such services
from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United
States via third-country bank.

**SECTION 2 – RECORDKEEPING REQUIREMENT:** The Licensee shall keep a record of the
transactions under this license.  Such records shall be made available for examination upon demand for at
least five years from the date of each transaction.

**SECTION 3 - WARNINGS:**  (a) Except as explicitly authorized in Section 1 above, nothing in this license
authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity
prohibited by the Cuban Assets Control Regulations, 31 CFR 515.

**(b)** Nothing in this license authorizes the transfer of funds through methods which involve debits or credits
to blocked accounts subject to the jurisdiction of the United States.

**SECTION 4 - PRECEDENCE:**  The authorization contained in this license is limited to the facts and
circumstances specific to the application.
*************************************************************************************



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                                      **License No. CT-7571**

**LICENSE**

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:    **Ropes & Gray LLP (the "Licensee")**
       1251 Avenue of the Americas
       New York, NY 10020
       Attn: Vincent N. Palladino, Esq.

1. Pursuant to your application dated **February 27, 2006**, the following transactions are hereby licensed:

**\*\*\*\*\*SEE REVERSE\*\*\*\*\***

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **April 30, 2007**, is not transferable, is subject to the provisions of Title 31, Parts 501 and 515 of the Code of Federal Regulations and any regulations and rulings issued pursuant thereto, and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

**OFFICE OF FOREIGN ASSETS CONTROL**

By _Clara David_  4/10/06
for Elizabeth W. Farrow
Assistant Director for Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

000047

**License No. CT-7571**
**Licensee: Ropes & Gray**

**Page 2 of 2**

**SECTION 1 – AUTHORIZATION: (a)** This license authorizes representatives of Ropes & Gray (the "Licensee") to engage in the travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the "Regulations") and such additional transactions as are directly incident to professional research and professional meetings relevant to legal proceedings in the United States related to Trademark Trade and Appeals Board cancellation proceeding number 24,108 (including appeals of that proceeding), including but not limited to conducting interviews and depositions, and creating written and other records, subject to the conditions set forth in Section 2 below.

**(b)** This license authorizes **multiple trips** during the validity period of the license.

**Authority: 31 CFR 515.560(c) and 515.564(b).**

**SECTION 2 – CONDITIONS: (a)** The Licensee must provide each traveler with a letter confirming that the named individual will engage in authorized activities on behalf of the Licensee and cite the number of this license.

**(b)** It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the Regulations prior to the travel, by, for example, providing each traveler with OFAC's brochure "Cuba: What You Need to Know about the Embargo" or other document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of the Regulations.

**SECTION 3 - WARNINGS: Except as explicitly authorized in Section 1 above, nothing in this license authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Regulations. This license only authorizes travel-related transactions consistent with a full-time schedule of activities authorized by this license.**

**SECTION 4 - RECORDKEEPING REQUIREMENTS:** The Licensee is required to keep a list of individuals whose travel transactions were authorized under this license and their actual dates of travel. Each individual traveler must also retain records related to his/her travel transactions. Such records shall be made available for examination upon demand for at least 5 years from the date of each transaction. A report from the Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew or extend this license.

**SECTION 5 – INFORMATION: (a)** For information concerning the categories of travel for which licenses may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs & Country Summaries – Cuba, Guidelines and Information).

**(b)** The Department of State publishes consular information sheets (and, when necessary, travel warnings) on every country and territory in the world, including Cuba, which are available on the Internet at http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000. An abridged version of consular information sheets can be heard by calling (202) 647-5225.

**SECTION 6 - PRECEDENCE:** The authorization contained in this license is limited to the facts and circumstances specific to the application.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

 FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

April 7, 2006

**VIA FACSIMILE - CONFIRMATION BY FEDEX**

Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, N.W. - Annex
Washington, DC  20220

**Attn:  Licensing Division**

### License To Pay HAVANA CLUB Registration Renewal Fee

Dear Sir/Madam:

This letter is prompted by Ms. Barbara C. Hammerle's April 6, 2006 letter (copy enclosed).

Ropes & Gray was granted License No. CU-74488 authorizing it to receive payment for services rendered and expenses incurred in connection with representing Cubaexport in a dispute with Bacardi regarding among other issues cancellation of Cubaexport's United States Registration No. 1,031,651 of HAVANA CLUB & Design ("the HAVANA CLUB Registration"). Ropes & Gray interpreted that license to authorize it to incur the expense of renewing the HAVANA CLUB Registration, which is at issue in the litigation, by paying the United States Patent and Trademark Office ("PTO") registration renewal filing fee and to receive payment for that expense.

Ms. Hammerle's letter states that License No. CU-74488 does not authorize Ropes & Gray to incur and receive payment for the expense of renewing the registration. The letter invites Ropes & Gray to seek a license authorizing Ropes & Gray to do so. Ropes & Gray respectfully requests that such a license be granted.

000049

ROPES & GRAY LLP

Office of Foreign Assets Control
April 7, 2006
Page 2

Ropes & Gray respectfully submits that in light of OFAC's willingness to grant
License No. CU-74488, authorizing payment for large legal and other expenses incurred on
Cubaexport's behalf in maintaining the HAVANA CLUB Registration, it would be reasonable to
authorize Ropes & Gray to incur and be paid for the minor expense ($500 or less) of maintaining
the registration through payment of the renewal fee.

In addition, Ropes & Gray submits that the grant of this further limited license is
reasonable in light of the following reasons discussed in our December 13, 2005 letter (copy
enclosed) and summarized in Ms. Hammerle's letter:

> (1) paying the fee is necessary to maintain the *status quo* by maintaining the
> HAVANA CLUB trademark registration, (2) failure to pay the fee will result in
> cancellation of the registration, (3) if the registration is not maintained, the
> District Court will be denied an opportunity to reach a reasoned decision in the
> pending litigation, and (4) failure to maintain the registration will effectively
> overrule the decision of the United States Trademark Trial and Appeal Board
> while it is on appeal.

As we stated in our December 13, 2005 letter, we believe that "outcome would be and would be
perceived to be unfair." Although we appreciate that OFAC has determined these reasons do not
support payment of the renewal fee under License No. CU-74488, we believe they offer further
support for the grant of the additional limited license Ropes & Gray hereby requests.

Finally, Ropes & Gray wishes to point out that renewing the HAVANA CLUB
Registration before it would otherwise expire on July 27, 2006 does not mean the Court hearing the
litigation will affirm the PTO's Trademark Trial and Appeal Board decision that the HAVANA
CLUB Registration should not be cancelled. That issue will remain to be resolved by the Court,
along with Bacardi's additional claims for declaratory and injunctive relief.

If the additional license is granted *nunc pro tunc* to December 13, 2005 when Ropes
& Gray submitted Cubaexport's renewal application, the renewal fee will be $400. If the additional
license is not granted *nunc pro tunc*, the fee will be $500.

000050

ROPES & GRAY LLP

Office of Foreign Assets Control
April 7, 2006
Page 3

       Because the renewal period for the HAVANA CLUB Registration will expire on
July 27, 2006, Ropes & Gray respectfully requests that any new license be issued well before that
date so that the PTO may be so advised. We appreciate OFAC's attention to this matter and
respectfully request that the additional license be granted.

