IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMPRESS CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS d/b/a/CUBAEXPORT,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, HENRY M. PAULSON, JR., as Secretary of Treasury, ADAM J. SZUBIN, as Director of the Office of Foreign Assets Control, and THE UNITED STATES,<br><br>      Defendants. | Civil Action No. 1:06CV01692 (ESH)<br><br>Hon. Ellen S. Huvelle |

**CUBAEXPORT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND SUPPORTING STATEMENT OF POINTS AND AUTHORITIES**

Pursuant to Federal Rule of Civil Procedure 56, plaintiff Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a/Cubaexport ("Cubaexport") hereby cross-moves for summary judgment with respect to the April 6, 2006 decision of the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") regarding OFAC License No. CU-74488 in effect as of December 2005 ("the Specific License"). In that decision, OFAC ruled that the Specific License did not authorize the renewal of Cubaexport's HAVANA CLUB trademark registration. As averred in Count IV of the Complaint, this ruling was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law. In particular, OFAC's interpretation of the Specific License is contrary to its express terms and plain meaning and, moreover, is manifestly unreasonable because it effectively vitiates the grant of the license itself.

Because the question whether the Specific License authorizes the renewal of the HAVANA CLUB registration turns on the undisputed facts, including the explicit language of the license, this Court can and should decide that question in Cubaexport's favor at this juncture.[1]

## I.  STATEMENT OF UNDISPUTED FACTS

On January 27, 1976, the United States Patent and Trademark Office ("PTO") granted Cubaexport's application to register the HAVANA CLUB & Design trademark in the United States ("the HAVANA CLUB registration"). SOF 1.[2]  In July 1995, Galleon, S.A., Bacardi-Martini U.S.A., Inc. and Bacardi Company Limited ("Bacardi"), filed a petition with the PTO to cancel the HAVANA CLUB registration. SOF 2.

Pursuant to the Cuban Assets Control Regulations ("CACR"), transactions in the United States involving Cuban-owned property are prohibited unless a transaction is authorized by United States Department of Treasury's Office of Foreign Asset Control ("OFAC"). 31 C.F.R. pt. 515, subpt. B.  Such authorization may take one of two forms: a "general license" or a "specific license." 31 C.F.R. §§ 515.317-.318.  A general license is one stated in the regulations and covering a type or category of transactions.  Specific licenses are granted by OFAC for specific transactions, on a case-by-case basis, upon the filing of an application.

On March 4, 2005, OFAC issued to Cubaexport's attorneys Ropes & Gray a specific license ("the Specific License") providing, in pertinent part, as follows:

> SECTION 1 - AUTHORIZATIONS:  (a) All transactions are authorized to enable the Licensee, in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holding S.A. in legal proceedings in the

---

[1] Cubaexport has opposed the defendants' motion for summary judgment, *inter alia*, because of the presence of genuine issues of material fact. *See, e.g.,* Opp. Mem. 25-28; 32-45.  The filing of this cross motion is without prejudice to Cubaexport's opposition on that basis.  *See CEI Washington Bureau, Inc. v. Department of Justice*, 469 F.3d 126, 129 (D.C. Cir. 2006) ("A cross-motion for summary judgment does not concede the factual assertions of the opposing motion.").

[2] "SOF" refers to Cubaexport's Statement Of Undisputed Material Facts, filed concurrently herewith.

>United States related to the HAVANA CLUB trademark, as described in the application, to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United States via a third-country bank.

SOF 3.

The HAVANA CLUB registration was due to be renewed on January 27, 2006. SOF 4. On December 13, 2005, Ropes & Gray sent a letter to the PTO enclosing a renewal application duly executed by Cubaexport pursuant to Trademark Act §§ 8 and 9, and, in accordance with PTO practice, requesting that the applicable renewal fee of $500 be charged against Ropes & Gray's standing account with the PTO. SOF 5. In that letter, Ropes & Gray stated, *inter alia*, that payment of the filing fee was being made pursuant to the Specific License in order to preserve the *status quo* by maintaining the registration pending the outcome of litigation aimed at cancelling it.

