# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

EMPRESA CUBANA EXPORTADORA )
DE ALIMENTOS Y PRODUCTOS )
VARIOS d/b/a CUBAEXPORT, )
                               )
        Plaintiff, )
                               )
        v. )         Civil Action No. 1:06CV01692 (ESH)
                               )
                               )        Hon. Ellen S. Huvelle
UNITED STATES DEPARTMENT OF )
THE TREASURY, OFFICE OF FOREIGN )
ASSETS CONTROL, )
HENRY M. PAULSON, JR., as Secretary )
of Treasury, ADAM J. SZUBIN, as )
Director of the Office of Foreign Assets )
Control, and THE UNITED STATES, )
                               )
        Defendants. )
_____)

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      I.     THE PLAIN LANGUAGE OF LICENSE NO. CU-74488
           AND THE CONTEXT OF THE CACR SUPPORT OFAC'S
           INTERPRETATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      II.    THE BURDEN ON CUBAEXPORT FROM COMPLIANCE
           WITH THE SEPARATE REQUIREMENTS OF THE
           CACR DOES NOT DEMONSTRATE THAT OFAC'S
           INTERPRETATION IS UNREASONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

## TABLE OF AUTHORITIES

**CASES**                                                                                                  **Page(s)**

Baker Norton Pharm., Inc. v. FDA,
    132 F. Supp.2d 30 (D. D.C. 2001) ................................................................ 5

Citizens to Pres. Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971) ........................................................................................ 5

Communications & Control, Inc. v. FCC,
    374 F.3d 1329 (D.C. Cir. 2004) ..................................................................... 9

Consarc Corp. v. Iraqi Ministry,
    27 F.3d 695 (D.C. Cir. 1994) .......................................................................... 6

Consarc Corp. v. OFAC,
    71 F.3d 909 (D.C. Cir. 1995) .......................................................................... 6

Empresa Cubana del Tabaco v. Culbro Corp.,
    399 F.3d 462 (2d Cir. 2005) ........................................................................... 9

Havana Club Holding, S.A. v. Galleon S.A. ("HCH V"),
    203 F.3d 116 (2d Cir. 2000) ........................................................................... 6

Hercules, Inc. v. United States,
    16 U.S. 417 (1996) ........................................................................................ 11

Marsh v. Or. Natural Res. Council,
    490 U.S. 360 (1989) ........................................................................................ 5

Motor Vehicle Mfrs. Ass'n of the United States, Inc. v.
    State Farm Mut. Auto. Ins. Co.,  463 U.S. 29 (1983) ..................................... 10

Nat'l Oilseed Processors Ass'n v. Browner,
    924 F. Supp. 1193 (D. D.C. 1996) ................................................................ 10

**STATUTES**

5 U.S.C. § 706(2) ...................................................................................................... 5

## **REGULATIONS**

31 C.F.R. § 515.512 ................................................................................................ 1, 2, 8

31 C.F.R. § 515.527 .............................................................................................. 1, 8, 9,10

31 C.F.R. § 515.560 ................................................................................................ 2, 11

## INTRODUCTION

In its Cross-Motion for Summary Judgment and Opposition to the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Dispositive Motion"), Cubaexport asserts that the record is sufficiently developed to enter judgment on Count IV of the Complaint, which challenges as arbitrary or capricious a determination made by the Office of Foreign Assets Control ("OFAC") in an April 6, 2006, letter that legal License No. CU-74488 did not authorize payment of the renewal fee for the Havana Club trademark. Cubaexport bases this request on the "explicit language" of the license, which it contends supports the interpretation that the license authorizes such transactions.

However, the language of the license could only be read in such a way if pivotal language is selectively omitted. As the defendants explained in their Dispositive Motion, legal License No. CU-74488 authorized reimbursement for Cubaexport's counsel in legal proceedings only *as described in the application* for the license. Dispositive Mot. at 33-36. Counsel's application requested a license relating to two specified legal proceedings, not a license to renew the Havana Club trademark on Cubaexport's behalf. Cubaexport does not discuss this language, let alone dispute it, in either its Opposition to the defendants' Dispositive Motion or the Cross-Motion.

