IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMPRESS CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS d/b/a/CUBAEXPORT,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, HENRY M. PAULSON, JR., as Secretary of Treasury, ADAM J. SZUBIN, as Director of the Office of Foreign Assets Control, and THE UNITED STATES,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:06CV01692 (ESH)<br>)<br>)<br>) Hon. Ellen S. Huvelle<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CUBAEXPORT'S REPLY MEMORANDUM IN SUPPORT
OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

In its cross-motion for summary judgment, Cubaexport asks this Court to set aside OFAC's April 6, 2006 decision that OFAC License No. CU-74488 ("the Specific License") did not authorize Ropes & Gray to file an application to renew the HAVANA CLUB registration or pay the renewal fee on behalf of its client, Cubaexport. As we demonstrated in our opening brief, OFAC's April 6, 2006 decision rests on an unexplained distinction between the renewal of the registration and all other actions to defend the registration from cancellation in the litigation brought by Bacardi – a distinction that is unsupported by the language of the Specific License and is manifestly unwarranted and unreasonable under the circumstances of this case. Plainly, a Specific License authorizing Ropes & Gray to undertake all actions necessary to defend Cubaexport's rights in the HAVANA CLUB registration, including the incurring of expenses incident to those actions, necessarily encompassed the filing of documents with, and the paying of fees to, the U.S. Patent & Trademark Office ("PTO") to *maintain the existence* of the very registration whose defense the Specific License authorized.

In opposing Cubaexport's cross-motion, the government does not dispute the straightforward facts on which Cubaexport's motion is based. *See* Defendants' Response To Plaintiff's Statement Of Undisputed Material Facts. Instead, the government, in its brief, renews its attempt to construe the Specific License to justify its arbitrary distinction between the defense of the cancellation litigation and the renewal of the HAVANA CLUB registration. The latter, the government now asserts, is an action that is not "in" the litigation but is "external" to it. Such terms, however, appear nowhere in the Specific License, and neither that document nor the April 6, 2006 decision supports the government's new interpretation of the Specific License.

The government also, for the first time, contends that the distinction between renewal of the HAVANA CLUB registration and the defense of the cancellation litigation is justified and,

indeed, *required* by a provision in the CACR concerning what the government terms "legal licenses." *See* 31 C.F.R. § 515.512. That provision, however, was adopted *after* the Specific License was first issued and, in any event, is merely a *general* license provision. As the government conceded in its own motion for summary judgment, a general license provision authorizing certain actions does not limit OFAC's ability to issue a specific license authorizing *other* actions.

Finally, the government suggests that the granting of Cubaexport's cross-motion would have unintended and adverse implications for other, unidentified licensing matters. The government's professed concern, in addition to being vague and speculative, is quite misplaced. The circumstances of this case are so unusual that the precedential effect of a grant of Cubaexport's summary judgment motion likely would be nil. In any event, courts have not hesitated to overrule OFAC decisions when they are as unreasoned as this one. Surely, OFAC cannot be shielded from the consequences of its bad decisions because it fears that this may interfere with its future decision making.

## II.  ARGUMENT

### A.  As OFAC Confirmed, The Specific License Authorized Payment Of The Registration Renewal Fee

As OFAC itself stated in its April 6, 2006 letter, the Specific License "covers ... transactions *in connection with* the pending District Court litigation" and "authorized Ropes & Gray LLP to engage in transactions *necessary to provide Cubaexport representation ... in the litigation* pending before the District Court" [D.C. Action]. AR 53 (emphasis added). The government does not dispute, nor could it, that paying the renewal fee was a transaction undertaken "in connection with" the D.C. Action and was "necessary to provide Cubaexport

2

representation" in that litigation. In fact, Ropes & Gray could not defend the registration from cancellation if the registration were not renewed.[1]

