**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>EMPRESA CUBANA EXPORTADORA )<br>DE ALIMENTOS Y PRODUCTOS )<br>VARIOS d/b/a CUBAEXPORT, )<br> )<br>               Plaintiff, )<br> )<br>      v. )<br> )<br> )<br>UNITED STATES DEPARTMENT OF )<br>TREASURY, OFFICE OF FOREIGN )<br>ASSETS CONTROL, )<br>HENRY M. PAULSON, JR., as Secretary )<br>of Treasury, ADAM J. SZUBIN, as )<br>Director of the Office of Foreign Assets )<br>Control, and THE UNITED STATES, )<br> )<br>           Defendants. )<br>_____ ) | Civil Action No. 1:06CV01692 (RCL)<br><br>Hon. Royce C. Lamberth |

**NOTICE OF FILING OF SUPPLEMENT TO ADMINISTRATIVE RECORD**

In accordance with this Court's September 27, 2007, Order remanding this matter to the

Office of Foreign Assets Control ("OFAC") for the limited purpose of supplementing the

administrative record with evidence elucidating the contemporaneous reasons for its decision that

"renewal of the HAVANA CLUB trademark . . . would be prohibited unless specifically

licensed," OFAC hereby submits the attached supplemental declaration of Adam J. Szubin.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
U.S. Attorney for the District of Columbia

SANDRA M. SCHRAIBMAN
Assistant Branch Director
Federal Programs Branch


   s/ Eric R. Womack
ERIC R. WOMACK (IL Bar No. 6279517)
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
Washington, D.C.  20001
Tel: (202) 514-4020
Fax: (202) 616-8470

Mailing Address:
Post Office Box 883
Washington, D.C.  20044

Courier Address:
20 Massachusetts Ave., N.W.
Room 7122
Washington, D.C.  20001

*Counsel for the Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2007, I caused a true and correct copy of the

foregoing Notice and accompanying declaration to be served on Plaintiff's counsel electronically

by means of the Court's ECF system.


                                                            _____*/s/ Eric R. Womack*_____
                                                            ERIC R. WOMACK

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

EMPRESA CUBANA                         )
EXPORTADORA DE ALIMENTOS               )
Y PRODUCTOS VARIOS D/B/A               )
CUBAEXPORT                             )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        Civil Action No. 1:06CV01692 (RCL)
                                       )
UNITED STATES DEPARTMENT               )
OF THE TREASURY, OFFICE                )
OF FOREIGN ASSETS CONTROL,             )
et al.,                                )
                                       )
                Defendants.            )
_____)

## SUPPLEMENTAL DECLARATION OF ADAM J. SZUBIN

I, Adam J. Szubin, pursuant to 28 U.S.C. § 1746, do declare:

1.  I am the Director of the U.S. Department of the Treasury's ("Treasury") Office of Foreign Assets Control ("OFAC"), and have been employed in this capacity since September 3, 2006. Prior to becoming the Director, I was Senior Advisor to Under Secretary Stuart Levey in Treasury's Office of Terrorism and Financial Intelligence, a position I assumed in August 2004. Before joining Treasury, I was an attorney at the Department of Justice, serving as Counsel to the Deputy Attorney General from August 2003 to August 2004, and working in the Civil Division from September 2000 to August 2003.

2.  I am familiar with the mission and operations of OFAC, and I make this declaration based upon information within my personal knowledge or provided to me in my official capacity.

1

3. I have been made aware of this Court's Memorandum Opinion and Order dated September 27, 2007, which ordered OFAC to "supplement[ ] the administrative record in a manner consistent with [the] opinion," Op. at 26, including evidence elucidating the contemporaneous reasons for its decision that "renewal of the HAVANA CLUB trademark… would be prohibited unless specifically licensed." Op. at 20.

4. In accordance with this Order, I hereby submit this supplemental declaration to provide the information requested by the Court. Consistent with the Order, this supplemental declaration addresses the contemporaneous reasons for OFAC's decision at the time the July 28, 2006, letter was drafted. *See* Op. at 20.