                          Sincerely yours,

                          Vincent N. Palladino

VNP:emf
Enclosure

cc:    Commissioner for Trademarks
       Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
       Liz Farrow, OFAC
       (each via facsimile and FedEx)

000051

2-06-2006   09:41        US TREASURY                                104815     P.22



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

FAC No. CU-268932

APR   6 2006

Vincent N. Palladino
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020-1104

Re:     License No. CU-74488

Dear Mr. Palladino:

The purpose of this letter is to clarify that License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005, does not authorize Ropes & Gray LLP to pay a filing fee to the U.S. Patent and Trademark Office ("PTO") for renewal of Registration No.1,031,651 (the "HAVANA CLUB trademark") on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"). In a December 13, 2006, letter to PTO, Ropes & Gray LLP applied for renewal of the HAVANA CLUB trademark and requested that PTO deduct the filing fee from a Ropes & Gray LLP deposit account, arguing that License No. CU-74488 authorizes payment of the filing fee.

License No. CU-74488 pertains to a cancellation proceeding. It states that it is issued "Pursuant to an application dated January 26, 2005." The authorization section of License No. CU-74488, quoted in full (with emphasis added), states:

> All transactions are authorized to enable the Licensee [Ropes & Gray LLP], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, *as described in the application*, to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United States via a third-country bank.

The only legal proceeding described in your firm's January 26, 2005 application was "a complaint [] currently pending in the U.S. District Court for the District of Columbia against our clients Cubaexport and Havana Club Holdings S.A." This complaint is an appeal from the dismissal of a cancellation proceeding before the United States Trademark Trial and Appeal Board concerning the HAVANA CLUB trademark.

In your letter to PTO dated December 13, 2005, you present a number of arguments why the renewal fee for the HAVANA CLUB trademark should be allowed to

000052

PR-06-2006  09:42        US TREASURY                                    104815    P.03

be paid, including the following: (1) paying the fee is necessary to maintain the *status quo* by maintaining the HAVANA CLUB trademark registration, (2) failure to pay the fee will result in cancellation of the registration, (3) if the registration is not maintained, the District Court will be denied an opportunity to reach a reasoned decision in the pending litigation, and (4) failure to maintain the registration will effectively overrule the decision of the United States Trademark Trial and Appeal Board while it is on appeal. These arguments do not extend the limited authorization contained in License No. CU-74488, which covers only those transactions in connection with the pending District Court litigation, to those transactions that are external to the pending District Court litigation, such as the payment of a renewal fee to initiate a separate action before the PTO.

In your letter of December 13, 2005, you also argue that the failure of the District Court to reach a reasoned decision, which allegedly will result from the failure to pay the trademark registration renewal fee, will deprive Cubaexport of the representation that OFAC has authorized Ropes & Gray LLP to provide. We disagree with that argument. In issuing License No. CU-74488, OFAC authorized Ropes & Gray LLP to engage in transactions necessary to provide Cubaexport representation only in the litigation pending before the District Court. OFAC is not in a position to gauge the extent to which any other administrative or judicial proceedings may have some effect on that litigation, and, in any event, License No. CU-74488 does not purport to authorize any transactions related to such other proceedings.

We note that this discussion does not in any way prejudice the ability of Ropes & Gray LLP to request separate authorization from OFAC to engage in transactions related to the renewal of the HAVANA CLUB trademark registration at the PTO. If you wish to request such a specific license or further guidance from OFAC, you may do so by writing directly to OFAC's Licensing Division. Should you have any further questions, please contact the Deputy Chief Counsel (Foreign Assets Control) at 202-622-2410.

Sincerely,

Barbara C. Hammerle
Acting Director
Office of Foreign Assets Control


cc: Commissioner for Trademarks, PTO

000053

# ROPES & GRAY

## FISH & NEAVE IP GROUP

ROPES & GRAY LLP

1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

February 27, 2006

**VIA FACSIMILE - CONFIRMATION BY FEDEX**

Ms. Barbara Hemmerslee
Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC  20220

Dear Ms. Hemmerslee:

   The law firm of Ropes & Gray is currently the licensee under License No. CU-74488.  License No. CU-74488 is set to expire on March 31, 2006.  A copy of this license is enclosed.

   That license was granted in response to an application to renew License No. CT-1943 authorizing (a) "…Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the 'Regulations') and such additional transactions as are directly incident to professional research relevant to legal proceedings in the United States, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below; (b) "…Licensee to provide legal services to, and receive payment for such services from Empresa Cubana Exportadora De Alimentos y Productos Varios ('Cubaexport'), a Cuban national; (c) multiple trips during the validity period of the license."

   On January 29, 2004, the Trademark Trial and Appeal Board of the United States Patent and Trademark Office dismissed cancellation proceeding number 24,108.  On March 29, 2004, Bacardi & Company Ltd. (the parent company of Galleon S.A.) and Bacardi U.S.A., Inc. filed a complaint against Havana Club Holding S.A. and Cubaexport, which was joined by the Trademark Trial and Appeal Board to the cancellation proceeding.  The complaint appeals the decision of the Trademark Trial and Appeal Board and asserts additional claims against the defendants.  Ropes & Gray has continued to represent Cubaexport in these proceedings.

000054

ROPES & GRAY LLP

Ms. Barbara Hemmerslee
February 27, 2006
Page 2


        Ropes & Gray hereby requests a renewal of License No. CU-74488, authorizing
Ropes & Gray to continue to represent Cubaexport and to receive payment and engage in
authorized travel in connection with that representation.

        Thank you for your attention to this matter.  If we can be of further assistance, please
do not hesitate to call me at (212) 596-9070.



                        Sincerely,


                        Vincent N. Palladino

VNP:emf
Enclosures

cc:    Mr. Matthew Tuchband, Office of Legal Counsel, OFAC
       Ms. Clara David, Licensing Division, OFAC



FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS     NEW YORK, NY 10020-1104     212-596-9000     F 212-596-9090
BOSTON     NEW YORK     PALO ALTO     SAN FRANCISCO     WASHINGTON, DC     www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Mr. David W. Mills
Chief of Licensing
U.S. Department of Treasury
Office of Foreign Assets Control
1500 Pennsylvania Office, N.W.
Washington, DC  20220

Dear Mr. Mills:

      We are enclosing a copy of our December 13, 2005 letter addressed to the Commissioner for Trademarks in connection with an application filed by Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") to renew United States Trademark Registration No. 1,031,651 of the HAVANA CLUB & Design trademark and the attachments to that letter.

      On behalf of our client Cubaexport, Ropes & Gray has prepared the renewal application and undertaken to pay the filing fee that is required in order to maintain the registration and intends to recover those expenses from Cubaexport. Ropes & Gray has taken these steps pursuant to License No. CU 74488, which Ropes & Gray understands authorizes the firm to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark, including *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding,* 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation"), and to be paid for the services it renders and expenses it incurs in the course of that representation. In the Litigation, Bacardi & Company Limited ("Bacardi") has appealed a decision of the Trademarks Trial and Appeal Board (the "Board") and requested cancellation of Registration No. 1,031,651.

      While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board's decision should be affirmed or reversed and the registration maintained or cancelled. Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

000056

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 2

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed Bacardi's cancellation petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in its cancellation proceeding. In Bacardi's appeal of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint, and the parties are currently engaged in Court ordered discovery concerning those motions. Effectively overruling the Board's decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were deemed not authorized under the License (or otherwise) to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport has relied on License No. CU 74488 to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 3

       We appreciate this office's continued attention to this matter.  If we can be of further
assistance, please do not hesitate to call me.