On the same day, Ropes & Gray sent OFAC a copy of its December 13, 2005 letter to the PTO, SOF 6, as well as a separate letter to OFAC. SOF 7. The letter to OFAC explained in pertinent part:

>On behalf of our client Cubaexport, Ropes & Gray has prepared the renewal application and undertaken to pay the filing fee that is required in order to maintain the registration and intends to recover those expenses from Cubaexport. Ropes & Gray has taken these steps pursuant to License No. CU 74488, which Ropes & Gray understands authorizes the firm to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark, including *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation"), and to be paid for the services it renders and ....
>
>While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board's decision ....
>
>If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed Bacardi's cancellation petition, as Cubaexport contends. That will, moreover, deprive Cubaexport

of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

* * *

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport has relied on License No. CU 74488 to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

On April 6, 2006, OFAC sent a letter to Ropes & Gray and the PTO (the "April 6, 2006 Letter"). SOF 8. In that letter, OFAC, *inter alia*, stated its determination that the Specific License did not "authorize Ropes & Gray LLP to pay a filing fee to the [PTO] for renewal of Registration No. 1,031,651 . . . on behalf of Cubaexport." It is this determination that Cubaexport, in the instant motion, asks this Court to set aside.

## II.   ARGUMENT

Summary judgment is appropriate when the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment bears the burden of making this showing, and facts are to be viewed in the light most favorable to the non-moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). On a cross-motion for summary judgment the court must rule on each party's motion on an individual and separate basis, determining in each case whether a judgment may be entered for the moving party. *Held v. Am. Airlines, Inc.,* 13 F. Supp. 2d 20, 23 (D.D.C. 1998).

Under the APA, the Court must hold unlawful any agency action, findings and conclusions that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. 706(2)(A).

The points and authorities supporting the grant of summary judgment in Cubaexport's favor with regard to the April 6, 2006 decision regarding the Specific License are fully set forth in Cubaexport's Memorandum Of Points And Authorities In Opposition To Defendants' Motion To Dismiss, Or In The Alternative, For Summary Judgment ("Opp. Mem."), filed concurrently herewith.  *See* Opp. Mem. 19-22.  Those points and authorities are incorporated by reference herein, but for the Court's convenience, are summarized in the following discussion.

First, OFAC's April 6, 2006 decision that the Specific License in effect as of December 2005 did not authorize the renewal of the HAVANA CLUB registration is contrary to the plain language of the license – language that OFAC itself crafted.  *See* Opp. Mem. 20-22. The Specific License broadly authorizes "*[a]ll transactions* . . . in connection [with] the legal representation of [Cubaexport] in legal proceedings in the United States related to the HAVANA CLUB trademark" and to receive "reimbursement for expenses related to such services."  SOF 3 (emphasis added).  That language, on its face, unambiguously encompasses the filing of the application and the payment of the PTO's minimal fee for renewal of the registration that was the *res* at issue in those "legal proceedings."  OFAC's erroneous and unsupported construction of the license to exclude such ministerial acts is "plainly wrong."  *Hispanic Info. & Telecomms. Network, Inc. v. FCC*, 865 F.2d 1289, 1296 (D.C. Cir. 1989) (remanding because agency's interpretation of its own regulation was "'plainly wrong'").