Instead, Cubaexport would have the Court ignore this language based upon the assertion that a legal license covers the same subject matter as a license to authorize transactions related to the renewal of a trademark, despite the fact that these licenses are governed by separate regulatory provisions in the Cuban Assets Control Regulations ("CACR"). Compare 31 C.F.R. § 515.512 with 31 C.F.R. § 515.527. This assertion, ungrounded in the language of the license, the context and structure of the CACR, or in judicial precedent, should be rejected.

As the agency responsible for administering and interpreting these regulatory provisions,

1

OFAC is given wide deference to interpret their reach.  As with the rest of its opposition

materials, Cubaexport chooses to ignore this principal, seeking, in essence, to litigate the issue <u>ab</u>

<u>initio</u> in this Court.  Such an approach is misguided, as it ignores OFAC's expertise and

experience with its own regulations.  In its April 6, 2006, letter, OFAC provided an extensive

explanation for its action, grounded in the explicit language of the license.  Given Cubaexport's

refusal to discuss the language relied upon by OFAC, it has no basis to ask the Court to conclude

that this explanation is arbitrary and capricious.

## <u>BACKGROUND</u>[1]

As a result of the CACR's prohibition on persons subject to the jurisdiction of the United

States engaging in transactions involving property in which the Cuban government or a Cuban

national has an interest, a lawyer is unable to receive compensation for fees and expenses

incurred in representing such entities in legal proceedings without a specific license from OFAC.

<u>See</u> 31 C.F.R. § 515.512.  Similarly, that lawyer cannot engage in Cuban travel-related

transactions to conduct research related to the legal representation without a specific travel

license.  <u>See</u> 31 C.F.R. § 515.560.  Accordingly, in order to conduct such research and obtain

reimbursement for the fees and expenses related to the representation of Cubaexport in legal

proceedings in the United States, including proceedings before the Trademark Trial and Appeal

Board, Cubaexport's attorneys have applied for and received various legal and travel licenses.

<u>See, e.g.</u>, License Nos. CU-75745, CT-7571, Administrative Record ("A.R.") 45-48; License

Nos. CU-74488, CT-4558, A.R. 83-86; License No. CT-1943, A.R. 99-100.

---

[1] The background section of this opposition is set forth in full in the defendants'
Dispositive Motion.  The relevant facts are included again in this opposition for the Court's
convenience.

2

Ropes & Gray LLP, which had merged with the law firm of Fish & Neave, Cubaexport's prior counsel, in January 2005, applied to OFAC for a renewal of the legal and travel licenses previously issued to Fish & Neave.  See Compl. ¶ 35; see also January 5, 2005, Letter from Renee Stasio to OFAC, A.R. 97-98.  In the application, Ropes & Gray asserted that it "will be the law firm representing Cubaexport in connection with the . . . matters" previously mentioned in the application.  A.R. 98.  The legal matters specifically referenced were the cancellation proceeding filed by Bacardi-Martini USA, Inc. ("Bacardi") before the Trademark Trial and Appeal Board, number 24,108, and the Complaint filed by Bacardi against Cubaexport in federal district court.  See A.R. 97; see also January 26, 2005, Letter from Renee Stasio to OFAC, A.R. 87.

OFAC granted the application on March 4, 2005.  See License No. CU-74488, A.R. 83-84.  The legal license that OFAC issued, License No. CU-74488, authorized "[a]ll transactions . . . to enable the Licensee, in connection [with] the legal representation of [Cubaexport] and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, as described in the application, to receive payment for such services and reimbursement for expenses related to such services."  A.R. 84.  OFAC also issued a companion travel license authorizing travel-related transactions in connection with the legal proceedings. License No. CT-4558, A.R. 85-86.  OFAC responded to Ropes & Gray's request for renewal of these licenses by issuing two new licenses in April 2006.  See License Nos. CU-75745, CT-7571, A.R. 45-48.