Nevertheless, the government asserts in its brief that the Specific License was "limited to payment for legal services performed and reimbursement for expenses incurred by Ropes and Gray *in* specific legal proceedings [the D.C. Action and TTAB cancellation proceeding]." Opp. Mem. 8 (emphasis added).[2] This *post hoc* interpretation is unavailing. The Specific License does not contain the limiting preposition "in" that the government now reads into it. Instead, the Specific License authorized Ropes and Gray "to receive payment for . . . services [in the D.C. Action and TTAB cancellation proceeding] and reimbursement for expenses *related to* such services." AR 84. Plainly, the registration renewal fee was an expense *related to* Ropes and Gray's authorized representation of Cubaexport in the D.C. Action. If OFAC had wanted to limit payment and reimbursement to expenses incurred "in" the D.C. Action and TTAB cancellation proceeding, it could – and should – have done so. It did not, and the government should be held to the license terms that OFAC itself wrote.

The government cannot avoid this conclusion by referring to Ropes & Gray's application for the Specific License. Opp. Mem. 7. OFAC License No. CT-1943, issued on February 20, 2004, broadly authorized Cubaexport's counsel Fish & Neave *inter alia*, "to provide legal services to, and to receive payment for such services" from Cubaexport. AR 99-100. On January 5, 2005, Cubaexport's counsel Ropes & Gray sought a license "giving Ropes & Gray the

---

[1] Nor can the government contend that there was anything unusual in Cubaexport's relying on a law firm to handle the submission of a renewal application and the payment of a renewal fee on its behalf. To the contrary, not only are such actions a typical aspect of a law firm's representation of a trademark owner, they are specifically authorized by PTO regulations. 37 C.F.R. §§ 10.14, 2.17, 1.25; *see also* T.M.E.P §§ 601, 602.

[2] "Opp. Mem." refers to Defendants' Memorandum In Opposition To Plaintiff's Cross-Motion For Summary Judgment. "Mem." refers to Memorandum In Support of Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment. "Reply Mem." refers to Memorandum Of Points And Authorities In Opposition To Defendants' Motion To Dismiss, Or In The Alternative For Summary Judgment.

3

same rights as authorized in License No. CT-1943," including the right to represent Cubaexport "in connection with" the D.C. Action and TTAB cancellation proceeding. AR 98. After Ropes & Gray's January 26, 2005 letter clarified a different part of its request dealing with travel to Cuba (AR 87-88), OFAC issued the Specific License authorizing Ropes & Gray to engage in "[a]ll transactions ... in connection [with] the legal representation of [Cubaexport] in legal proceedings in the United States related to the HAVANA CLUB trademark, as described in the application."[3] AR 83-84.

### B. This Court Should Disregard The Government's *Post Hoc* Reliance On 31 C.F.R. § 515.512

As we demonstrated in our opening brief, OFAC's April 6, 2006 decision not only is contrary to the express language of the Specific License, but it also marks a "sharp departure from [OFAC's] prior practice" without adequate explanation. *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 874 n.17 (D.C. Cir. 1984). After repeatedly authorizing the defense of the HAVANA CLUB registration in cancellation proceedings for more than a decade pursuant to the Specific License and prior such licenses, OFAC abruptly decided on April 6, 2006 that the Specific License in effect on December 13, 2005 did not authorize a payment of the renewal fee. And it did so even though OFAC itself recognized that the license authorized all transactions that were necessary to the continued defense of the registration. That was improper. *See Mobile Communs. Corp. of Am. v. FCC*, 77 F. 3d 1399, 1407 (D.C. Cir. 1996) ("After stating repeatedly that Mtel would not be required to pay, the Commission reversed itself at the eleventh hour."); *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983)

---

[3] OFAC accuses Cubaexport of attempting to mislead the Court by allegedly disregarding the reference in the Specific License to all transactions in connection with legal representation of Cubaexport "as described in [Ropes & Gray's license] application." Opp. Mem. 7. That accusation is spurious. Cubaexport recognizes that the license authorized all transactions in connection with and necessary to its representation of Cubaexport in the D.C. Action and TTAB cancellation proceeding described in its license application.