OFAC's Denial of Cubaexport's Specific License Application

5. In a July 28, 2006, letter, OFAC denied Cubaexport's application for a specific license authorizing transactions related to the renewal of the HAVANA CLUB trademark. In that letter, OFAC also concluded that "renewal of the HAVANA CLUB trademark under these circumstances would be prohibited unless specifically licensed." Administrative Record ("AR") 1.

6. That conclusion expressed OFAC's position that Cubaexport could not rely on the general licensing provision of 31 C.F.R. § 515.527(a)(1) for transactions related to the renewal of the HAVANA CLUB trademark.

7. This decision was based on OFAC's interpretation of its own regulation, 31 C.F.R. § 515.527(a)(2), which incorporated the limitations on the general licensing provision mandated by section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, 112 Stat. 2681 (1998) ("section 211"). Specifically, this regulatory

provision states that "[n]o transaction or payment is authorized or approved . . . with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated . . . unless the original owner of the mark, trade name or commercial name, or the bona fide successor-in-interest has expressly consented."  31 C.F.R. § 515.527(a)(2).

8.  OFAC's conclusion reflected in its July 28, 2006, letter was that the HAVANA CLUB trademark constituted a "mark . . . that is the same as or substantially similar to a mark . . . that was used in connection with a business or assets that were confiscated" and that "the original owner of the mark . . . or the bona fide successor-in-interest" had not "expressly consented" to that use.

9.  This conclusion was based on various legal proceedings and judicial findings concerning the HAVANA CLUB trademark, and it took into consideration correspondence from Bacardi-Martini USA, Inc., as well as correspondence sent by Cubaexport to the U.S. Patent and Trademark Office ("PTO"), each as further described below.

Judicial Findings Regarding the HAVANA CLUB Trademark: Connection to Confiscated Assets and Original Owner's Consent

10.    The conclusion expressed in OFAC's July 28, 2006, letter regarding the applicability of the general licensing provision was based primarily on factual findings made in litigation in the Southern District of New York and the Second Circuit concerning the HAVANA CLUB trademark.  *See* Havana Club Holding, S.A. v. Galleon, S.A., 961 F. Supp. 498 (S.D. N.Y. 1997) ("HCH I"); 974 F. Supp. 302 (S.D. N.Y. 1997) ("HCH II"); 96 Civ. 9655, 1998 WL

150983 (S.D. N.Y. Mar. 31, 1998) ("HCH III"); 62 F. Supp.2d 1085 (S.D. N.Y. 1999) ("HCH IV"); 203 F.3d 116 (2d Cir. 2000) ("HCH V"). This litigation was of particular interest to OFAC, as it contained a challenge to a license issued by the agency. *See* HCH I, 961 F. Supp. at 503. Accordingly, OFAC paid close attention to the litigation and the findings made by the courts involved. *See also* Adam J. Szubin Declaration filed December 21, 2006 ("Szubin Decl."), ¶ 26 (citing 31 C.F.R. §501.605).

11. Therefore, the conclusion reflected in OFAC's July 28, 2006, letter was informed by these findings, including findings made in the June 1999 decision by the U.S. District Court in the Southern District of New York in the course of this litigation. *See* HCH IV, 62 F. Supp.2d 1085. Among other findings made after a bench trial, the District Court determined that on October 13, 1960, the Revolutionary Cuban Regime "confiscated the physical assets, property and business records" of Jose Arechabala, S.A. ("JASA"), a Cuban corporation owned principally by members of the Arechabala family and "the original owner of the HAVANA CLUB trademark." *See* HCH IV, 62 F. Supp.2d at 1089, 1092. In dismissing an argument that section 211 does not govern the outcome in the case, the District Court held: "The statute states that a designated national cannot assert rights in a mark that is the same or substantially similar to one that was 'used in connection with a [confiscated] business,' a requirement that is clearly met here." Id. at 1094.