          Sincerely,

          Vincent N. Palladino

VNP:emf
Enclosures

cc:    Matthew Tuchband, Office of Legal Counsel, OFAC (encl.)
       Clara David, Licensing Division, OFAC (encl.)
       Commissioner for Trademarks

# ROPES & GRAY

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

*[stamp: OIPE IAP68 DEC 14 2005 PATENT & TRADEMARK OFFICE]*

December 13, 2005

**VIA FEDEX**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

<u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

Enclosed is an original application for renewal of Registration No. 1,031,651, executed by the registrant Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"). Please use Ropes & Gray deposit account number 06-1075 (Order Number 001214-0001) for the filing fee in this matter. A duplicate copy of the application is included at Attachment 1 to this letter.

Payment of the filing fee is being made pursuant to License No. CU 74488 issued by the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury on March 4, 2005 (the "License", Attachment 2) in order to maintain the *status quo* by maintaining Registration No. 1,031,651 until a decision regarding cancellation of the registration can be rendered in ongoing litigation, *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation").

For the benefit of the Patent and Trademark Office, Cubaexport is setting forth in this letter the circumstances under which it applied for and received from OFAC licenses concerning representation of Cubaexport in the Litigation, as well as the reasons Cubaexport believes the *status quo* should be maintained pending resolution of this dispute.

## The Dispute

Cubaexport was joined as a respondent in a cancellation proceeding, *Galleon S.A., Bacardi-Martini U.S.A., Inc., and Bacardi Company Limited* v. *Havana Club*, No. 24108 (1995) (the "Cancellation Proceeding"), on January 21, 2003. On January 29, 2004, the United States Trademark Trial and Appeal Board (the "Board") denied petitioners' ("Bacardi's") motion for

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 2

summary judgment and dismissed the Cancellation Proceeding (the "Board Decision", Attachment 3).

In reaching its decision, the Board stated:

we conclude that HCH [Havana Club Holding] was in compliance with PTO renewal rules and practice when it filed its renewal application in its name [in 1996], that it filed a proper renewal application, that the PTO acted properly in accepting the renewal application and renewing the registration [1,031,651] in HCH's name, and that the resulting renewal registration is valid and must be so recognized by the Board. (Board Decision 39)

and went on to state:

Also, we have found that none of the allegations of the supplemental and amended petition to cancel state a claim for cancellation. Therefore, the supplemental and amended petition to cancel is DISMISSED. (Board Decision 56)

Bacardi appealed the Board Decision by instituting the Litigation on March 29, 2004. In its Complaint, Bacardi seeks among other relief reversal of the Board Decision and cancellation of Registration No. 1,031,651. The Court in the Litigation has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint and has ordered the parties to engage in discovery relating to those motions before the motions are filed. That discovery is currently being conducted by the parties.

### OFAC's Grant of Specific Authority
### To Represent Cubaexport In The Dispute

Since Cubaexport was joined as a respondent in the Cancellation Proceeding, the law firm of Ropes & Gray or its predecessor firm Fish & Neave has been retained to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark. Ropes & Gray and its predecessor firm Fish & Neave have sought and received a license from OFAC for this purpose.

In particular, on March 10, 2003 OFAC issued License No. CU-71416 authorizing:

All transactions ... to enable Fish & Neave (the "Licensee"), in connection with all matters related to *Galleon S.A.* v. *Havana Club Holding, S.A.,* Trademark Trial and Appeal Board Cancellation No. 24,108, to provide legal services to, receive payment for such services from and to receive reimbursement for expenses related to such services from Empresa

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 3

Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport"), a Cuban national. (Attachment 4).

That license was renewed on February 20, 2004 in License No. CT-1943, which authorized Fish & Neave to "provide legal services to, and to receive payment for such services from ... Cubaexport" until March 31, 2005 (Attachment 5). Following the merger of Fish & Neave and Ropes & Gray, on March 4, 2005 OFAC issued the current License authorizing until March 31, 2006:

All transactions ... to enable the Licensee [Ropes & Gray], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holding S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark ... to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals. (Attachment 2)

It is pursuant to these licenses that Ropes & Gray currently represents Cubaexport in the Litigation in which Bacardi has appealed the Board Decision and requested cancellation of Registration No. 1,031,651 and, as part of that representation of Cubaexport, has applied herein for renewal of Registration No. 1,031,651. Ropes & Gray has advised OFAC of this renewal application in the enclosed letter dated December 13, 2005 (Attachment 6).

### Reasons To Maintain The *Status Quo* Pending Resolution Of The Dispute

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board Decision should be affirmed or reversed and the registration maintained or cancelled. Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed the Cancellation Petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in the Cancellation Proceeding. In Bacardi's appeal

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 4

of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint. Effectively overruling the Board Decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the Board Decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were not to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the present Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport submits the enclosed renewal application to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

Kindly acknowledge receipt of this letter and attachments by stamping and returning the enclosed self-addressed postcard.

Sincerely,

Vincent N. Palladino

VNP:emf
Enclosures

cc:    David W. Mills, OFAC
       Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC
       (Each With Enclosures)

000062

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Registration No.        :     1,031,651

Mark                    :     HAVANA CLUB & Design

Registrant              :     Empresa Cubana Exportadora de Alimentos y Productos Varios

Issued                  :     January 27, 1976

International Class      :     33


Box Post Reg Fee
Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

COMBINED DECLARATION AND APPLICATION
FOR RENEWAL OF REGISTRATION UNDER §§ 8 & 9

The above identified applicant for renewal requests that the above-

identified registration, granted to it on January 27, 1976, be renewed for all of the goods

listed in the registration in accordance with the provisions of Section 9 of the Trademark

Act of July 5, 1946, as amended, 15 U.S.C. § 1059, and 15 U.S.C. § 1058(b)(2),

37 C.F.R. §§ 2.161(f)(2), 2.166 and TMEP §§ 1604.11, 1604.19.

Francisco Santiago Pichardo declares as follows.  He is Director of the

registrant, a Cuban company having its principal offices at Calle 23 No. 55, 8 vo. Piso,

Vedado, Ciudad de La Habana Cuba CP: 10400, and is authorized to execute this

declaration and application on behalf of the registrant.  The registrant owns Registration

No. 1,031,651, issued on January 27, 1976.  The mark is not being used in commerce on

the goods recited in the registration due solely to special circumstances, namely, the

embargo on trade with Cuba instituted in 1963 and implemented by the Cuban Assets

Control Regulations, 31 C.F.R. § 515, which prohibit the importation, distribution or sale

000063

in the United States of goods produced in Cuba. Nonuse is not due to any intention to abandon the mark, and the registrant intends that the mark be used in commerce after the embargo is lifted.

He further declares that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both, under Section 1001 of Title 18 of the United States Code; and that such willful false statements may jeopardize the validity of said registration.

<u>CONTACT INFORMATION</u>

Applicant has appointed Herbert F. Schwartz, Vincent N. Palladino and Pablo D. Hendler, members of the bar of the State of New York, at Ropes & Gray LLP, 1251 Avenue of the Americas, New York, New York 10020 (Telephone (212) 596-9000), its attorneys to file this combined declaration and application on its behalf, to prosecute this application for renewal, to transact all business in the Patent and Trademark Office in connection therewith, and to receive all documents in connection with the renewal of this registration.