Moreover, OFAC's decision was manifestly unreasonable.  By refusing to license the simple act of renewal necessary to maintain the HAVANA CLUB registration, OFAC destroyed the very *res* that Cubaexport's attorneys were authorized to defend and thus wholly vitiated the Specific License that OFAC itself granted to enable Cubaexport to mount that defense.  *See*, *e.g.*, *Commc'ns & Control, Inc. v. FCC*, 374 F.3d 1329, 1336 (D.C. Cir. 2004) (finding the FCC's

decision to revoke license to be "unreasonable" where the FCC had already allowed the licensee to operate from the disputed location for seven years); *Mobile Commc'ns & Corp. v. FCC*, 77 F.3d 1399, 1407 & n.2 (D.C. Cir. 1996) (even if decision by itself might be rational, it was improper here because, *inter alia*, it "failed to address such questions as whether [FCC's] new position was consistent with the reliance interests of Mtel" among other reasons); *Entergy Servs., Inc. v. Fed. Energy Regulatory Comm'n*, 375 F.3d 1204, 1209 (D.C. Cir. 2004) (agency's interpretation of a regulation that is "'plainly erroneous or inconsistent with the regulation'" may be set aside, as may agency's interpretation of its own order that is not reasonable) (citation omitted); *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 383 F. Supp. 2d 123, 131 (D.D.C. 2005) (declining to accept agency's "'manifestly unreasonable'" interpretation of its own regulation), *aff'd*, 466 F.3d 134 (D.C. Cir. 2006).

Because the scope and application of the Specific License turns on its undisputed language, Cubaexport is entitled to summary judgment that the license authorizes the renewal of the HAVANA CLUB registration. If this Court agrees and grants the instant motion, the Court need not reach any of the other claims and issues in this action, including any other claims and issues presented by Cubaexport's Complaint and the government's dispositive motion. In that event, the underlying issues concerning the validity of Cubaexport's registration and Bacardi's competing claim of ownership of the trademark can and will be resolved, as they otherwise would have been, by Judge Sullivan in the pending action captioned *Bacardi & Co. v. Cubaexport*, No. 1:04-CV-00519 (D.D.C. filed Mar. 29, 2004). *See* Opp. Mem. 3-4; 14; 21-22; 45.

### III.   CONCLUSION

For the foregoing reasons, the instant motion should be granted, and this Court should enter summary judgment setting aside OFAC's April 6, 2006 determination that the Specific License does not authorize the renewal of the HAVANA CLUB registration.

Dated:  March 16, 2007                              Respectfully submitted,

*/s/ Peter M. Brody*_____
Peter M. Brody (D.C. Bar No. #398717)
ROPES & GRAY LLP
One Metro Center
700 12th Street, N.W.
Washington, D.C.  20005
Tel. (202) 508-4600
Fax. (202) 508-4650

Herbert F. Schwartz
Vincent N. Palladino
Eric R. Hubbard
Pablo D. Hendler
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036
Tel. (212) 596-9000
Fax. (212) 596-9090

*Counsel for Plaintiff,*
*Empresa Cubana Exportadora de Alimentos y*
*Productos Varios, d/b/a Cubaexport*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMPRESS CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS d/b/a/CUBAEXPORT,<br><br>   Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, HENRY M. PAULSON, JR., as Secretary of Treasury, ADAM J. SZUBIN, as Director of the Office of Foreign Assets Control, and THE UNITED STATES,<br><br>   Defendants. | Civil Action No. 1:06CV01692 (ESH)<br><br>Hon. Ellen S. Huvelle |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
SUPPORTING ITS CROSS-MOTION FOR
SUMMARY JUDGMENT ON ITS APA CLAIM**

Pursuant to Local Rule LCvR 7 (h), plaintiff submits this statement of material facts as to which there is no genuine issue:

1. U.S. Registration No. 1,031,651 of the HAVANA CLUB & Design trademark issued to Cubaexport on January 27, 1976 ("the HAVANA CLUB registration").  Compl. Ex. 2.

2. On July 12, 1995, Galleon, S.A., Bacardi-Martini U.S.A., Inc. and Bacardi Company Limited ("Bacardi") filed a "Petition For Cancellation" with the United States Patent and Trademark Office ("PTO") to cancel the HAVANA CLUB registration.  *See Galleon, S.A. v.*

*Havana Club Holding, S.A.,* Cancellation No. 92024108, 2004 TTAB LEXIS 38, at *31-32 (TTAB Jan. 29, 2004).