On December 13, 2005, Cubaexport filed an application with the PTO to renew the Havana Club trademark.  See Letter from Vincent Palladino to Commissioner of Trademarks, A.R. 59-82.  In a letter attached to the application, Ropes & Gray represented on Cubaexport's

3

behalf that "[p]ayment of the filing fee is being made pursuant to License No. CU 74488 issued by the Office of Foreign Assets Control . . . on March 4, 2005 . . . in order to maintain the *status quo* by maintaining Registration No. 1,031,651 until a decision regarding cancellation of the registration can be rendered in ongoing litigation, *Bacardi & Company Limited v. Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D. D.C. 2004)." A.R. 59. Ropes & Gray forwarded a copy of this letter to OFAC, again explaining that Ropes & Gray "has relied on License No. CU 74488 to maintain the *status quo* until a decision in [*Bacardi & Company Limited v. Cubaexport and Havana Club Holding*] is rendered by the Court or by any court to which such a decision may finally be appealed." December 13, 2005, Letter from Vincent Palladino to OFAC, A.R. 57.

On April 6, 2006, OFAC informed both Ropes & Gray and the PTO that License No. CU-74488 "does not authorize Ropes & Gray LLP to pay a filing fee to the U.S. Patent and Trademark Office ("PTO") for renewal of Registration No. 1,031,651 (the "HAVANA CLUB trademark") on behalf of [Cubaexport]." Letter from OFAC to Vincent Palladino, A.R. 52. As explained in the letter, "License No. CU-74488 pertains to a cancellation proceeding." A.R. 52. According to OFAC, the text of the license therefore authorized transactions to enable Ropes & Gray to receive payment for services and reimbursement for expenses related to such services in connection with the "legal representation of [Cubaexport], and Havana Club Holdings S.A. in legal proceedings in the United States related to the Havana Club trademark, as described in the application" submitted by Ropes & Gray for the license. A.R. 52. However, "[t]he only legal proceeding described in [the] application was 'a complaint [] currently pending in the U.S. District Court for the District of Columbia against . . . Cubaexport and Havana Club Holdings S.A." A.R. 52.

4

In the April 6, 2006, letter, OFAC made clear that its discussion was limited to the extent of authorization conferred by License No. CU-74488 and therefore did not prohibit the filing of a separate request for a specific license to authorize transactions relating to renewal of the Havana Club mark:

> We note that this discussion does not in any way prejudice the ability of Ropes & Gray LLP to request separate authorization from OFAC to engage in transactions related to the renewal of the HAVANA CLUB trademark registration at the PTO. If you wish to request such a specific license or further guidance from OFAC, you may do so by writing directly to OFAC's Licensing Division.

A.R. 53. OFAC closed the letter by referring Ropes & Gray to the Deputy Chief Counsel (Foreign Assets Control) for resolution of "any further questions." A.R. 53.

## STANDARD OF REVIEW

Cubaexport pays lip service to the standard of review for its claim under the Administrative Procedure Act by acknowledging that agency action is unlawful when it is found to be "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). However, Cubaexport does not discuss the extraordinary deference owed OFAC's interpretation of its own regulations. Review under the arbitrary and capricious standard is narrow and the reviewing court may not substitute its judgment for that of the agency. Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989); Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971); see also Baker Norton Pharm., Inc. v. FDA, 132 F. Supp.2d 30, 37 (D. D.C. 2001) ("[T]he Court considers only whether the agency's interpretation is permissible, not whether a better interpretation exists."). Accordingly, a challenge to OFAC's interpretation of its regulatory authority "must either demonstrate that the statute clearly forbids the agency's interpretation or that the interpretation is unreasonable." Consarc Corp. v. OFAC, 71 F.3d 909, 914 (D.C. Cir. 1995); see also id. at 915

5

(holding that, in interpreting its own regulations, OFAC is afforded "'an even greater degree of deference than the Chevron standard, and must prevail unless plainly inconsistent with the regulation'") (quoting Consarc Corp. v. Iraqi Ministry, 27 F.3d 695, 702 (D.C. Cir. 1994)); see also Havana Club Holding, S.A. v. Galleon S.A. ("HCH V"), 203 F.3d 116, 125 (2d Cir. 2000) ("[E]ven if [OFAC's] interpretation of section 515.527(a)(1) were fairly debatable, the interpretation of the provision given by the agency charged with enforcing the embargo is normally controlling.").