4

("[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance.").[4]

The government insists, however, on drawing a bright line between transactions relating to the defense of the cancellation proceeding, which the Specific License authorized, and transactions relating to the renewal of the HAVANA CLUB registration, which (the government contends) the Specific License did not authorize. In an effort to bolster its position, the government relies heavily on a provision in the CACR (31 C.F.R. § 515.512) authorizing certain actions by U.S. lawyers on behalf of Cuban clients, which the government observes is separate and distinct from regulation from the CACR provisions concerning the registration and renewal of registration of trademarks. *See* Opp. Mem. 1-2, 8-9. The government's reliance on 31 C.F.R. § 515.512 is misplaced for numerous reasons.

First, neither the April 6, 2006 OFAC Letter nor any subsequent communication by OFAC cites that regulatory provision; the government's brief is the first place it is mentioned. Because the government's argument based on 31 C.F.R. § 515.512 was not part of "the agency's rationale at the time of decision," this Court need not consider that argument. *See, e.g.*, *Am. Airways Charters, Inc.*, 746 F.2d at 874 n.17 (rejecting "OFAC's current position ... first made

---

[4] To the same effect are *Communs. & Control, Inc. v. FCC*, 374 F.3d 1329, 1336 (D.C. Cir. 2004) ("For the Commission *seven years later* to pronounce CCI's license void *ab initio* ... is, politely speaking, unreasonable."); *Ramaprakash v. FAA*, 346 F.3d 1121, 1124 (D.C. Cir. 2003) ("[A]gency action is arbitrary and capricious if it departs from agency precedent without explanation. Agencies are free to change course as their expertise and experience may suggest or require, but when they do so they must provide a 'reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.'"); *Mobile Communs. Corp. of Am.*, 77 F.3d at 1407 (agency may not change course without adequate explanation or providing plaintiff with an opportunity to be heard); *Columbia Broadcasting Sys., Inc., v. FCC*, 454 F.2d 1018, 1026 (D.C. Cir. 1971) ("[w]hen an agency decides to reverse its course, it must provide an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law."); *Duggan v. Bowen*, 691 F. Supp. 1487, 1514 (D.D.C. 1988)(finding arbitrary and capricious agency's departure from prior precedent). Internal case citations are omitted unless otherwise noted.

public as a result of the events that precipitated this lawsuit, and explained ... only in briefs and other papers generated by the litigation").[5]

In any event, 31 C.F.R. § 515.512 is immaterial to the question whether the Specific License authorized Ropes & Gray to file an application, and pay the requisite fee, to renew the HAVANA CLUB registration on behalf of Cubaexport. That regulation is a *general* license provision authorizing U.S. lawyers to undertake certain actions on behalf of Cuban clients. As the government already has conceded in its brief in support of its motion for summary judgment, the fact that a general license may include certain activities and exclude others in no way forecloses OFAC from issuing a *specific* license authorizing activities excluded by the general license. *See* Mem. 5-6. Thus, whether 31 C.F.R. § 515.512 does or does not authorize a lawyer to renew a trademark registration on behalf of a Cuban client is not germane to whether the Specific License issued to Ropes & Gray did so.[6]

Moreover, 31 C.F.R. § 515.512 was promulgated on March 24, 2003, *after* OFAC first issued the Specific License to Ropes & Gray's predecessor, Fish & Neave. That initial license, CU-71416, which OFAC issued on March 10, 2003, expressly provided as follows:

---

[5] To the same effect are *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990) (the arbitrary and capricious standard "mandate[s] that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale *at the time of the decision*" (emphasis added); *Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 419 (1971) (criticizing agency's use of "affidavits [that] were merely *post hoc* rationalizations"); *Communs. & Control, Inc.*, 374 F.3d at 1337 ("we cannot consider [the Commission's interpretation] because it comes too late"); *Sierra Club v. United States EPA*, 167 F.3d 658, 665 (D.C. Cir. 1999) (explanation in agency brief cannot cure failure to provide explanation earlier); *Hispanic Info. & Telecommuns. Network, Inc. v. FCC*, 865 F.2d 1289, 1297 n.13 (D.C. Cir. 1989) (court cannot rule "on this basis [counsel's statements], since that was not the ground on which the agency relied."). *See Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 50 ("[c]ourts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."); *Columbia Broadcasting Sys., Inc.*, 454 F.2d at 1033-34 ("we are powerless to affirm the Commission's ruling on this ... rationale, for it is well settled that a reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action' as a basis for affirmance.").