12. OFAC's conclusion was also informed by a February 2000 decision, in an appeal arising from the same dispute, in which the U.S. Court of Appeals for the Second Circuit adopted the District Court's finding that "[b]efore the Cuban revolution, [JASA] . . . owned the trademark 'Havana Club' [and] exported its rum to the United States until 1960, when the Cuban government, under the leadership of Fidel Castro, seized and expropriated JASA's assets.

Neither JASA nor its owners ever received compensation for the seized assets from the Cuban government." HCH V, 203 F.3d at 119-20. In this decision, the Second Circuit rejected appellants' request to conduct additional discovery on the question of confiscation, noting that "[w]here Cuba has not returned JASA's property, not made even a gesture toward compensation, and not settled the claim, the confiscation inquiry ends." Id. at 130.

13. The Second Circuit also discussed the question of consent by the original owner, noting that it is "undisputed that JASA used the 'Havana Club' name until the Cuban government expropriated the business in 1960 and has not expressly consented to [its] use . . ."[1] Id. at 129.

14. Thus, in concluding that the general licensing provision at 31 C.F.R. §515.527(a)(1) did not authorize transactions related to the renewal of the HAVANA CLUB trademark in its July 28, 2006, letter, OFAC was cognizant of the fact that two courts had already found the HAVANA CLUB trademark to be the same as or substantially similar to a mark that was used in connection with a business or assets that were confiscated, and that the original owner of the mark had not expressly consented to its use by an entity associated with the Cuban Government.

Bacardi's Non-Consent

15. As noted in my declaration filed with the Court on December 21, 2006, OFAC received correspondence in May through July 2006 both from counsel to Cubaexport and from counsel to Bacardi & Company Limited and Bacardi U.S.A., Inc. See Szubin Decl. ¶¶ 36-37.

---

[1] The factual findings by these Courts also expressly explained Cubaexport's role in the history of the HAVANA CLUB mark, including its ownership and use of the mark after its confiscation, as well as the transfer of the mark to, and reversion of the mark from, the named plaintiffs in the litigation. See HCH IV, 62 F. Supp.2d at 1090; HCH II, 974 F. Supp. at 305-06, 311-12.

16. In a letter to OFAC dated May 9, 2006, counsel to Bacardi & Company Limited and Bacardi U.S.A., Inc., claimed that Bacardi "is the *bona fide* successor-in-interest to all of JASA's rights in the HAVANA CLUB trademark. Neither Bacardi nor JASA has ever consented, expressly or otherwise, to the renewal of the HAVANA CLUB registration by or on behalf of Cubaexport." AR 42; *see also* AR 12.

17. In preparing its July 28, 2006, letter, OFAC found support for Bacardi's claim in the Second Circuit's recognition of Bacardi as a "purchase[r] [of] the Arechabala family's rights (if any) to the 'Havana Club' trademark, the related goodwill of the business, and any rum business assets still owned by the Arechabala family." HCH V, 203 F.3d at 120.

18. Based on Bacardi's written statements and the fact that Bacardi continues to contest matters related to the renewal of the HAVANA CLUB trademark, OFAC understood that, to the extent Bacardi claims to be a bona fide successor-in-interest to JASA's assets or rights to the trademark, Bacardi has also not consented to any transaction related to the registration and renewal of the HAVANA CLUB trademark by Cubaexport.

19. Therefore, OFAC knew of no entity purporting to be either an original owner or a bona fide successor-in-interest to JASA that had consented to any transaction related to the registration and renewal of the HAVANA CLUB mark by Cubaexport. Accordingly, OFAC concluded that Cubaexport had not received such consent, and that the general licensing provision could not apply on that basis.