Dated: _____9 , 12_____, 2005        _____

I hereby certify that this cor-
respondence is being deposited
with the United States Postal
Service as first class mail in
an envelope addressed to:
Commissioner for Trademarks,
P.O. Box 1451
Alexandria, VA 22313-1451 on
the date which appears below.

_____
Name

13 December 2005
Date of Signature and Deposit

2

000064

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Registration No.      :    1,031,651

Mark                       :    HAVANA CLUB & Design

Registrant               :    Empresa Cubana Exportadora de Alimentos y Productos Varios

Issued                    :    January 27, 1976

International Class   :    33

Attachments to Ropes & Gray Letter To Commissioner
for Trademarks Concerning Renewal of Registration

*1*

000066

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Registration No.        :    1,031,651

Mark                    :    HAVANA CLUB & Design

Registrant              :    Empresa Cubana Exportadora de Alimentos y Productos Varios

Issued                  :    January 27, 1976

International Class      :    33


Box Post Reg Fee
Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

COMBINED DECLARATION AND APPLICATION
FOR RENEWAL OF REGISTRATION UNDER §§ 8 & 9

The above identified applicant for renewal requests that the above-

identified registration, granted to it on January 27, 1976, be renewed for all of the goods

listed in the registration in accordance with the provisions of Section 9 of the Trademark

Act of July 5, 1946, as amended, 15 U.S.C. § 1059, and 15 U.S.C. § 1058(b)(2),

37 C.F.R. §§ 2.161(f)(2), 2.166 and TMEP §§ 1604.11, 1604.19.

Francisco Santiago Pichardo declares as follows. He is Director of the

registrant, a Cuban company having its principal offices at Calle 23 No. 55, 8 vo. Piso,

Vedado, Ciudad de La Habana Cuba CP: 10400, and is authorized to execute this

declaration and application on behalf of the registrant. The registrant owns Registration

No. 1,031,651, issued on January 27, 1976. The mark is not being used in commerce on

the goods recited in the registration due solely to special circumstances, namely, the

embargo on trade with Cuba instituted in 1963 and implemented by the Cuban Assets

Control Regulations, 31 C.F.R. § 515, which prohibit the importation, distribution or sale

000067

in the United States of goods produced in Cuba. Nonuse is not due to any intention to abandon the mark, and the registrant intends that the mark be used in commerce after the embargo is lifted.

He further declares that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both, under Section 1001 of Title 18 of the United States Code; and that such willful false statements may jeopardize the validity of said registration.

## CONTACT INFORMATION

Applicant has appointed Herbert F. Schwartz, Vincent N. Palladino and Pablo D. Hendler, members of the bar of the State of New York, at Ropes & Gray LLP, 1251 Avenue of the Americas, New York, New York 10020 (Telephone (212) 596-9000), its attorneys to file this combined declaration and application on its behalf, to prosecute this application for renewal, to transact all business in the Patent and Trademark Office in connection therewith, and to receive all documents in connection with the renewal of this registration.

Dated: _9 , 12_____, 2005          _____

000068

2

2



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

Cuban Assets Control Regulations                    License No. CU-74488

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:    **Ropes & Gray LLP (the "Licensee")**
       700 12th Street, NW, Suite 900
       Washington, DC 20005-3948
       Attn: Renee L. Stasio, Esq.

1.  Pursuant to an application dated **January 26, 2005**, the following transactions are hereby licensed:

**\*\*\*\*\*SEE REVERSE\*\*\*\*\***

2.  This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3.  The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4.  This license expires on March 31, 2006, and is not transferable, is subject to the provisions of Title 31, Part 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5.  This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

## OFFICE OF FOREIGN ASSETS CONTROL

By _Clara David_ 3/4/05
for David W. Mills
Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]    000070

3

```
┌─────────────────────────┐
│   DIPOSITION            │
│  IS NOT CITABLE         │
│  AS PRECEDENT           │
│   OF THE TTAB           │
└─────────────────────────┘
```

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513

Zervas

Mailed:   January 29, 2004

Cancellation No. 92024108

Galleon S.A., Bacardi-
Martini U.S.A., Inc., and
Bacardi & Company Limited

v.

Havana Club Holding,
S.A., dba HCH, S.A., and
Empresa Cubana
Exportadora De Alimentos
y Productos Varios, S.A.,
dba Cubaexport, joined as
a defendant

Before Sams, Chief Administrative Trademark Judge, and
Cissel and Walters, Administrative Trademark Judges.

By the Board.

        On January 21, 2003, the Board (i) resumed proceedings

and allowed the parties time to brief petitioners' motion

(filed March 15, 2002) for summary judgment; (ii) joined

Empresa Cubana Exportadora De Alimentos y Productos Varios,

S.A. ("Cubaexport") as a defendant along with Havana Club

Holding, S.A. ("HCH"); and (iii) denied HCH's "Motion

Pursuant to the Government in the Sunshine Act for (A) an

Order Requiring Petitioners to Show Cause Why Their Claims

4

000073



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

Cuban Assets Control Regulations                    License No. CU-71416

LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a), 22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:   Fish & Neave (the "Licensee")
      1251 Avenue of the Americas
      New York, New York 10020
      Attn: Herbert F. Schwartz

    1. Pursuant to your letter dated January 29, 2003, the following is hereby licensed:

*****SEE REVERSE*****

    2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority of Section 620(a), Public Law 87-195, or under the authority of section 5(b) of the Act of October 6, 1917, as amended, and the terms of this license.

    3. The licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

    4. This license is not transferable, is subject to the provisions of Title 31, Parts 501 and 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

    5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

OFFICE OF FOREIGN ASSETS CONTROL

By _____
      R. Richard Newcomb, Director

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

000074

~ense No. CU-71416

~ensee: Fish & Neave

SECTION 1 - AUTHORIZATIONS: All transactions are authorized to enable Fish & Neave (the ``Licensee''), in connection with all matters related to Galleon S.A. v. Havana Club Holding, S.A., Trademark Trial and Appeal Board Cancellation No. 24,108, to provide legal services to, receive payment for such services from and to receive reimbursement for expenses related to such services from Empresa Cubana Exportadora De Alimentos y Productos Varios (``Cubaexport''), a Cuban national.

Authority: 31 CFR 515.801.

SECTION 2 - CONDITIONS: (a) It is a condition of this License that Licensee shall keep a full and accurate record of each transaction undertaken pursuant to this License, and that each such record shall be available for examination for at least five years after the date of such transaction.

SECTION 3 - REPORTING REQUIREMENT: Pursuant to 31 CFR 501.605 Licensee is directed to provide all required reports, notices, copies and facsimiles.

SECTION 4 - WARNINGS: (a) Except as explicitly authorized in Section 1 ~ove, nothing in this license authorizes persons subject to the ~risdiction of the United States to engage in any transaction or activity prohibited by the Regulations.

SECTION 5 - WARNINGS: (b) Nothing in this License authorizes any debit or credit from any blocked account.

SECTION 6 - PRECEDENCE:  This License is issued on a nonprecedential basis.