3. On March 4, 2005, OFAC issued to Cubaexport's attorneys Ropes & Gray License No. CU-74488 ("the Specific License"). Compl. Ex. 14.

4. Because the HAVANA CLUB registration had last been renewed on June 18, 1996 (Compl. Ex. 4, p. 4), pursuant to Section 9 of the Trademark Act of July 5, 1946, as amended, 15 U.S.C. § 1059, the HAVANA CLUB registration was due to be renewed on January 27, 2006.

5. On December 13, 2005, Ropes & Gray sent a letter to the PTO enclosing a renewal application duly executed by Cubaexport pursuant to Trademark Act §§ 8 and 9, requesting that the applicable renewal fee of $500 be charged against Ropes & Gray's standing account with the PTO. AR 59-82.

6. Ropes & Gray sent OFAC a copy of its December 13, 2005 letter to the PTO. AR 62.

7. Also on December 13, 2005, Ropes & Gray sent a separate letter to OFAC. AR 56-58.

8. On April 6, 2006, OFAC sent a letter to Ropes & Gray and the PTO. AR 52-53.

9. In response to OFAC's April 6, 2006 letter, on April 7, 2006, Ropes & Gray sent OFAC a letter requesting a license authorizing "Ropes & Gray to incur and receive payment for the expense of renewing the [HAVANA CLUB] registration." AR 49-51.

- 3 -

10. On July 28, 2006, OFAC responded to Ropes & Gray's April 7, 2006 letter. AR 1.

Dated: March 16, 2007                                Respectfully submitted,

                                                     ____/s/ Peter M. Brody_____
                                                     Peter M. Brody (D.C. Bar No. #398717)
                                                     ROPES & GRAY LLP
                                                     One Metro Center
                                                     700 12th Street, N.W.
                                                     Washington, D.C.  20005
                                                     Tel. (202) 508-4600
                                                     Fax. (202) 508-4650

                                                     Herbert F. Schwartz
                                                     Vincent N. Palladino
                                                     Eric R. Hubbard
                                                     Pablo D. Hendler
                                                     ROPES & GRAY LLP
                                                     1211 Avenue of the Americas
                                                     New York, New York  10036
                                                     Tel. (212) 596-9000
                                                     Fax. (212) 596-9090

                                                     *Counsel for Plaintiff,*
                                                     *Empresa Cubana Exportadora de Alimentos y*
                                                     *Productos Varios, d/b/a Cubaexport*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EMPRESS CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS d/b/a/CUBAEXPORT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, HENRY M. PAULSON, JR., as Secretary of Treasury, ADAM J. SZUBIN, as Director of the Office of Foreign Assets Control, and THE UNITED STATES,<br><br>Defendants. | Civil Action No. 1:06CV01692 (ESH)<br><br>Hon. Ellen S. Huvelle |

## **PROPOSED ORDER**

This matter having come before the Court on Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment and Cubaexport's Cross-motion For Summary Judgment, and the Court having considered the submissions of the parties, the arguments of counsel, and the pleadings on file in this action,

IT IS HEREBY ORDERED THAT:

1. Cubaexport's Cross-Motion for Summary Judgment is GRANTED.

2. Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment is DENIED in its entirety.

IT IS SO ORDERED.

Dated: _____, 2007        By:_____
                                            Ellen S. Huvelle
                                            United States District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2007, I caused a true and correct copy of the following documents to be served on Defendants' counsel electronically by means of the Court's ECF system:

1. CUBAEXPORT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND SUPPORTING STATEMENT OF POINTS AND AUTHORITIES;

2. PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS SUPPORTING ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON ITS APA CLAIM; AND

3. PROPOSED ORDER.

*/s/ Peter M. Brody*
PETER M. BRODY
(DC Bar No. 398717)