## ARGUMENT

Cubaexport contends that the "undisputed" language of legal License No. CU-74488, issued to Cubaexport's attorneys, Ropes & Gray LLP, "unambiguously encompasses the filing of the application and payment of the PTO's minimal fee for renewal of the [Havana Club] registration." Cross-Mot. at 2, 5. Given the plain language of License No. CU-74488, the structure of the CACR, and the deference afforded OFAC's construction of its own regulations, there is no basis for Cubaexport's claim that OFAC acted arbitrarily or capriciously in deciding that the specific license issued to Cubaexport's attorneys did not authorize Cubaexport to renew the Havana Club trademark through payment to the PTO. Accordingly, this Court should deny Cubaexport's Cross-Motion for Summary Judgment and grant the defendants' Dispositive Motion.

## I.    THE PLAIN LANGUAGE OF LICENSE NO. CU-74488 AND THE CONTEXT OF THE CACR SUPPORT OFAC'S INTERPRETATION

Cubaexport's claim contains two related arguments. First, Cubaexport asserts that License No. CU-74488 "on its face" authorizes payment of the fee to renew the Havana Club trademark. Cross-Mot. at 5. As support for this argument, Cubaexport quotes from the language

of Section 1 of the License: "The Specific License broadly authorizes '*[a]ll transactions* . . . in connection [with] the legal representation of [Cubaexport] in legal proceedings in the United States related to the HAVANA CLUB trademark' and to receive 'reimbursement for expenses related to such services.'" Id.; Pl.'s Opp. at 20. However, this selective quotation excludes pivotal language from the License. The actual language of Section 1 in License No. CU-74488 authorizes "[a]ll transactions . . . in connection [with] the legal representation of [Cubaexport] . . . in legal proceedings in the United States related to the HAVANA CLUB trademark, *as described in the application*, to receive payment for such services and reimbursement for expenses." A.R. 84 (emphasis added). In addition, Section 4 of the License, entitled "Precedence," expressly states that "[t]he authorization contained in this license is limited to the facts and circumstances specific to the application." Id.

Thus, as explained by the defendants' Dispositive Motion, a full and correct reading of the application informs the licensee that the authority conveyed by the license is limited to the facts and circumstances described in the application.[2] See Dispositive Mot. at 33-36; see also Szubin Decl. ¶¶ 12-14. And the original application that Ropes & Gray submitted to OFAC requested a license in connection with only the Trademark Trial and Appeal Board's dismissal of cancellation proceeding number 24,108, and a complaint filed by Bacardi against "Havana Club Holding S.A. and Cubaexport" that appeals the decision of the Board. A.R. 97. The supplemental application filed by Ropes & Gray in response to a notice of deficiency from

---

[2] In spite of the fact that the defendants quoted the full language of the license in their Dispositive Motion, and based their argument on this language, Cubaexport chose to selectively quote the language of the license as if the language relied upon by the defendants did not exist. As Cubaexport has forfeited the opportunity to respond to the defendants' arguments, they should not be allowed to create new arguments in reply.

OFAC, A.R. 89, again referenced only a "complaint . . . currently pending in the U.S. District Court for the District of Columbia against our clients Cubaexport and Havana Club Holdings S.A." A.R. 87. Accordingly, the applications that formed the basis of License No. CU-74488 did not reference any intent to use the license as authorization to renew the Havana Club trademark by paying the renewal fee. License No. CU-74488, by its express language, was therefore limited to payment for legal services performed and reimbursement for expenses incurred by Ropes & Gray in specific legal proceedings. See A.R. 83 ("This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control . . . applicable to the transactions(s) herein licensed . . . ."); see also Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 476 (2d Cir. 2005) ("[T]he special license issued by OFAC to Cubatabaco, which allows Cubatabaco to 'pursue . . . judicial remedies with respect to claims to the COHIBA trademark,' . . . .  allows Cubatabaco to seek relief in U.S. courts, but does not authorize transfers of property barred by the Regulations.").