[6] Likewise, the government's reliance on *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 476 (2d Cir. 2005), is misplaced. That case involved a different specific license with very different terms from those used in the Specific License at issue here.

> SECTION 1 – AUTHORIZATIONS: All transactions are authorized to enable Fish & Neave (the "Licensee"), in connection with all matters related to Galleon S.A. v. Havana Club Holding, S.A., Trademark Trial and Appeal Board Cancellation No. 24, 108, to provide legal services to, receive payment for such services from and to receive reimbursement for expenses related to such services from Empresa Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport"), a Cuban national.[7]

Manifestly, it is inappropriate for the government to seek to construe the Specific License in the light of a regulation that *did not yet exist* when the license first was issued.[8]

Finally, the government's position that there is a meaningful distinction between transactions "in" the cancellation litigation and transactions relating to the renewal of the HAVANA CLUB registration is flatly contradicted by the position taken by OFAC, and by the Department of Justice, in connection with the COHIBA case cited by the government itself. Opp. Mem. 8. In that case, the plaintiff, a Cuban cigar company, sought to register the mark COHIBA at the PTO, but the PTO refused to grant the registration because that same mark previously had been registered by a third party, Culbro Corporation. The plaintiff, through its U.S. attorneys, then commenced cancellation proceedings against Culbro at the PTO *and in court*, seeking to clear a path for its registration. A dispute arose as to whether the plaintiff could pursue cancellation of the third party's mark without a specific license from OFAC. In response, OFAC unequivocally stated that *its general license authorizing the registration and renewal of Cuban-owned trademark also authorized the plaintiff to litigate the cancellation proceeding* against Culbro's mark, because that mark was blocking the plaintiff's registration. *Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399 (RWS), 2007 U.S. Dist. LEXIS 23220, at *17-18 (S.D.N.Y. March 14, 2007). As the district court summarized:

---

[7] AR 74-75. Fish & Neave applied for this license on January 29, 2003, some 3 months before 31 C.F.R. § 515.512 was promulgated. *See* Complaint Ex. 7.

7

> OFAC was asked whether, pursuant to [the general license in] 31 C.F.R. § 515.527, Cuba may bring a petition for cancellation of "the prior registration of a trademark *related to* its efforts to register a trademark." OFAC issued an affirmative ruling, stating that § 515.527 authorizes cancellation proceedings by Cuba or a Cuban national when the cancellation "*relate[s]* to the protection of a trademark in which Cuba or a Cuban national general license has an interest."

*Id.* (emphasis added). A copy of OFAC's ruling is appended to this memorandum as Exhibit A.

This case is not meaningfully distinguishable from the COHIBA case; indeed, it effectively presents the mirror image of the facts of that case. Here, a third party (Bacardi) is seeking to cancel Cubaexport's registration, alleging that the registration is barred by, *inter alia*, Section 211. Here, OFAC granted a Specific License to Cubaexport's lawyers to represent Cubaexport "in connection with" the "legal proceedings related to the HAVANA CLUB trademark" and to be paid and reimbursed for that representation. Here, however, the government takes the position that Ropes & Gray's effort to ensure the continued existence of the HAVANA CLUB registration pending disposition of those proceedings, now pending before Judge Sullivan, was *not* encompassed by that Specific License, even though in the reverse situation, the government contended that a *cancellation* proceeding was encompassed within the general license for the registration and renewal of the trademark.