Process Afforded to Cubaexport

20.  In a letter dated April 6, 2006, OFAC informed Ropes & Gray that its existing specific license did not authorize the payment of a filing fee to the PTO for renewal of Registration No. 1,031,651 on behalf of Cubaexport. *See* AR 52.  The letter explicitly stated that this decision did not in any way prejudice Cubaexport's ability to request separate authorization from OFAC, including writing directly to OFAC's Licensing Division to request either a specific license or to request further guidance from OFAC. *See* AR 53.

21.  As explained in my declaration filed with the Court on December 21, 2006, general licenses are made publicly available by OFAC in the Federal Register and the Code of Federal Regulations and/or on OFAC's website.  *See* Szubin Decl. ¶ 10.   Through this publication, persons are informed of criteria that must be satisfied to rely on a general license authorizing otherwise prohibited transactions, as well as limitations on the scope of such authorization. *See*, *e.g.*, 31 C.F.R. § 515.562 (authorizing certain Cuba travel-related transactions of, among others, U.S. Government officials on official business).  There is no application process for a general license (as distinct from a specific license).   However, persons who are uncertain whether particular facts and circumstances meet the criteria for a general license may write to OFAC requesting guidance.

22.  As noted in my declaration filed with the Court on December 21, 2006, applicants may, and do, submit requests to OFAC seeking guidance on the applicability of OFAC regulations to particular facts and circumstances.    *See*  Szubin  Decl.  ¶ 11;  *see also* http://www.treas.gov/offices/enforcement/ofac/rulings/index.shtml.   Some  applicants  style requests for guidance in the alternative.  Such submissions typically assert that a general license

applies and seek OFAC's confirmation, or, in the alternative, OFAC's issuance of a specific license authorizing the transactions described in the submission.

23. Although OFAC explicitly provided Cubaexport with the opportunity to request further guidance, including with respect to the applicability of the general licensing provision, Cubaexport requested only that a specific license be granted when it responded to OFAC by letter dated April 7, 2006. *See* AR 49.

24. OFAC regulations also provide for additional procedures even after a licensing determination has been made. As explained in my declaration filed with the Court on December 21, 2006, *see* Szubin Decl. ¶ 16, the denial of a license request does not preclude the reopening of an application or the filing of a further application. *See* 31 C.F.R. § 501.801(b). An applicant may also request, at any time, further explanation of the reasons for a denial by correspondence or personal interview. *See* id.

25. Despite these procedural opportunities, Cubaexport submitted no information directly to OFAC, either before or after its request for a specific license had been denied, on the issues raised by the limiting language in subsection (2) of the general license published at 31 C.F.R. § 515.527(a).

26. Cubaexport did copy OFAC on correspondence subsequently submitted by Cubaexport to the PTO after Cubaexport applied to OFAC for a specific license. *See* Szubin Decl. ¶ 37; AR 6-9, 34-40. Although the correspondence in part addressed the application of 31 C.F.R. § 515.527(a) to the HAVANA CLUB trademark, it did not provide a basis for OFAC to conclude that the District Court and Second Circuit findings described above should be disregarded. For example, Cubaexport's June 14, 2006, letter "maintains that [Cubaexport] should be entitled to prove that neither the HAVANA CLUB trademark nor a business or assets associated with the

trademark, owned by a party referred to in 31 [C.F.R.] § 515.527(a)(2), were nationalized without compensation," AR 38, but did not offer any further arguments or evidence in support of this assertion.

27. In light of the express recognition by two courts that the HAVANA CLUB trademark is the same as or substantially similar to a trademark used in connection with a business or assets that were confiscated, this conclusory assertion did not alter OFAC's own conclusion.

28. Accordingly, Cubaexport did not provide OFAC with any reason to doubt its conclusions concerning (i) the connection between the HAVANA CLUB trademark or a substantially similar trademark and a business or assets that were confiscated by the Cuban government, and (ii) whether or not the original owner or bona fide successor-in-interest had consented.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: November _26_, 2007.

ADAM J. SZUBIN
Director
Office of Foreign Assets Control
Department of the Treasury

9