**************************************************************

000075

5

000076

FEB-24-2004  12:44          OFAC                                                          P.01/02



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                              **License No. CT-1943**

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:     **Fish & Neave** (the "Licensee")
        1251 Avenue of the Americas
        New York, NY 10020
        ATTN: Martin A. Leroy

1. Pursuant to your application dated **February 11, 2004**, the following is hereby licensed:

### *****SEE REVERSE*****

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **March 31, 2005**, is not transferable, is subject to the provisions of 31 C.F.R. Parts 501 and 515, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

## OFFICE OF FOREIGN ASSETS CONTROL

By *Clara David 2/20/04*
for David W. Mills
    Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

000077

License No. CT-1943                                                    Page 2 of 2
Licensee: Fish & Neave

'CTION 1 – AUTHORIZATION: (a) This license authorizes the Licensee to engage in travel-related
.nsactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the
"Regulations") and such additional transactions as are directly incident to professional research relevant to legal
proceedings in the United States, including but not limited to conducting interviews and depositions, and
creating written and other records, as described in your application, subject to the conditions set forth in Section
2 below.

**(b)** This license authorizes the Licensee to provide legal services to, and to receive payment for such services
from Empresa Cuban Exportatiora de Alimentos y Productos Varios ("Cubaexports"), a Cuban national.

**(c)** This license authorizes multiple trips during the validity period of the license.

**Authority: 31 CFR 515.560(c), 515.564(b) and 515.801**

SECTION 2 – CONDITIONS: (a) The Licensee must provide each traveler with a letter confirming that the
named individual will engage in authorized activities on behalf of the Licensee and cite the number of this
license.

**(b)** It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the
Regulations, by, for example, providing each traveler with OFAC's "Travel Restrictions" brochure or other
document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of
the Regulations prior to travel.

**SECTION 3 - WARNINGS: Except as explicitly authorized in Section 1 above, nothing in this license
authorizes any person subject to the jurisdiction of the United States to engage in any transaction or
activity prohibited by the Regulations. This license only authorizes travel-related transactions consistent
with a full-time schedule of activities authorized by this license.**

SECTION 4 - RECORDKEEPING REQUIREMENTS: The Licensee is required to keep a list of
individuals whose travel transactions were authorized under this license and their actual dates of travel. Each
individual traveler must also retain records related to his/her travel transactions. Such records shall be made
available for examination upon demand for at least 5 years from the date of each transaction. A report from the
Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew
or extend this license.

SECTION 5 – INFORMATION: (a) For information concerning the categories of travel for which licenses
may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-
Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs &
Country Summaries – Cuba, Guidelines and Information).

**(b)** The Department of State publishes consular information sheets (and, when necessary, travel warnings) on
every country and territory in the world, including Cuba, which are available on the Internet at
http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000. An
abridged version of consular information sheets can be heard by calling (202) 647-5225.

CTION 6 - PRECEDENCE: The authorization contained in this license is limited to the facts and
.ircumstances specific to the application.
**********************************************************************************

000078

6

000079



FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS     NEW YORK, NY 10020-1104     212-596-9000     F 212-596-9090
BOSTON     NEW YORK     PALO ALTO     SAN FRANCISCO     WASHINGTON, DC     www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Mr. David W. Mills
Chief of Licensing
U.S. Department of Treasury
Office of Foreign Assets Control
1500 Pennsylvania Office, N.W.
Washington, DC  20220

Dear Mr. Mills:

We are enclosing a copy of our December 13, 2005 letter addressed to the Commissioner for Trademarks in connection with an application filed by Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") to renew United States Trademark Registration No. 1,031,651 of the HAVANA CLUB & Design trademark and the attachments to that letter.

On behalf of our client Cubaexport, Ropes & Gray has prepared the renewal application and undertaken to pay the filing fee that is required in order to maintain the registration and intends to recover those expenses from Cubaexport. Ropes & Gray has taken these steps pursuant to License No. CU 74488, which Ropes & Gray understands authorizes the firm to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark, including *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation"), and to be paid for the services it renders and expenses it incurs in the course of that representation. In the Litigation, Bacardi & Company Limited ("Bacardi") has appealed a decision of the Trademarks Trial and Appeal Board (the "Board") and requested cancellation of Registration No. 1,031,651.

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board's decision should be affirmed or reversed and the registration maintained or cancelled. Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

000030

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 2

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed Bacardi's cancellation petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in its cancellation proceeding. In Bacardi's appeal of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint, and the parties are currently engaged in Court ordered discovery concerning those motions. Effectively overruling the Board's decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were deemed not authorized under the License (or otherwise) to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport has relied on License No. CU 74488 to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

000081

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 3

       We appreciate this office's continued attention to this matter.  If we can be of further assistance, please do not hesitate to call me.

       Sincerely,

       Vincent N. Palladino

VNP:emf
Enclosures

cc:   Matthew Tuchband, Office of Legal Counsel, OFAC (encl.)
      Clara David, Licensing Division, OFAC (encl.)
      Commissioner for Trademarks

000082

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Cuban Assets Control Regulations                    License No. CU-74488

# LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:     **Ropes & Gray LLP (the "Licensee")**
        700 12th Street, NW, Suite 900
        Washington, DC 20005-3948
        Attn: Renee L. Stasio, Esq.

1.   Pursuant to an application dated **January 26, 2005**, the following transactions are hereby licensed:

                        *****SEE REVERSE*****

2.  This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3.  The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4.  This license expires on **March 31, 2006**, and is not transferable, is subject to the provisions of Title 31, Part 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5.  This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

                    **OFFICE OF FOREIGN ASSETS CONTROL**

                    By _Clara David_ 3/4/05
                    for David W. Mills
                       Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]          000083

License No. CU-74488                                                    **Page 2 of 2**
Licensee: Ropes & Gray LLP

**SECTION 1 - AUTHORIZATION:** (a) All transactions are authorized to enable the Licensee, in connection the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, as described in the application, to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United States via a third-country bank.

**Authority: 31 C.F.R. § 515.801.**

**SECTION 2 –RECORDKEEPING REQUIREMENTS:** The Licensee is required to keep a record of all transactions engaged in pursuant to the authorization (Section 1) of this license. Such records shall be made available for examination, upon demand, by the Office of Foreign Assets Control for at least five years from the date of each transaction.

**SECTION 3 - WARNINGS:** (a) Except as authorized above, nothing in this license authorizes persons subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Cuban Assets Control Regulations, 31 C.F.R. Part 515, as amended.

**(b)** Nothing in this license authorizes the transfer of funds through methods which involves debits or credits to blocked accounts subject to the jurisdiction of the United States.

**SECTION 4 - PRECEDENCE:** The authorization contained in this license is limited to the facts and circumstances specific to the application.
*******************************************************************************

000084



# DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                    **License No. CT-4558**

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:  **Ropes & Gray LLP (the "Licensee")**
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
Attn: Renee L. Stasio, Esq.

1. Pursuant to an application dated **January 26, 2005**, the following transactions are hereby licensed:

*****SEE REVERSE*****

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **March 31, 2006**, and is not transferable, is subject to the provisions of Title 31, Part 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

### OFFICE OF FOREIGN ASSETS CONTROL

By *Clara David 3/4/05*
for David W. Mills
Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No. CT-4558                                                                 **Page 2 of 2**
Licensee:  Ropes & Gray LLP

**SECTION 1 – AUTHORIZATION:** (a) This license authorizes the Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the "Regulations") and such additional transactions as are directly incident to professional research in connection the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below.

**Authority:  31 CFR 515.560(c) and 515.564(b).**

**SECTION 2 – CONDITIONS:** (a) The Licensee must provide each traveler with a letter confirming that the named individual will engage in authorized activities on behalf of the Licensee and cite the number of this license.