The context of the CACR also supports OFAC's interpretation. Two different regulatory provisions govern the grant of specific licenses for legal services payments and transactions related to trademark renewal. Compare 31 C.F.R. § 515.512 with 31 C.F.R. § 515.527. Accordingly, as the payment of a fee to renew the Havana Club trademark falls within the category of "[t]ransactions related to the registration and renewal . . . of trademarks . . . in which the Government of Cuba or a Cuban national has an interest," the specific license application to authorize such payment must take into account section 515.527.[3]  OFAC's review of such

---

[3]  In its Opposition, Cubaexport asserts that the 1996 renewal of the Havana Club trademark was authorized under the "General License" of 31 C.F.R. § 515.527(a)(1), rather than any existing legal license granted to Ropes & Gray. See Pl.'s Opp. at 8. Thus, it was not until the general authorization was withdrawn by section 211 that Cubaexport decided that the

applications may necessitate different considerations than those that govern a license application

pursuant to section 515.512, including whether a mark is the same as or substantially similar to a

mark used in connection with confiscated property.  See 31 C.F.R. § 515.527(a)(2).

## II.    THE BURDEN ON CUBAEXPORT FROM COMPLIANCE WITH THE SEPARATE REQUIREMENTS OF THE CACR DOES NOT DEMONSTRATE THAT OFAC'S INTERPRETATION IS UNREASONABLE

In a related argument, Cubaexport next asserts that OFAC's denial of the specific license

application for transactions relating to the renewal of the Havana Club trademark is

"unreasonable" because the denial "wholly vitiates" the legal license.  Cross-Mot. at 5-6; Pl.'s

Opp. at 20-21.  As an initial matter, OFAC's denial of a specific license for transactions relating

to renewal of the Havana Club trademark did not reverse OFAC's decision that Ropes & Gray

may be compensated for legal services performed on Cubaexport's behalf in the proceedings

specified in the application.[4]  As long as Ropes & Gray engages in representation of Cubaexport

in the specified legal proceedings, Ropes & Gray may receive payment for its services during the

_____

"explicit" language of the legal license authorized the activity previously conducted under section 515.527.

[4]    Cubaexport cites cases for the proposition that an agency's unexplained reversal of course may be deemed arbitrary or capricious.  Pl.'s Opp. at 21.  However, the cases cited in support of this proposition involve administrative decisions that were later reversed or similarly situated individuals that were treated differently.  See, e.g., Communications & Control, Inc. v. FCC, 374 F.3d 1329, 1336 (D.C. Cir. 2004).  In contrast, OFAC did not reverse its legal licensing determination regarding payment for legal services.  Furthermore, Cubaexport does not point to any similarly situated individual who has relied upon an existing legal license to make payments to renew a trademark, much less one whose reliance was approved by OFAC. Cubaexport's application for a specific license authorizing transactions related to the renewal of the trademark concerned separate considerations than a decision on the application for payments for legal services.  Cf. Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42 (1983) ("[A]n agency must be given ample latitude to 'adapt their rules and policies to the demands of changing circumstances.'") (quoting Permian Basin Area Rate Cases, 390 U.S. 747, 784 (1968)).

life of the legal license.

Moreover, the mere fact that OFAC's denial of the specific license request may have an indirect effect on the ultimate outcome of the district court proceeding does not relieve Cubaexport of the obligation, pursuant to section 31 C.F.R. § 515.527, to have separate authorization to engage in transactions related to renewal of the Havana Club trademark.  OFAC explicitly addressed this point in its April 6, 2006, letter, explaining that there are a multitude of matters that could affect the underlying litigation for which an attorney is licensed to be reimbursed.  A.R. 53.  Because OFAC "is not in a position to gauge the extent to which any other administrative or judicial proceedings may have some effect on that litigation," the assertion by a party that the underlying litigation may be rendered moot does not expand the limited authorization conferred by a legal license.[5]  Id.

The opposite conclusion would vitiate other requirements and restrictions within the CACR, as, once granted, a specific legal license would effectively authorize any undisclosed, future action conducted by counsel that may have an effect on pending litigation.  Such an interpretation would be inconsistent with current practice as evidenced by Ropes & Gray's own licensing history.  For example, when OFAC granted Ropes & Gray's application for a specific