The taking of starkly inconsistent positions in similar cases without justification is the essence of arbitrary and capricious agency action.[9] *See Ramaprakash*, 346 F.3d at 1125 ("An agency's failure to come to grips with conflicting precedent constitutes 'an inexcusable departure from the essential requirement of reasoned decision making.'"); *Columbia Broadcasting Sys.,*

---

[9] The government's assertion that Cubaexport has not identified any similarly situated parties who were treated differently from Cubaexport is disingenuous in the extreme. Cubaexport has *sought* that very information from the government through discovery requests which the government has *refused to answer* pending this Court's ruling on the government's motion for summary judgment. Equally disingenuous is the government's reliance on the separate Travel License issued in conjunction with the Specific License. Cubaexport's attorneys did not request two separate licenses, but merely requested authorization for all activities necessary to the effective representation of their client in connection with the cancellation dispute, including travel to Cuba. It was OFAC's decision to issue two separate licenses. *Compare* Complaint Ex. 7 *with* Complaint Ex. 8 (License No. CU-71416 and License No. CU-71417).

8

*Inc.*, 454 F.2d at 1027 ("The Commission's handling of this case does not mark its finest hour. ... Unable to articulate reasons for overruling or distinguishing *Hays*, the Commission effectively ignored its own obvious precedent. Under the circumstances, its arbitrary action may not stand."); *Duggan*, 691 F. Supp. at 1514 ("It is hard to understand how [the agency] can consider 'daily' to mean 7 days a week when the term functions as an entrance requirement to a skilled nursing facility while in this context, where it functions to exclude a person from coverage, it is defined as 5 days a week.").

      **C.**      **The Government's Reliance On Section 211 Is Equally Misplaced**

In explaining the basis for its April 6, 2006 decision, the government also indicates that it relied on the "policy" underlying Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1998, Pub. L. No. 105-277, 112 Stat. 2681-88, Sec. 211. *See* Mem. 35; Defendants' Reply In Support Of The Motion To Dismiss Or, In The Alternative, For Summary Judgment ("Defs. Reply") 13; Opp. Mem. 2 n.1, 8 n.3. The government's apparent reliance on Section 211 to explain its April 6, 2006 decision is puzzling, to say the least.

To begin with, the April 6, 2006 letter makes no mention of Section 211. If the general license prohibition in Section 211 was relevant to OFAC's decision regarding the applicability of the Specific License, OFAC could and should have so advised Ropes & Gray on April 6, 2006. Having failed to do so, the government cannot now rely on that provision. *See* cases cited, *supra* at 6 & n.5.

In any event, as the government has conceded, Section 211 in no way limited OFAC's authority with regard to *specific* licenses. Mem. 6, 22; Szubin Decl. ¶ 22; *see* 31 C.F.R. §§ 515.317-318 (distinguishing between general and specific licenses). Presumably, that is why

9

OFAC, in its April 6, 2006 Letter, expressly *invited* Cubaexport's attorneys to apply for a specific license to renew the HAVANA CLUB registration.[10]

### D. The Government's Other Arguments Are Without Merit

Lastly, the government attempts to justify OFAC's April 6, 2006 decision on the ground that OFAC could not foresee how that decision would affect the outcome of the D.C. Action. AR 53; Opp. Mem. 10. That assertion strains credulity. It was perfectly obvious that refusing to permit renewal of the HAVANA CLUB registration would have a direct and dispositive effect on the outcome of the D.C. Action, where Bacardi was seeking to cancel the registration. Indeed, Ropes and Gray advised OFAC of that on December 13, 2005, as the April 6, 2006 letter acknowledges. And OFAC's one sentence claim to the contrary in its letter falls woefully short of the reasoned explanation that the APA obligates an agency to provide. *See Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1407 (D.C. Cir. 1995) ("[T]he conclusory statements of the Board ... do not meet the requirement that 'the agency adequately explain its result.' Because the Board only listed the facts and stated its conclusions, but did not connect them in any rational way, the Board's decisions are arbitrary and capricious."); *Hispanic Info. & Telecommuns. Network, Inc.*, 865 F.2d at 1297n.13, 1297-98 (agency's "passing reference is plainly insufficient to sustain the agency's ruling.... [The agency] offered only the unsupported assertion that the four-channel rule does not apply.... The Commission's decision therefore cannot be sustained."); *Kamargo*