(b) It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the Regulations, by, for example, providing each traveler with OFAC's "Travel Restrictions" brochure or other document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of the Regulations prior to travel.

**SECTION 3 - WARNINGS: Except as explicitly authorized in Section 1 above, nothing in this license authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Regulations. This license only authorizes travel-related transactions consistent with a full-time schedule of activities authorized by this license.**

**SECTION 4 - RECORDKEEPING REQUIREMENTS:** The Licensee is required to keep a list of individuals whose travel transactions were authorized under this license and their actual dates of travel. Each individual traveler must also retain records related to his/her travel transactions. Such records shall be made available for examination upon demand for at least 5 years from the date of each transaction. A report from the Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew or extend this license.

**SECTION 5 – INFORMATION:** (a) For information concerning the categories of travel for which licenses may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs & Country Summaries – Cuba, Guidelines and Information).

(b) The Department of State publishes consular information sheets (and, when necessary, travel warnings) on every country and territory in the world, including Cuba, which are available on the Internet at http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000. An abridged version of consular information sheets can be heard by calling (202) 647-5225.

**SECTION 6 - PRECEDENCE:** The authorization contained in this license is limited to the facts and circumstances specific to the application.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



**ROPES & GRAY LLP**

ONE METRO CENTER  700 12TH STREET, NW   SUITE 900   WASHINGTON, DC 20005-3948   202-508-4600   F 202-508-4650
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

January 26, 2005

Renée L. Stasio
202-508-4673
renee.stasio@ropesgray.com

**VIA FACSIMILE (CONF. BY FEDEX)**

Jay Ahn
Licensing Department
Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, DC  20220

Mr. Ahn:

Pursuant to your request made during our January 25 telephone conversation, I am providing you with additional information regarding the renewal of License No. CT-1943.  I had previously requested renewal of this license in my January 5, 2005 letter to David Mills (the "Stasio letter").

Referring you to the second paragraph of the Stasio letter, I explained that a complaint is currently pending in the U.S. District Court for the District of Columbia against our clients Cubaexport and Havana Club Holdings S.A. (the "District Court case").  On behalf of our clients, Ropes & Gray has filed a motion to dismiss that complaint, and we are currently awaiting a decision from the Court on that motion.

In the past year, we have not had the opportunity to travel to Cuba despite the authorization given to us by OFAC in License No. CT-1943.  We have not traveled to Cuba because we have not started to conduct discovery in the District Court case.  Once the Court rules on our clients' motion to dismiss, we will know whether we need to proceed with discovery, which undoubtedly will require travel to Cuba to, among other things, conduct depositions and collect documents.

For your convenience, I have attached the Stasio letter which included License No. CT-1943.  In addition, I have attached OFAC's January 11 letter in response to the Stasio letter.

000087

ROPES & GRAY LLP

Jay Ahn                           - 2 -                    January 26, 2005


        I hope this letter provides you with the information you need in order to renew
Ropes & Gray's license.  Thank you for your attention to this matter.  If I can be of further
assistance, please do not hesitate to call me at (202) 508-4673.



Regards,

Renée L. Stasio

RLS:cs
Enclosure

cc:     Matthew Tuchband, Office of Legal Counsel, OFAC
        Clara David, Licensing Division, OFAC


000088



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Case No. CT-4410

JAN 1 1 2005

Renee L. Stasio
Ropes & Gray LLP
700 12th H Street, NW, Suite 900
Washington, DC 20005-3948

RE:  Letter dated January 5, 2005

Dear Mr. Stasio:

This is in response to your letter on behalf of the Ropes & Gray LLP, requesting authorization to engage in travel-related transactions involving Cuba.

The Cuban Assets Control Regulations, 31 C.F.R. Part 515 (the "Regulations"), administered by the U.S. Department of the Treasury's Office of Foreign Assets Control, prohibit all persons subject to the jurisdiction of the United States from dealing in property in which Cuba or a Cuban national has an interest.  This prohibition includes all Cuba travel-related transactions unless such transactions are authorized in accordance with current licensing policy set forth in § 515.560(a) and the related sections of the Regulations enumerated in § 515.560(a).

We have reviewed your request and determined that you have not addressed a portion of the relevant criteria listed in our *Comprehensive Guidelines for License Applications to Engage in Travel-Related Transactions Involving Cuba* (the "Application Guidelines"), which are available on our Internet website at www.treas.gov/ofac.  Accordingly, your application is hereby denied.

Should you wish to reapply for a license, please review and address the Application Guidelines for the relevant category of travel in order that we may more favorably consider your request.

Sincerely,

David W. Mills
Chief of Licensing
Office of Foreign Assets Control



000089

## XI.   TRAVEL RELATED TO LICENSED EXPORTATIONS

**1.   Exportations from the United States and exportations of 100% U.S.-origin items from oversees entities – 31 CFR § 515.533(e)**

Application Criteria for a specific license under § 515.533(e):

1.  <u>Identify yourself</u>.  Furnish your name, address, and daytime phone number.

2.  <u>Identify your organization</u>.  If you are applying on behalf of an organization, tell us about the organization:  what type of organization is it (e.g., charitable organization, producer, or seller of agricultural commodities), what are its goals/objectives.  If available, provide a copy of its mission statement, brochure, or other literature describing typical activities it undertakes.

3.  <u>Identify the category of travel</u>.  State your request for a specific license under § 515.533(e) of the Regulations to engage in travel-related transactions in Cuba for the purpose of marketing, sales negotiation, accompanied delivery, or servicing of exports that are consistent with the licensing policy of the U.S. Department of Commerce.

4.  <u>Identify the exportations involved</u>.

(a) <u>Humanitarian donations</u>: The following must be provided in the application: 1) a copy of the Department of Commerce export license or other Department of Commerce authorization listing the donated goods; 2) the name and address of the Cuban consignee(s) or donee(s); and 3) a description of the plan of delivery of the items in Cuba that correlates to the consignees identified in the Department of Commerce license.  Travel-related transactions will only be authorized for purposes of delivering the goods to consignees pre-approved and identified in the license issued by the Department of Commerce.  Licenses will not be issued under this section in connection with carrying or transporting small quantities of items such as those that are eligible to be shipped in gift parcels. Furthermore, licenses will generally authorize 5-days of travel in Cuba for deliveries to Havana including arrival and departure, but additional days of travel for deliveries to areas outside of Havana, Cuba, may be authorized where appropriate.

(b) <u>Commercial exportations</u>: 1) Provide a description of the goods that are or may be exported to Cuba and the purpose of travel in regard to such exports: *e.g.*, marketing, sales negotiation, accompanied delivery, or servicing.  2) Provide

000090

Revised September 30, 2004

either a copy of the validated license issued by the Department of Commerce or a statement that the exportation from the United States has been or will be done consistent with the applicable Department of Commerce export regulations. 3) If your organization is not itself a producer or distributor of the described goods, provide a letter from the producer or distributor stating that your organization directly represents that entity in your proposed marketing, sales negotiation, delivery, or servicing activities in Cuba.

5. _Identify the persons traveling_. Provide a statement of the proposed number of persons who would travel under the authority of this license, their affiliation to the applicant, and the justification of their need to engage in Cuba travel-related transactions.