---

[5]  In a footnote to its Opposition to the defendants' Dispositive Motion, Cubaexport recognizes that OFAC addressed this argument in the April 6, 2006, letter.  Pl.'s Opp. at 21 n.18.  However, Cubaexport argues that OFAC's response is "inadequate," and that the "government attempts" to supplement the response with "various arguments not stated in the decision itself." Id.  As Cubaexport does not explain the basis for this argument, it is difficult to understand Cubaexport's reasoning.  However, the April 6, 2006, letter contains two pages of explanation concerning the applicability of the specific license to transactions related to the renewal of the trademark.  See A.R. 52-53.  The arguments presented in the Dispositive Motion are drawn directly from the agency's reasoned explanation.  See Nat'l Oilseed Processors Ass'n v. Browner, 924 F. Supp. 1193, 1204 (D. D.C. 1996) ("The rule against post-hoc rationalizations does not prevent a court from considering a more detailed explanation of an agency's action in response to a legal challenge.").

license to receive payment for the representation of Cubaexport in specified legal proceedings, OFAC also issued Ropes & Gray a travel license that authorized travel incident to research conducted in conjunction with its legal representation.  <u>See</u> License No. CT-4558, A.R. 85-86; <u>see also</u> 31 C.F.R. § 515.560.  If Cubaexport's argument were held valid, the travel license would become superfluous, as the potential effect on the litigation of counsel's inability to travel would justify a corresponding expansion of the language of the legal license.  <u>Cf.</u> <u>Hercules, Inc. v. United States</u>, 516 U.S. 417, 429 (1996) ("We will not interpret the DPA contracts so as to render these statutes and regulations superfluous.").

Cubaexport and its counsel may be burdened by multiple requirements within the CACR. However, the fact that these burdens sometimes overlap does not demonstrate that OFAC's interpretation of the authority conveyed by the legal license was arbitrary or capricious.

<u>CONCLUSION</u>

For the foregoing reasons, the defendants respectfully request that the Court deny Cubaexport's Cross-Motion for Summary Judgment and grant the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment with regard to this claim.

Dated April 13, 2007                    Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General

                                        JEFFREY A. TAYLOR
                                        U.S. Attorney for the District of Columbia

                                        SANDRA M. SCHRAIBMAN
                                        (DC Bar No. 188599)
                                        Assistant Branch Director
                                        Federal Programs Branch

11

_/s/ Eric R. Womack_
ERIC R. WOMACK (IL Bar No. 6279517)
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
Washington, D.C.  20001
Tel: (202) 514-4020
Fax: (202) 616-8470

Counsel for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2007, I caused a true and correct copy of the foregoing Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment, Response to Plaintiff's Statement of Undisputed Material Facts, and accompanying Proposed Order to be served on Plaintiff's counsel electronically by means of the Court's ECF system.

*/s/ Eric R. Womack*
ERIC R. WOMACK

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS d/b/a CUBAEXPORT, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
|  | ) |
| UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, HENRY M. PAULSON, JR., as Secretary of Treasury, ADAM J. SZUBIN, as Director of the Office of Foreign Assets Control, and THE UNITED STATES, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 1:06CV01692 (ESH)

Hon. Ellen S. Huvelle

_____

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.1, defendants United States Department of the Treasury, the Office of Foreign Assets Control, Henry M. Paulson, Jr., Adam J. Szubin, and the United States, respond, by and through their undersigned counsel, to plaintiff's statement of material facts not in dispute as follows. Plaintiff's numbered statements are reproduced below, each followed by the defendants' response.

1.      U.S. Registration No. 1,031,651 of the HAVANA CLUB & Design trademark issued to Cubaexport on January 27, 1976 ("the HAVANA CLUB registration").  Compl. Ex. 2.

1

**Response:**    Undisputed.

2.    On July 12, 1995, Galleon, S.A., Bacardi-Martini U.S.A., Inc. and Bacardi Company Limited ("Bacardi") filed a "Petition For Cancellation" with the United States Patent and Trademark Office ("PTO") to cancel the HAVANA CLUB registration.  *See Galleon, S.A. v. Havana Club Holding, S.A.*, Cancellation No. 92024108, 2004 TTAB LEXIS 38, at *31-32 (TTAB Jan. 29, 2004).

**Response:**    Undisputed, but the fact alone is immaterial to the resolution of the claim raised by the Cross-Motion for Summary Judgment.  In addition, the caption of the proceeding cited by ¶ 2 identifies the "Bacardi" party as "Bacardi & Company Limited," rather than "Bacardi Company Limited."