---

[10] Similarly, the government suggests that its April 6, 2006 decision put Cubaexport on notice that OFAC considered the general license for trademark registrations and renewals to be inapplicable to the HAVANA CLUB trademark and that, if Cubaexport wished to be heard on this issue, it should have made a written submission in response to the April 6, 2006 decision. Defs. Reply 8. The government does not explain how a letter that makes no mention of the Section 211 issue could possibly have put Cubaexport on notice of the government's view of that issue. Equally mystifying is the government's position that, although OFAC was entitled to consider and respond *sua sponte* to Cubaexport's December 2005 letter to the PTO concerning the Specific License, OFAC had no obligation to consider or respond to the extensive arguments concerning the applicability of the General License, and the inapplicability of Section 211, set forth in Cubaexport's June 14, 2006 letter to the PTO. *See* AR 34-40.

*Corp. v. FERC*, 852 F.2d 1392, 1397 (D.C. Cir. 1988) (rejecting agency decision that "failed to articulate ... rationale").

More broadly, the government contends that a ruling in Cubaexport's favor "would vitiate other requirements and restrictions within the CACR, as, once granted, a specific legal license would effectively authorize any undisclosed, future action conducted by counsel that may have an effect on pending litigation." Opp. Mem. 10. The government does not identify any such "undisclosed, future actions," however, and such speculative concerns do not warrant serious consideration. Indeed, the facts of this case are unusual, to say the least, and are highly unlikely to arise again – that is, unless Bacardi sets its sights on someone else's trademark. The Court should not be discouraged from granting the relief sought by Cubaexport in its cross-motion for summary judgment merely because of the government's professed anxiety over the precedential impact of such a ruling on other, unidentified matters. Where as here circumstances warrant such relief, Courts have not hesitated to grant it. *See Am. Airways Charters, Inc.*, 746 F.2d at 873-74 (rejecting OFAC decision); *Communs. & Control, Inc.*, 374 F.3d at 1337 ("[f]or the foregoing reasons, we reverse the Commission's order"); *Columbia Broadcasting Sys., Inc.*, 454 F.2d at 1034-35 ("[T]he ruling below ... must be reversed and the order of the Commission vacated."); *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 383 F. Supp. 2d 123, 148 (D.D.C. 2005) (granting plaintiff's motion for summary judgment and denying defendant's motion), *aff'd*, 466 F.3d 134 (D.C. Cir. 2006); *Duggan*, 691 F.Supp. at 1515 (declaring agency decision arbitrary and capricious and enjoining agency from acting in accordance with that decision).

### III. CONCLUSION

For the foregoing reasons, the instant motion should be granted, and this Court should enter summary judgment setting aside OFAC's April 6, 2006 determination that the Specific License does not authorize the renewal of the HAVANA CLUB registration.

Dated: May 4, 2007	Respectfully submitted,

*/s/ Peter M. Brody*
Peter M. Brody (D.C. Bar No. #398717)
ROPES & GRAY LLP
One Metro Center
700 12th Street, N.W.
Washington, D.C.  20005
Tel.:  (202) 508-4600
Fax:  (202) 508-4650

Herbert F. Schwartz
Vincent N. Palladino
Eric R. Hubbard
Pablo D. Hendler
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036
Tel.:  (212) 596-9000
Fax:   (212) 596-9090

*Counsel for Plaintiff,*
*Empresa Cubana Exportadora de Alimentos y*
*Productos Varios, d/b/a Cubaexport*

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .........................................................................................................2

    A.  As OFAC Confirmed, The Specific License Authorized Payment Of The Registration Renewal Fee ................................................................................2

    B.  This Court Should Disregard The Government's *Post Hoc* Reliance On 31 C.F.R. § 515.512 ...........................................................................................4

    C.  The Government's Reliance On Section 211 Is Equally Misplaced ...........9

    D.  The Government's Other Arguments Are Without Merit .........................10

III. CONCLUSION ....................................................................................................12

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

*America Airways Charters, Inc. v. Regan*, 746 F.2d 865 .......................................................4, 5, 11

*Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402 ................................................................6

*Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*,
   383 F.Supp.2d 123 (D.D.C. 2005), *aff'd*, 466 F.3d 134 .........................................................11

*Columbia Broadcasting Sys., Inc., v. FCC*, 454 F.2d 1018..............................................5, 6, 8, 11

*Communs. & Control, Inc. v. FCC*, 374 F.3d 1329 .................................................................5, 6, 11

*Dickson v. Sec'y of Defense*, 68 F.3d 1396................................................................................10

*Duggan v. Bowen*, 691 F. Supp. 1487....................................................................................5, 9, 11

*Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462 ......................................................6

*Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399 (RWS),
   2007 U.S.Dist. LEXIS 23220 ................................................................................................7

*Hispanic Information & Telecommuns. Network, Inc. v. FCC*, 865 F.2d 1289 .......................6, 10

*Kamargo Corp. v. FERC*, 852 F.2d 1392 .................................................................................10

*Mobile Communs. Corp. of Am. v. FCC*, 77 F.3d 1399...............................................................4, 5

*Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm
   Mut. Auto. Insur. Co.*, 463 U.S. 29 ......................................................................................4, 6

*Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633..............................................................6

*Ramaprakash v. FAA*, 346 F.3d 1121 .......................................................................................5, 8

*Sierra Club v. United States EPA*, 167 F.3d 658 ..........................................................................6

### FEDERAL STATUTES

31 C.F.R. §§ 515.317-318..............................................................................................................9

37 C.F.R. § 10.14 ...........................................................................................................................3

37 C.F.R. §2.17 ................................................................................................................................3

37 C.F.R. §1.25 ................................................................................................................................3

Pub. L. No. 105-277, 112 Stat. 2681-88, Sec. 211 .........................................................................9

31 C.F.R. § 515.512 ................................................................................................................2, 5, 6, 7

## MISCELLANEOUS

T.M.E.P § 601 ..................................................................................................................................3

T.M.E.P § 602 ..................................................................................................................................3

# Exhibit A

```
:31 FAX 212 674 4814      RABINOWITZ ET.AL                    ☒005
```



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

AUG 1 9 1996

FAC Nos. C-152409, C-152468

Dear Mr. Krinsky:

This is in response to your letters of July 3 and July 22, 1996, addressed to Serena Moe, Deputy Chief Counsel of the Office of Foreign Assets Control. In your letters you ask two questions concerning the authorization contained in § 515.527 of the Cuban Assets Control Regulations, 31 C.F.R. Part 515 (the "Regulations"). First, you ask whether this section authorizes Cuba to file an opposition to the registration of a new trademark on the grounds that the new trademark interferes with Cuba's right in its registered trademark based on likely consumer confusion. Second, you ask whether Cuba may bring a petition to cancel the prior registration of a trademark related to its efforts to register a trademark.

The authorization contained in § 515.527 and the parallel provisions of § 515.528 are intended to provide reciprocal protection for the intellectual property of Cuba and the United States. Both of the processes you describe in your correspondence concern available legal means to protect trademarks in the United States. For this reason, the authorization contained in § 515.527 may be relied on to file an opposition to the registration of a new trademark or to petition to cancel a prior registration of a trademark where these actions relate to the protection of a trademark in which Cuba or a Cuban national general license has an interest.

If you have any further questions concerning this matter, please call me (202/622-2510) or Ms. Moe (202/622-2410).

Sincerely,

R. Richard Newcomb
Director
Office of Foreign Assets Control

Michael Krinsky, Esq.
Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C.
740 Broadway at Astor Place
New York, New York 10003-9518

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2007, I caused a true and correct copy of Cubaexport's Reply Memorandum in Support of its Cross-Motion for Summary Judgment (with attached Exhibit A) to be served on Defendants' counsel electronically by means of the Court's ECF system.

                                                */s/ Peter M. Brody*
                                                PETER M. BRODY
                                                (DC Bar No. 398717)