6. _Certification of full-time schedule_. Certify that the proposed transactions will constitute a full-time schedule for all the participants that could not be completed in a shorter period of time.

7. _Extensions & renewals_. When applying for extensions or renewals of licenses, be sure to reference the license number in your application. You must also include the following:

(a) an explanation why an extension or renewal is necessary;

(b) a detailed report setting forth a record of all activities undertaken pursuant to the original license; and

(c) a complete copy of the license.

8. _Sign your letter_. Your signature is your certification that the statements in your application are true and accurate.

**Note:** Consistent with the Trade Sanctions Reform and Export Enhancement Act of 2000 ("TSRA"), the Regulations provide that travel and other transactions that are directly incident to the "marketing, sales negotiation, accompanied delivery, or servicing of exports that appear consistent with the export licensing policy of the Department of Commerce" may be authorized by specific license. This licensing policy does not extend to trade missions to discuss transactions that are not currently authorized, such as direct U.S. financing, with a view toward the eventual end of the embargo. It also does not permit individuals whose qualifications have no apparent nexus to this licensing criteria to travel to Cuba, whether individually or in conjunction with other authorized travelers.

000091

General transportation services relating to licensed exports are authorized by general license in § 515.533(a) of the Regulations. Financing of these exports is restricted by TSRA to payment of cash in advance or financing by third country financial institutions. Such financing may be confirmed or advised by a U.S. financial institution.   Vessels are authorized by general license under § 515.550 of the Regulations to carry goods to Cuba that are authorized for export by the Department of Commerce or items that are exempt from the embargo, e.g., informational materials, provided that: 1) they have not engaged in unauthorized trade, including services in Cuba within 180 days and, 2) the vessels are not otherwise carrying goods or passengers in which Cuba or a Cuban national has an interest.   Travel-related transactions by transportation services companies must be specifically licensed and will be considered pursuant to § 515.533(e) of the Regulations.

For questions related to the licensing requirements for the exportation of commodities and humanitarian goods from the United States to Cuba, please contact the U.S. Department of Commerce Bureau of Industry and Security at (202) 482-4811

**Examples:**

<u>Licensable</u>

> Example 1:  A U.S. charitable organization has obtained authorization from the U.S. Department of Commerce to deliver medicine and clothing to a Cuban non-governmental organization and furnishes a copy of the license and information on the organization's plan for delivery of the goods to the consignees designated in the Commerce Department's license.

> Example 2:  A consultant hired by a U.S. medical supply company proposes to engage in travel-related transactions in Cuba for the purpose of meeting with Cuban officials to discuss the sale of medical supplies to Cuba eligible for exportation under Department of Commerce rules.

> Example 3:  A U.S. association representing grain producers proposes to engage in travel-related transactions in Cuba to discuss with Cuban officials the marketing and sale of grains in Cuba eligible for exportation under Department of Commerce rules.

> Example 4:  Representatives of a medical supplies company wish to attend a Cuba-sponsored trade fair on medical equipment and medicine to market and sell medical supplies to Cuban entities that are eligible consignees under Department of Commerce rules.

> Example 5:  A seaport authority wants to travel to Cuba on its own behalf for a brief visit to discuss the marketing and sale of products that would be exported through that particular seaport to

000092

Cuba. Under current licensing policy, travel to Cuba by a seaport authority may be licensed once every consecutive 12-month period.

Example 6: A state's department of agriculture wishes to send a delegation to Cuba consisting of state employees and local producers to market products and negotiate contracts of agricultural goods produced in the state.

Example 7: A U.S. shipping company that provides cargo shipping services wishes to send its full-time employees to Cuba to discuss the delivery of its transportation services in order to enter into contracts with U.S. exporters who want their goods shipped to Cuba.

## Not licensable



Example 1: City officials seek a license to travel to Cuba to establish a sister city relationship with government officials of a Cuban city or province. Travel to Cuba for this purpose is not within the scope of current licensing policy.

Example 2: A lawyer or consultant wants to obtain a license to market his ability to promote the sale of agricultural commodities in Cuba to prospective clients. Any person seeking to broker sales on behalf of companies that are eligible to sell their commodities under license from the Department of Commerce must have already been retained for that purpose.

Example 3: Employees of a general trade council propose to travel to Cuba to identify and negotiate the sale of agricultural products but they are not directly representing specific companies. Absent a letter from the producer or distributor stating that the general trade council directly represents a produced or distributor of a category of commodities eligible for export to Cuba and that the producer or distributor is interested in export of its products to Cuba, such a request would not be granted.

Example 4: An entity or individual wants to obtain a license to organize and hold a trade fair in Cuba. The activity is inconsistent with current U.S. foreign policy and will not be licensed.

Example 5: A company that provides inspection and testing services for cargo shippers wishes to travel to Cuba to hold technical discussions with Cuban officials for the purpose of

000093

entering into a contractual agreement to provide services directly to a Cuban national. These services go beyond the type of activities permitted under this licensing provision.

**Mailing Address:** Applications for specific licenses should be submitted to:

**Licensing Division**
**Office of Foreign Assets Control**
**U.S. Department of the Treasury**
**1500 Pennsylvania Avenue, N.W.**
**Washington, D.C.  20220**
**Tel. 202/622-2480**
**Internet website at <u>www.treas.gov/ofac</u>** (Sanctions Programs & Country Summaries – Cuba, Guidelines and Information)

000094

Revised September 30, 2004

**Text of Regulatory Provision for § 515.533:**

§ 515.533 Transactions incident to exportations from the United States and reexportations of U.S.-origin items to Cuba; negotiation of executory contracts.

(a) All transactions ordinarily incident to the exportation of items from the United States, or the reexportation of U.S.-origin items from a third country, to any person within Cuba are authorized, provided that:

(1) The exportation or reexportation is licensed or otherwise authorized by the Department of Commerce under the provisions of the Export Administration Act of 1979, as amended (50 U.S.C. app. 2401-2420) (see the Export Administration Regulations, 15 CFR 730-774); and

(2) Only the following payment and financing terms may be used:

(i) Payment of cash in advance;

(ii) For authorized sales of agricultural items, financing by a banking institution located in a third country provided the banking institution is not a designated national, U.S. citizen, U.S. permanent resident alien, or an entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches).  Such financing may be confirmed or advised by a U.S. banking institution; or

(iii) For all other authorized sales, financing by a banking institution located in a third country provided the banking institution is not a designated national or a person subject to the jurisdiction of the United States.  Such financing may be confirmed or advised by a U.S. banking institution.

Note to paragraph (a):  The transactions authorized by this paragraph include, but are not limited to, all transactions that are directly incident to the shipping of specific exports or reexports (e.g., insurance and transportation of the exports to Cuba).  Transactions that are not tied to specific exports or reexports, such as transactions involving future (non-specific) shipments, must be separately licensed by OFAC.  For the waiver of the prohibitions on entry into U.S. ports contained in § 515.207 for vessels transporting shipments of items between the United States and Cuba pursuant to this section, see § 515.550.

(b) Persons subject to the jurisdiction of the United States are authorized to engage in all transactions ordinarily incident to negotiation of and entry into executory contracts for the sale of items that may be exported from the United States to Cuba or 100% U.S.-origin items that may be reexported from a third country to Cuba consistent with the export licensing policy of the Department of Commerce, provided that performance of such executory contracts is expressly made contingent on the prior authorization by the Department of Commerce.