3.    On March 4, 2005, OFAC issued to Cubaexport's attorneys Ropes & Gray License No. CU-74488 ("the Specific License").  Compl. Ex. 14.

**Response:**    Undisputed.  <u>See</u> A.R. 83-84.

4.    Because the HAVANA CLUB registration had last been renewed on June 18, 1996 (Compl. Ex. 4, p. 4), pursuant to Section 9 of the Trademark Act of July 5, 1946, as amended, 15 U.S.C. § 1059, the HAVANA CLUB registration was due to be renewed on January 27, 2006.

**Response:**    The January 27, 2006, date is immaterial to the resolution of the claim raised by the Cross-Motion for Summary Judgment.  It is undisputed that the Havana Club registration had last been renewed in 1996.

5.    On December 13, 2005, Ropes & Gray sent a letter to the PTO enclosing a renewal application duly executed by Cubaexport pursuant to Trademark Act §§ 8 and 9,

requesting that the applicable renewal fee of $500 be charged against Ropes & Gray's standing account with the PTO. AR 59-82.

**Response:** It is undisputed that Ropes & Gray, on Cubaexport's behalf, requested renewal of the Havana Club trademark in a letter to the PTO dated December 13, 2005. See A.R. 59-62. In the letter, counsel for Cubaexport represented that "[p]ayment of the filing fee is being made pursuant to License No. CU 74488." A.R. 59.

6.    Ropes & Gray sent OFAC a copy of its December 13, 2005 letter to the PTO. AR 62.

**Response:** Undisputed.

7.    Also on December 13, 2005, Ropes & Gray sent a separate letter to OFAC. AR 56-58.

**Response:** Undisputed.

8.    On April 6, 2006, OFAC sent a letter to Ropes & Gray and the PTO. AR 52-53.

**Response:** Undisputed.

9.    In response to OFAC's April 6, 2006 letter, on April 7, 2006, Ropes & Gray sent OFAC a letter requesting a license authorizing "Ropes & Gray to incur and receive payment for the expense of renewing the [HAVANA CLUB] registration." AR 49-51.

**Response:** Undisputed.

10.    On July 28, 2006, OFAC responded to Ropes & Gray's April 7, 2006 letter. AR 1.

**Response:** Undisputed.

3

The additional facts material to the Cross-Motion for Summary Judgment are described, with citations to the relevant record materials, in paragraphs 27 to 42 of the defendants' Statement of Undisputed Material Facts submitted in support of the Motion to Dismiss or, in the Alternative, for Summary Judgment.

Dated April 13, 2007                                Respectfully submitted,

                                                    PETER D. KEISLER
                                                    Assistant Attorney General

                                                    JEFFREY A. TAYLOR
                                                    U.S. Attorney for the District of Columbia

                                                    SANDRA M. SCHRAIBMAN
                                                    (DC Bar No. 188599)
                                                    Assistant Branch Director
                                                    Federal Programs Branch


                                                        /s/ Eric R. Womack
                                                    ERIC R. WOMACK (IL Bar No. 6279517)
                                                    Trial Attorney
                                                    U.S. Department of Justice
                                                    Civil Division
                                                    Federal Programs Branch
                                                    Washington, D.C.  20001
                                                    Tel: (202) 514-4020
                                                    Fax: (202) 616-8470

                                                    Counsel for the Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| EMPRESA CUBANA EXPORTADORA ) | |
| DE ALIMENTOS Y PRODUCTOS ) | |
| VARIOS d/b/a CUBAEXPORT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06CV01692 (ESH) |
| ) | |
| ) | Hon. Ellen S. Huvelle |
| UNITED STATES DEPARTMENT OF ) | |
| THE TREASURY, OFFICE OF FOREIGN ) | |
| ASSETS CONTROL, ) | |
| HENRY M. PAULSON, JR., as Secretary ) | |
| of Treasury, ADAM J. SZUBIN, as ) | |
| Director of the Office of Foreign Assets ) | |
| Control, and THE UNITED STATES, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**ORDER**

Upon consideration of the Plaintiff's Cross-Motion for Summary Judgment, the

memorandum of points and authorities in support thereof, and responses thereto, it is this

_____ day of _____, 2007, ordered that the Cross-Motion is DENIED.

_____
UNITED STATES DISTRICT JUDGE