Note to paragraph (b):  This paragraph does not authorize transactions related to travel to, from, or within Cuba.  See paragraph (e) for a statement of specific licensing policy with respect to such transactions.

(c) This section does not authorize:

(1) The financing of any transactions from any blocked account.

(2) Any transaction involving, directly or indirectly, property in which any designated national, other than a person located in the country to which the exportation or reexportation is consigned, has an interest or has had an interest since the effective date set forth in § 515.201 of this part.

000095

Revised September 30, 2004

(d) [Reserved]

(e) Specific licenses may be issued on a case-by-case basis authorizing the travel-related transactions set forth in § 515.560(c) and other transactions that are directly incident to the marketing, sales negotiation, accompanied delivery, or servicing of exports that appear consistent with the export or re-export licensing policy of the Department of Commerce.

000096

Revised September 30, 2004

# ROPES & GRAY

ROPES & GRAY LLP

ONE METRO CENTER   700 12TH STREET, NW   SUITE 900   WASHINGTON, DC 20005-3948   202-508-4600   F 202-508-4650

BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

RENÉE L. STASIO

DIRECT DIAL  202.303.2429

DIRECT FAX  202.303.2918

E-MAIL  RENEE.STASIO@ROPESGRAY.COM

January 5, 2005

**VIA FACSIMILE (CONF. BY FEDEX)**

Mr. David W. Mills
Chief of Licensing
Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Office, N.W.
Washington D.C. 20220

Dear Mr. Mills:

      The law firm of Fish & Neave is currently the licensee under License No. CT-1943 pertaining to authorization for (a) "…Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the 'Regulations') and such additional transactions as are directly incident to professional research relevant to legal proceedings in the United States, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below; (b) "…Licensee to provide legal services to, and receive payment for such services from Empresa Cubana Exportadora De Alimentos y Productos Varios ('Cubaexport'), a Cuban national; (c) multiple trips during the validity period of the license." License No. CT-1943 is set to expire on March 31, 2005.  A copy of this license is enclosed.

      On January 29, 2004, the Trademark Trial and Appeal Board of the United States Patent and Trademark Office dismissed cancellation proceeding number 24,108.  On March 29, 2004, Bacardi & Company Ltd. (the parent company of Galleon S.A.) and Bacardi U.S.A., Inc. filed a complaint against Havana Club Holding S.A. and Cubaexport, which was joined by the Trademark Trial and Appeal Board to the cancellation proceeding.  The complaint appeals the decision of the Trademark Trial and Appeal Board and asserts additional claims against the defendants.  Fish & Neave has continued to represent Cubaexport in these proceedings.

Mr. David W. Mills
January 5, 2005
Page 2


Effective October 1, 2004, Fish & Neave became Fish & Neave LLP. Effective January 1, 2005, Fish & Neave merged with Ropes & Gray LLP. The merged entity will conduct business under the name of Ropes & Gray LLP. Because Ropes & Gray will be the law firm representing Cubaexport in connection with the above-mentioned matters, Ropes & Gray hereby requests a renewal of License No. CT-1943, or in the alternative, a new special license naming Ropes & Gray as the Licensee and giving Ropes & Gray the same rights as authorized in License No. CT-1943.

Thank you for your attention to this matter. If we can be of further assistance, please do not hesitate to call me at (202)303-2429.

Sincerely yours,

Renée L. Stasio


RS:rs
Enclosures

cc:    Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                    **License No. CT-1943**

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:    **Fish & Neave (the "Licensee")**
       1251 Avenue of the Americas
       New York, NY 10020
       ATTN: Martin A. Leroy

1. Pursuant to your application dated **February 11, 2004**, the following is hereby licensed:

### *****SEE REVERSE*****

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **March 31, 2005**, is not transferable, is subject to the provisions of 31 C.F.R. Parts 501 and 515, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

## OFFICE OF FOREIGN ASSETS CONTROL

By *Clara David* 2/25/04
for David W. Mills
Chief of Licensing

[Attention is directed to 19 U.S.C. 1392 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

000099

License No. CT-1943                                                    **Page 2 of 2**
Licensee:  Fish & Neave

**SECTION 1 – AUTHORIZATION:** (a) This license authorizes the Licensee to engage in travel-related
insactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the
Regulations") and such additional transactions as are directly incident to professional research relevant to legal
proceedings in the United States, including but not limited to conducting interviews and depositions, and
creating written and other records, as described in your application, subject to the conditions set forth in Section
2 below.

(b)  This license authorizes the Licensee to provide legal services to, and to receive payment for such services
from Empresa Cuban Exportatiora de Alimentos y Productos Varios ("Cubaexports"), a Cuban national.

(c) This license authorizes multiple trips during the validity period of the license.

**Authority:  31 CFR 515.560(c), 515.564(b) and 515.801**

**SECTION 2 – CONDITIONS:** (a) The Licensee must provide each traveler with a letter confirming that the
named individual will engage in authorized activities on behalf of the Licensee and cite the number of this
license.

(b) It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the
Regulations, by, for example, providing each traveler with OFAC's "Travel Restrictions" brochure or other
document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of
the Regulations prior to travel.

**ECTION 3 - WARNINGS:  Except as explicitly authorized in Section 1 above, nothing in this license
authorizes any person subject to the jurisdiction of the United States to engage in any transaction or
activity prohibited by the Regulations.  This license only authorizes travel-related transactions consistent
with a full-time schedule of activities authorized by this license.**

**SECTION 4 - RECORDKEEPING REQUIREMENTS:**  The Licensee is required to keep a list of
individuals whose travel transactions were authorized under this license and their actual dates of travel.  Each
individual traveler must also retain records related to his/her travel transactions.  Such records shall be made
available for examination upon demand for at least 5 years from the date of each transaction.  A report from the
Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew
or extend this license.

**SECTION 5 – INFORMATION:**  (a) For information concerning the categories of travel for which licenses
may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-
Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs &
Country Summaries – Cuba, Guidelines and Information).

(b) The Department of State publishes consular information sheets (and, when necessary, travel warnings) on
every country and territory in the world, including Cuba, which are available on the Internet at
http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000.  An
abridged version of consular information sheets can be heard by calling (202) 647-5225.

**CTION 6 - PRECEDENCE:**  The authorization contained in this license is limited to the facts and
circumstances specific to the application.
*******************************************************************************************

000100

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMPRESA CUBANA                    )
EXPORTADORA DE ALIMENTOS          )
Y PRODUCTOS VARIOS D/B/A          )
CUBAEXPORT,                       )
                                  )
            Plaintiff,            )
                                  )
      v.                          )
                                  )    Civil Action No. 1:06CV01692
                                  )    (ESH)
UNITED STATES DEPARTMENT          )
OF THE TREASURY, OFFICE           )
OF FOREIGN ASSETS CONTROL,        )
et al.,                           )
                                  )
            Defendants.           )
_____ )

## CERTIFICATION

I, Adam J. Szubin, in my capacity as Director of the Office of Foreign Assets Control

("OFAC"), hereby certify to the best of my knowledge and belief that the documents annexed

hereto constitute a true and complete copy of the administrative record relied upon by OFAC in

reaching its decision in this matter.

dated: December 20 , 2006

_____
ADAM J. SZUBIN
Director
Office of Foreign Assets Control
U.S. Department of the Treasury
1500 Pennsylvania Avenue N.W.
Washington, D.C. 20220